1                    UNITED STATES DISTRICT COURT
2                   WESTERN DISTRICT OF WASHINGTON
                            AT TACOMA
3  .

4  UNITED STATES OF AMERICA,    )  Docket No. CR15-5351RJB
                                )
5          Plaintiff,           )  Tacoma, Washington
                                )
6  vs.                          )  December 14, 2015
                                )
7  JAY MICHAUD,                 )
                                )  CORRECTED TRANSCRIPT
8          Defendant.           )
   _____)
9

10

                      TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE ROBERT J. BRYAN
             SENIOR UNITED STATES DISTRICT COURT JUDGE
12
   APPEARANCES:
13
   For the Plaintiff:        KEITH BECKER
14                            ANDRE PENALVER
                              U.S. Department of Justice
15                            1400 New York Avenue NW, 6th Floor
                              Washington, DC 20530
16
   For the Defendant:        COLIN FIEMAN
17                            LINDA SULLIVAN
                              Office of the Public Defender
18                            1331 Broadway, Suite 400
                              Tacoma, Washington 98402
19
   Court Reporter:           Teri Hendrix
20                            Union Station Courthouse, Rm 3130
                              1717 Pacific Avenue
21                            Tacoma, Washington  98402
                              (253) 882-3831
22

23  Proceedings recorded by mechanical stenography, transcript
    produced by Reporter on computer.
24

25

1          Monday, December 14, 2015 - 10:30 a.m.

2       (Defendant present.)

3          THE CLERK:  All rise.  This United States District

4    Court is now in session, the Honorable Robert J. Bryan

5    presiding.

6          THE COURT:  Please be seated.   Good morning.

7       This is United States versus Jay Michaud, No. 15-5351.  It

8    comes on for argument today on the defendant's motion to

9    compel.  The defendant is present with his attorneys,

10   Ms. Sullivan and Mr. Fieman.  And is it Mr. Becker for the

11   government?

12      In preparation for this hearing, I have read the motion

13   and memorandum in support of the motion, and the government's

14   response and the defendant's reply.  I have also looked at the

15   motion to dismiss the indictment, which was referenced in the

16   pleadings.  So I think we are ready to proceed here.

17      Okay, Mr. Fieman, this is your motion, you may proceed.

18   It is my understanding that a good part of the original motion

19   has been resolved.

20         MR. FIEMAN:  Yes, thank you, Your Honor.

21      As indicated in my responsive pleading, the government

22   notified us on Thursday that they were in fact willing to turn

23   over the NIT code, which we appreciate.  That, I think,

24   resolves a significant portion of what we were prepared to

25   address today.  And just to update the government as well, we

1    are in the process of retaining an expert on code analysis and

2    expect that that part of the discovery will proceed smoothly.

3    So, Your Honor, what we really have left is a couple of

4    issues, which are still significant.  I would like to address

5    those.

6        The first remaining category of discovery that is still

7    outstanding is information regarding the extent of the

8    distribution of child pornography while the FBI was operating

9    the website.  I do think it is an important distinction here.

10   I notice in the government's responsive reply at page 12, that

11   they characterize the situation as one where the government

12   allows the website to continue operating for what they

13   characterize as a brief 14-day period.  I am not sure 14 days

14   is all that brief.  But really my main concern is we are not

15   dealing with a situation where -- for example, the website was

16   under surveillance, and the FBI was developing probable cause

17   or inquiring into the investigation, watching the activities

18   of others.  This was not a situation where they allowed the

19   website to continue; they actively operated and took control

20   of it.  So there's a certain amount of ownership here that

21   that sort of passive plan does not capture, and I think it's

22   certainly important for understanding the thrust of our motion

23   to dismiss the indictment.

24       Once the FBI took control of the server on February 19th,

25   they owned it.  They had the choice of shutting it down at

1   that point, investigating through whatever records were

2   already in the server.  They also had the choice, for example,

3   to continue to operate it but blocking access to the actual

4   illicit content.

5       We have seen other cases where they have left certain

6   links or descriptions up, or suggestive material, but have

7   blocked user's ability to actually download or view the

8   illegal content.  So this is really a bird of a different

9   feather, because during that entire 14-day period that this

10  was in fact an FBI website, there was continuous posting and

11  distribution and redistribution of child pornography.  And I

12  do believe that's unprecedented, at least in my experience.

13      And I would note, Your Honor, that in terms of the

14  legality of this whole thing, and not to start arguing the

15  motion to dismiss, but really just in terms of why we are

16  seeking information about the extent of this distribution is

17  because there are a number of legal permissions which preclude

18  the government from doing this.

19      In fact, one of them was cited, and I overlooked it

20  previously in the government's briefing, at page 4, note 2,

21  under 18 U.S.C. 3509(m), the government is supposed to retain

22  custody and control of any child pornography that is seized

23  during an investigation.  And of course that's not at all what

24  happened here.

25      So Your Honor, I really defer to the Court on this,

1    because ultimately what we are driving at is we want a factual

2    basis to support our motion.  And really the question is, how

3    much does the Court need?

4        The undisputed facts I think at this point are that there

5    were over 200,000 members on this site; that tens of

6    thousands -- I estimated approximately 80,000 visits were paid

7    to the site during the period that it was under FBI control.

8    And we have used various adjectives or numbers to describe the

9    quantity of child pornography that was available in various

10   subdirectories, subforms on the site as being thousands of

11   images, a massive quantity of images, massive quantity of

12   videos.

13       I think in terms of the extent of distribution, the Court

14   could safely assume from all that that it was indeed a massive

15   quantity of illicit content.  But our main thrust in terms of

16   getting more exact figures, if the Court is going to make

17   findings about how extensive this operation was and the

18   degree, we submit, to which the government was violating the

19   law in various respects, it may be important to have a more

20   specific count, and that information in terms of how many

21   people actually visit the site.  And we know that many people

22   probably visit that site but did not necessarily look at

23   content, illicit content.

24       And it is really up to the government at this point I

25   think to choose their poison.  If they want to disclose the

1  numbers of people who actually went into the various

2  subdirectories to look at content, and how many visitors were

3  doing that, I think that may be helpful.  Otherwise I am more

4  than happy to stand on the assumption that there was a massive

5  amount of material distributed.

6      What I do not want to happen, though, and what I'd ask the

7  Court to one way or another foreclose, is to get to the

8  suppression hearing and potentially having witnesses for the

9  government trying to minimize how much content was

10  circulating, because I don't think from what we've just seen,

11  in terms of the characterizations in the government's own

12  pleadings, that it was a minimal amount of illicit content.

13      If the government does not want to essentially concede or

14  stipulate that there were tens of thousands of visitors, and

15  that there was a massive quantity of child pornography in

16  circulation, I do think we need more specific information.

17      Now, Your Honor, again, going on to the remaining issues,

18  the government's memoranda and sort of internal assessment --

19  assessment of both the legality of running an undercover

20  online operation like this, and also the Rule 41 issues,

21  whether the NIT warrant in particular was legal, it is again

22  in some sense the government's choice here.  And we seem to be

23  viewing the same facts in a slightly different perspective.

24      I believe -- and I don't want to speak for the government,

25  but what I believe from their pleadings is that they are

1  taking the position that the fact that there was internal

2  Department of Justice or FBI counsel review of the NIT warrant

3  is relevant to the good faith analysis in terms of the

4  exception to the suppression rule.  And as a legal principle,

5  that is correct, it would normally be the case.

6      But we are in a slightly different situation here because

7  one of our primary suppression arguments is specific to Rule

8  41 issues, and that is whether there was a deliberate

9  disregard of the law or Rule 41, specifically.  And that has

10  nothing to do with the good faith exception.  It is just

11  whether or not the government knowingly proceeded to submit a

12  warrant application that it was aware was inconsistent with

13  the law.

14      Now, I believe again from the submissions that we've made

15  to the Court, and what is publicly available in terms of DOJ's

16  own analysis of the scope of Rule 41 and the sensitivity of

17  online undercover operations, that we have enough in the

18  record to say that there's no way that this was some sort of

19  rogue operation, or DOJ did not make a conscious choice to

20  pursue the NIT warrants despite the fact that at best the Rule

21  41 arguments that have been offered in justification of that

22  warrant are questionable.

23      Now, then the question is again, what are we going to see

24  at the suppression hearing?  It is simply a matter that the

25  NIT warrant in particular, and the whole website operation,

1  continued operation by the FBI, were the various points

2  reviewed and approved internally?  We can take that as a

3  given.  Frankly, I believe that helps our argument.  That

4  establishes the deliberate nature of the actions.  And then it

5  is up to the Court to determine whether they were legal or

6  not.

7      What I don't want to happen is for the government then to

8  put up witnesses to start talking about that internal process,

9  as they characterize them, consultations, in an effort to

10  persuade the Court, well, a certain number of DOJ attorneys

11  signed off on this, Your Honor, and therefore it must be

12  legal.

13      And if we are going to start drifting in that direction,

14  then I would be very much surprised, given what we know about

15  DOJ's own analysis of Rule 41, that there wasn't some dissent

16  or discord or other things going on in that consultation

17  process that we should be allowed to explore.

18      If that is where the government is heading for purposes of

19  the suppression hearing, then as we submitted in our reply

20  briefing, that seems to me to be a waiver of any privileges

21  that they are claiming.

22      So Your Honor, I really think at this point, having

23  resolved the programming code issue, our request is to put it

24  to the government, a choice on these two issues.

25      One, if there isn't going to be any disagreement that

1  there were tens of thousands of users accessing child

2  pornography through the various subdirectories, and that a

3  very large -- a massive amount of illicit content was

4  distributed, and the Court deems that sufficient to make

5  findings, then we can probably leave it at that.

6      If there's going to be any issue about the scope of it, or

7  if the Court believes more specific numbers are needed, then

8  we'd ask the Court to grant our motion.

9      I would just note, I think we addressed this briefly, we

10  cannot get that information, at least as far as -- from the

11  virtual website, at least as far as I was able to explore what

12  was on there and what was told to me by the FBI agent and the

13  AUSA, who were in the room with us, which is basically what

14  you see is what is available through this virtual website.

15  Most or all the information we are seeking is on the

16  government's server behind the website.  We do not have access

17  to that.

18      And then the same choice that I indicated comes to this

19  issue of the internal consultations.  There was simply an

20  approval process for this entire operation and the NIT

21  warrant.  I do not think we will next -- we will need more

22  discovery on that if there's going to be any attempt by the

23  government, either in its responsive briefing or at the

24  hearing, to suggest -- to go into the details of the

25  consultations to suggest that that is somewhere out under --

1  reenforces or underscores the legality of what we are

2  challenging, then we feel we are entitled to full disclosure

3  of all those internal consultations.

4       Thank you, Judge.

5            THE COURT:  Thank you, counsel.

6       Mr. Becker.

7            MR. BECKER:  Thank you, Your Honor.

8       May it please the Court, I think a bit lost here in the

9  argument to this point is the legal background pertaining to

10 Rule 16 and criminal discovery, and then the good faith

11 exception, which is really the premise on which the defense

12 makes its other request.

13      The defendant's motion here really seeks to turn the

14 criminal discovery process on its head.  By requesting

15 information that is not material to his defense of the actual

16 charges in this case, information that is specifically

17 exempted from production by Rule 16 itself, and on a theory

18 that has been -- a theory of discovery that has been

19 specifically rejected by the Supreme Court.

20      So let me go through with that first.  As the Court is

21 well aware, discovery pursuant to Rule 16 must be material to

22 a defendant's defense.  It is the defendant's obligation to

23 set forth specific facts to show that materiality.  Rule

24 16(a)(2) specifically excludes the discovery or inspection of

25 reports, memoranda, or other internal government documents

1   made by an attorney for the government or other government

2   agent in connection with investigating or prosecuting the

3   case.  That rule is amplified by the Supreme Court's decision

4   in *United States v. Armstrong*, which we cited in our

5   responsive briefing.

6       In that case the Supreme Court interpreted Rule 16 in a

7   way that forecloses the sort of requests for internal

8   government memoranda and deliberations that are being made

9   here.  The Supreme Court interpreted defense, under Rule 16,

10  to be limited to claims that refute the government's arguments

11  that the defendant committed the crimes charged.  Defense

12  means defense on the merits, a defense to the evidence that is

13  going to be presented by the government at trial pertaining to

14  him.

15      In *Armstrong*, the defendant raised a selective prosecution

16  claim similar to the sort of motion to dismiss based on this

17  allegation about outrageous government conduct, as made here,

18  and requested discovery about the government's prosecutor's

19  strategy.

20          THE COURT:  You don't think that the question of

21  outrageous government conduct, if not granted on a motion,

22  would not be presented to a jury at trial?

23          MR. BECKER:  I don't believe that it could be, Your

24  Honor.  It is not a merits defense.  And I don't believe it is

25  the sort of defense that could be submitted to a jury at

1  trial, nor has the defendant suggested that or submitted any

2  sort of briefing making that argument that I know of.

3      Now, of course, we haven't yet had our opportunity to

4  respond to the defendant's motion to dismiss.  That response

5  is due on the 21st.  We will respond on the merits of that

6  claim.

7          THE COURT:  I am thinking ahead to the trial, and if

8  that is not a legal defense to be presented to a jury, it

9  might, in the hands of a good lawyer, lead to a jury

10  nullification, if not an argument to -- you know, the jury

11  could decide this is just unfair and determine not to convict.

12          MR. BECKER:  Those seem like good reasons for the

13  Court to properly instruct the jury not to consider those

14  sorts of arguments or those sorts of considerations, Your

15  Honor, which are not merit defenses here.

16      The defendant is charged with receiving and possessing

17  child pornography.  And ultimately the fact that the website

18  that he accessed was under government control, at "a" time

19  when he accessed it, and of course the defendant accessed that

20  website and registered on it long before the government seized

21  it.  But the mere fact that the defendant also accessed the

22  website while it was under government control, it has no

23  bearing whatsoever on the merits of receipt and possession

24  charges based upon information found on his computer pursuant

25  to a search.

1      The motion to dismiss the indictment here, we would argue,

2  is so totally separate and apart from any sort of merits

3  defense.  But even in that event, Your Honor, I want to bring

4  us back to the legal framework, because I really do believe

5  that *Armstrong* forecloses these sorts of requests.  But even

6  if we look at the request -- I can quote particular language

7  from *Armstrong* if the Court thinks it is helpful.  It is 517

8  United States 456, pages 462 and 463.  In rejecting the

9  defense argument in that case, the Supreme Court stated

10  "because we conclude that in the context of Rule 16 the

11  'defendant's defense' means the defendant's response to the

12  government's case-in-chief.  While it might be argued that as

13  a general matter, the concept of a 'defense' includes any

14  claim that is a 'sword' challenging the prosecution's conduct

15  of the case, the term may encompass only the narrower class of

16  'shield' claims, which refute the government's arguments that

17  the defendant committed the crime charged."

18      So I won't belabor that point any further, Your Honor, but

19  that's the Supreme Court very directly saying defense means

20  what evidence is presented at trial and how are you defending

21  against it, not an attack on the conduct of a government

22  investigation generally.

23      Now, in terms of the seizure of the website, first let's

24  get some facts correct.  The FBI -- the government did not

25  create this particular website at issue.  It operated for six

1    months before it was seized by law enforcement.  It operated

2    for another two weeks under law enforcement control.

3        Now, I don't believe that a policy argument about whether

4    or not the government should interdict particular criminal

5    activity by particular criminals is relevant and that it in

6    fact brings to bear some potential serious separation of

7    powers issues in terms of the government's discretion to

8    investigate particular criminals using particular

9    court-authorized investigative techniques.

10       But that aside, this is not something the government

11   created.  And if we are going to talk about the reasons why

12   this happened, is it possible that the government could have

13   shut that website down the day it was seized?  Yes, of course

14   that's possible.  But that ignores the rest of the context of

15   how this site operated.

16       This was a site that was created by its users.  It is an

17   online bulletin board.  It is helpful, I think, in

18   understanding that to think of an offline bulletin board, just

19   how does a regular bulletin board work?  It is set up and

20   placed on a wall by some administrator.  Then the users are

21   responsible for posting messages onto it and replying to those

22   messages.  The users post messages and content within the

23   context of whatever categories are set up by the person who

24   first sets up that bulletin board.  User-provided content,

25   that is how this works.

1      So it was and is the users of this particular website, in

2   the online context, who populated its content with messages,

3   including messages that had images and videos of child

4   pornography in them, and also messages that provided links,

5   that is online links to other places on the Internet where its

6   users could go and download child pornography using passwords

7   provided by the users of the site.  So the child pornography

8   that was trafficked on this site was user-created and

9   user-tracked.

10      I think the use of the term "distribution" is loose and

11   not specific enough to the context here of a website whose

12   content was user-populated.

13      So again, there's no dispute here that as of the time the

14   government seized the site, and for the next two weeks, it was

15   possible and users did, like Mr. Michaud, access child

16   pornography through that website.  That is not in dispute and

17   won't be in dispute at any hearing on the motion to dismiss.

18      The defense is well aware of this.  They have filed their

19   motion to dismiss largely based upon that premise.  And we

20   don't believe that further discovery of the users, of other

21   users than the defendant, is necessary in order to make that

22   sort of argument, to the extent that information about other

23   users and whether they downloaded images or not is even

24   attainable.  Of course, again, if we don't define our terms we

25   end up in a difficult situation.  Users might save child

1    pornography that they accessed on their screen.  They might go

2    to another website and download it or not.

3        We are not disputing -- the government is not disputing

4    that child pornography was accessible during the period that

5    the site was operated.  We don't think, and absent a finding

6    by Your Honor, that further information is necessary.

7              THE COURT:  Do you have -- what they asked for here

8    was, as I understand it, the total number of pictures and

9    videos that were downloaded and distributed, and the number of

10   visitors to the site during the subject time.  Is that

11   information you have?

12             MR. BECKER:  The number of visitors to the site

13   during that time period is information that we would have.

14             THE COURT:  Why don't you give it to them; what's the

15   difference?

16             MR. BECKER:  The difference, we don't believe that it

17   is relevant and material in the case, Your Honor.  That's our

18   position.  That information is available.

19             THE COURT:  I am always suspect of a government

20   lawyer that says something is not material or relevant to the

21   defense.  You are not in a very good position to determine

22   that question.  You have to put yourself in their mind.  You

23   have to come to that question with the mind and background of

24   a seasoned criminal defense lawyer to make that determination.

25             MR. BECKER:  Well, here, Your Honor, the

1  determination is in the context of a specific motion that has

2  already been filed for specific reasons.

3      I certainly understand the difficulty in a prosecutor

4  taking the mind-set of a defense counsel.  But we are not

5  exactly in that context here.  The defense says this is

6  relevant to the motion they have already filed, which already

7  alleges outrageous government conduct based on information and

8  actions they know occurred, which is that the government

9  seized and continued to operate the website for two weeks, and

10  that child pornography continued to be available.

11      So I absolutely understand Your Honor's admonition on that

12  point, but I do think the context of this request makes it a

13  bit different.

14      That said, if the Court finds that we should provide the

15  number of visitors to the site, we can provide that

16  information.  We will comply with the Court's order.

17          THE COURT:  Do you have also the total number of

18  pictures and videos that were downloaded or distributed from

19  that website?

20          MR. BECKER:  That information is not available for a

21  variety of reasons, Your Honor, that have to do with how the

22  site operates and how individual users could have and would

23  have used it.

24      So when I access a web page, there are innumerable ways in

25  which I might save that material to my computer.  I might

1  right click a picture and click "save."  I might take a screen

2  shot of a particular image and save it that way, similar to

3  taking a picture of your computer screen.

4      There's just not a way for the government to give an

5  accurate count of exactly how each user interacted with the

6  site and to what extent the user saved images that were

7  available.

8      Further, because of the way the administrator set this

9  site up, there were links available to external websites that

10  contained child pornography, which the users could then go to

11  and download from.  Those external websites were not within

12  government control, and so we are not able to provide

13  information as to what an individual user might have done with

14  those sorts of images or videos.

15          THE COURT:  You know, Mr. Becker, I might say if this

16  was only this defendant and the argument was outrageous

17  government conduct, it would be a much different argument than

18  if this was 10,000 people, in terms of whether it was

19  outrageous or not.

20      I mean, it's one thing to go after one person that you

21  think is committing a crime, and something different to go

22  after everybody under the sun under the same premise.

23          MR. BECKER:  Your Honor, respectfully, I am not sure

24  that I follow that rationale, because if there's one person

25  committing a crime, or 10,000 people committing crimes, we, as

 1  the government, have an obligation to investigate all 10,000,

 2  not just one.

 3      So I think it is a logical fallacy to say here that

 4  somehow it is the government's fault that thousands of

 5  criminals gathered at this website to exploit children via the

 6  trafficking of child pornography.  The government did not

 7  create that.  The government responded to this massive website

 8  trafficking in criminal activity in order to try to actually

 9  find, identify, and bring to justice the people who were using

10  it criminally.  And so --

11          THE COURT:  How many people have you charged in this,

12  off of this website?

13          MR. BECKER:  I can provide that information, Your

14  Honor.  I am leery of providing that information in a public

15  forum given the ongoing nature of the investigation, but I do

16  have numbers that I can provide to the Court.

17      But again, my point is, Judge, this was a massive scope of

18  criminal activity which required the government's response

19  here.  It is hard, I think, to say to prosecutors and agents

20  who see users gathering in such a massive scale in a way that

21  makes -- and for the record, we are talking about the

22  anonymous Tor network here.  They are gathering in a means and

23  a way that makes their identification extremely difficult.

24      So could the government have just shut that website down

25  as soon as it was seized?  That is possible.  That is one

1  thing the government can do.  And what happens next?  All of

2  those criminal users, who are using this website in order to

3  traffic in child pornography amongst themselves, simply go and

4  set up another website and continue to engage in the exact

5  same behavior that continues to exploit children in the same

6  way.

7      The only way for the government to actually stop this sort

8  of conduct is to take action, to identify and apprehend the

9  perpetrators.  That is what the government did in this case.

10 The government explained that to the judges who authorized the

11 techniques, both in the network investigative technique

12 affidavit and in the wiretap affidavit pertinent to the

13 investigation.

14     It is unfortunate that there are so many thousands of

15 criminals who act similarly, but that is not attributable to

16 the government.  That is attributable to the criminals who

17 engage in that behavior.

18     I apologize, Your Honor, if my tone is too forceful.  I

19 have only appeared in your courtroom twice, Your Honor.  This

20 is what I do.  It is obviously something that I am

21 particularly passioned about as a prosecutor.  I mean no

22 disrespect whatsoever to the Court.

23         THE COURT:  I understand, Mr. Becker.  The other side

24 of that coin obviously is that investigations have to be

25 within the limits of the Constitution, no matter how bad the

1  crime is.

2      MR. BECKER:  Absolutely, Judge.  Absolutely.  And

3  here the NIT was authorized by a magistrate; the wiretap was

4  authorized by a United States District Court judge with full

5  knowledge and understanding of the overall investigative

6  strategy.

7      THE COURT:  Okay, go ahead.

8      MR. BECKER:  So I will move, Judge, to the good faith

9  side and the internal government deliberative documents

10 pertaining to that.

11     So the good faith argument here is premised on law

12 enforcement's objectively reasonable reliance upon the

13 authorization of a magistrate.  And the government has asked,

14 and will ask, the Court to find that the good faith exception,

15 the *Leon* exception applies.

16     The good faith exception is not based upon review of

17 internal government deliberative memos.  It is based upon a

18 magistrate authorizing the NIT warrant in this case, as did

19 occur.  We don't believe that in any way brings to bear

20 internal government deliberative documents.

21     We certainly do expect there would be testimony or

22 evidence that the affiant in this case consulted with an

23 Assistant United States Attorney before presenting the warrant

24 to the magistrate, as is the required procedure in every

25 single United States Attorney's office that I am aware of.

1   And I have been in about 25 different districts around the

2   country.

3        That is obviously a very different premise than anything

4   that brings to bear internal government deliberative memos.

5   So it seemed to me that what I heard today from the defense is

6   that we don't have an issue here that requires compulsion of

7   any of those memos, unless and until there was some argument

8   other than that.  And I don't believe we'll be in that

9   position, or are in that position, Your Honor.

10       So I do expect evidence that the NIT warrant was submitted

11  to, approved by an Assistant U.S. Attorney.  I don't expect

12  there to be any presentation that somehow there was also other

13  deliberations by the Department of Justice that bear on that

14  good faith inquiry.

15       So I am a little bit at a loss, I guess, to speak any more

16  than that, to the sort of speculative concern that that might

17  happen.

18            THE COURT:  Let me ask you something here:  In light

19  of the statutes that makes some things undiscoverable, if you

20  present evidence at a suppression hearing, for example, that

21  the warrant was approved by a United States Attorney, aren't

22  you opening up that whole thing, the whole thing they are

23  looking for?  Or don't you have to -- if you want to protect

24  that particular statutory or rule privilege, don't you have to

25  just say here's the document, and does it pass constitutional

1   muster without a bunch of evidence about the process that it

2   went through?

3          MR. BECKER:  I don't believe that is correct, Your

4   Honor.  It is a well-established principle in the Ninth

5   Circuit, as elsewhere, that one of the factors in the good

6   faith analysis is whether or not a law enforcement agent

7   consulted with a prosecutor before seeking the warrant.  I

8   don't believe that the mere fact that that occurred brings to

9   bear internal deliberations of government attorneys.

10      I think the only means in which, or way in which I think

11  that might bring to bear internal deliberations would be if

12  there were a *Brady* request, for example.  So if the defense

13  were to request *Brady* material about whether any government

14  lawyer told the affiant that the warrant was not legal, and if

15  there were materials responsive to that request.  In that

16  event we might need to disclose them.

17      But outside that context -- that sort of context, Your

18  Honor, no, just the mere factor of having checked with a

19  prosecutor doesn't then bring to bear other internal

20  deliberative memos.  We just don't think that follows at all.

21         THE COURT:  Why is that even relevant if there's an

22  attack on the affidavit supporting the search warrant?

23         MR. BECKER:  Well, again, the Ninth Circuit has

24  identified that as one factor in the analysis.  So the Court

25  will evaluate:  did the law enforcement agent act in

1   objectively reasonable reliance on the authorization of the

2   magistrate?   So in determining whether the law enforcement

3   agent's reliance was objectively reasonable, having run it by

4   a prosecutor, consulted with an attorney, is one factor the

5   Ninth Circuit says the Court should consider, and an important

6   factor the Ninth Circuit says this Court should consider.

7           THE COURT:  That's on the other end of the analysis,

8   it sounds like.  You don't get into the good faith exception

9   unless the underlying warrant was not a good warrant.

10          MR. BECKER:  That's correct, Your Honor.

11          THE COURT:  You are not submitting that here, are

12  you?

13          MR. BECKER:  No, absolutely not, Your Honor.  And

14  again, good faith only comes into play if the Court determines

15  that the warrant did fail legally.

16      We are not conceding that.  This is just -- this is what

17  the defense says this particular set of information is

18  relevant to, and that's why we are arguing it in that context.

19      So Your Honor, if the Court has no further questions for

20  me, I will rest for now.

21          THE COURT:  I don't.

22          MR. FIEMAN:  Just briefly, Your Honor.  I would like

23  to start with the last point first, in terms of how the good

24  faith argument and the deliberate violation of Rule 41 that we

25  are alleging are just going to play out at the hearing.

1        I just want to be clear on the record, because I don't

2   want to get to the hearing and have this part of our

3   presentation or our strategy come as a surprise to the

4   government, because I don't think any of us is going to be

5   well served by that.

6        In my view, if the government is electing not to turn over

7   any of the consultation materials, and they want to stand on

8   the fact that the NIT warrant was reviewed and approved at

9   some point by an Assistant United States Attorney, we'll take

10  that.  Because in my firm view, they are just backing

11  themselves into a corner.

12       What we did not want was the government to come in here

13  and say, well, this was prepared by an FBI agent, and although

14  their subjective knowledge isn't really relevant and good

15  faith is based on what a reasonable author should know about

16  the law, well, Your Honor, it was reviewed by an Assistant

17  United States Attorney and therefore good faith should apply.

18       Our whole point is that DOJ has, from start to finish,

19  engaged in deliberate violations of Rule 41 and deliberate

20  violations of the law when it comes to trafficking and child

21  pornography.  As long as they are going to say, yes, this is

22  the path we elected to follow, and then it is up to the Court

23  to determine whether it was legal, that's fine.  But they seem

24  to be staking out a position that somehow these consultations

25  are going to help them on the good faith prong here.

1        The ultimate answer is already in our briefing.  The good

2    faith exception is essentially foreclosed when it comes to

3    reliance on a warrant when the government itself is

4    responsible for the defects in the warrant.  We are not

5    talking about some kind of close probable cause determination

6    where reasonable minds might differ about the facts and there

7    was an honest representation of information in the warrant

8    that the judge just happened to decide differently from a

9    reviewing judge.  Our premise here is that this entire

10   operation is ripe with misleading and false statements and was

11   done in deliberate violation of the policies that DOJ has

12   about the parameters of Rule 41, and ultimately lead to what

13   appears to be an unprecedented engagement in illegal activity

14   in terms of distribution from the website.

15       That is a very unusual set of facts.  And I think it is

16   very important, before we start squabbling at the suppression

17   hearing about where certain issues are going, that I at least

18   make that statement to the Court and the government about what

19   our intentions are.

20       If the government at this point wants to assert that we're

21   applying privilege and their condition is we are simply going

22   to stipulate or state that this NIT warrant was approved by a

23   DOJ attorney at some point and we leave it at that, we'll take

24   that.  We'll take that, Your Honor.

25       Now, Your Honor, in terms of just -- the other points in.

A.   Terms of the remaining disclosure about activity on the
site, one premise here I think we need to just put aside
completely is that the government keeps presenting to the
Court the notion that the alternative was to either shut down
the website or do an investigation that involved distribution
of child pornography.  And that is simply not the case.

There are a lot of unanswered questions here.  Why, if a
NIT could be deployed at any time somebody clicked on any
aspect of the website, including their home page, did they
choose to make it -- excuse me, choose to continue to
distribute child pornography?  I mean, their whole premise is
there was probable cause from the time he signed on to this
website.

And one of the things we intend to explore, in terms of
the outrageousness of the government conduct, is that even
though by their own statements this investigation could take
place just by clicking on the various aspects of the site,
there's no necessity to download or distribute this content,
as far as I can tell from their own analysis of how probable
cause was supposed to operate in this case.

Now, of course we are challenging the very notion that you
have probable cause at the time of signing in because it
doesn't appear to be a child pornography website to an
uninformed viewer.  But certainly we've also said there are
other aspects which clearly did have content.  And this could

1  have been refined in such a way that they had their probable

2  cause and had deployed their NIT all properly and in a

3  suitably refined and focused manner without requiring the

4  distribution of child pornography.  And that is where the

5  outrageousness truly comes in, because while I appreciate

6  Mr. Becker's passion about the importance of this

7  investigation, and I understand that, it is not as if the

8  government didn't have myriad ways to focus and narrow this,

9  as they have done in other cases.

10      That is also partly what makes this unprecedented, is that

11  they chose to do this in an extraordinarily expansive way in

12  terms of the number of targets, or potential targets, and in

13  terms of not trying to restrain what was ultimately ending out

14  on the Internet.

15      And the Court has already seen there are other

16  pronouncements about how even viewing one of these images is

17  supposed to be so damaging to the victims in these cases and

18  there truly are victims.  But the question is, how do you

19  handle your resources in the course of an investigation?

20      I have never seen anything like this, and that is all

21  there is to it.  I have never seen where the government has

22  just sprayed the Internet or a neighborhood or in a gun

23  investigation, a drug investigation, this kind of uncontrolled

24  dissemination of contraband.  And that is really what we are

25  trying to drive at, what really is the extent of this.

1        Now, Your Honor, turning to my Exhibit 2, very briefly,

2   the October 22nd letter, I would just like to run very quickly

3   down what's outstanding at this point.

4        We asked for the number of child pornography pictures that

5   were posted on the site during the operation.  That, I do not

6   believe the government can claim with a straight face they do

7   not have that information.  That will be in their server.

8        That also goes to the second item, the number of videos

9   that were posted, also the number of links.  I have had

10  clients who have been charged with possession of child

11  pornography for posting a link to a video, not necessarily

12  uploading the content.  The government takes the view that

13  links constitute distribution.  If there are links, as

14  Mr. Becker has said, those should be included in the count.

15  That information is in the government server.

16       They would also be able to tell user by user, as they did

17  with Mr. Michaud, what videos or links were viewed.

18       I understand Mr. Becker's argument about the downloading;

19  it is true, there are various ways to preserve.  You can

20  screen shot.  You can download.  You may just view it, as the

21  Court has seen many of times, and the government will take the

22  position that viewing it is possession, because it ends up in

23  a temporary cache once it appears on the screen.

24       If they can't give us an exact number, I am sure they can

25  ballpark that.  That is also going to be available in the

1   server, as I know from prior cases.

2        The number of visitors, I think the government is going to

3   give us.  But I would ask for a breakdown on that, as we very

4   much clearly indicated to the Court at this point, not

5   everybody who went to that site, particularly given its home

6   page as it actually appeared at the time the FBI was operating

7   it -- I don't believe everybody was necessarily looking for

8   child pornography.  They have identified various

9   subdirectories that were clearly dedicated to child

10  pornography.  If they want to refine the count in that regard,

11  that's fine; that should still be extremely helpful.

12       And Your Honor, turning to page 2, we asked for a summary

13  of any measures that the FBI took to limit access or to block

14  images.  My understanding at this point is that there were no

15  such measures whatsoever taken.

16            THE COURT:  You refer to page 2 of --

17            MR. FIEMAN:  I'm sorry -- of our October 22nd

18  discovery request letter, which is Exhibit 2, Your Honor.

19       We do not need additional discovery if the government's

20  position is that whatever the FBI allowed or uploaded during

21  that time, all of it was accessible.  That kind of answers our

22  question.

23       And you know, Your Honor, there is an issue about why the

24  site was kept up and running as long as it was.  They keep

25  referring to the 14-day period that the FBI was operating the

1    site is brief, and of course the Court will characterize it as

2    it sees fit.

3        I can tell you I have had clients charged for much briefer

4    interactions with websites, often amounting sometimes to only

5    a few images.  So I don't know whether there was a point to

6    where DOJ came to the realization that maybe this was going

7    too far, or they simply decided they had identified enough

8    targets, but I do believe that the reasons for the duration of

9    this distribution will be relevant to the hearing.

10       And the last item, I think I have addressed, in terms of

11   the documentation regarding their internal procedures on this.

12       Your Honor, when we're talking about the typical case and

13   the typical good faith argument in the context of a probable

14   cause determination, this just isn't the typical case.  From

15   what we've made out so far, there is no legal exemption for

16   what the government did here.  You know, there's -- Rule 41

17   doesn't allow for this.  There's no statutory exception for

18   the government to distribute child pornography in the course

19   of trying to make a case.

20       The number of people, 200,000 users, targeted from a

21   single warrant, I think is unprecedented.

22       We are dealing with a number of very unusual factors in

23   this case, and I think it is important to bear in mind that

24   while the government keeps going back to *Armstrong* and talking

25   about discovery in terms of defense at trial, we've given you

1   the Ninth Circuit law, Your Honor, which says that all

2   information that relates to pretrial motions is relevant to

3   the defense.

4        More importantly, we are not required to project our

5   strategy at trial.  There are a host of issues percolating in

6   here that we intend to put before a jury.  We will not --

7   obviously because we are not allowed to -- be asking for a

8   nullification instruction.  But there are, if nothing else, a

9   host of issues about *res gestae* and the context of how

10  Mr. Michaud was even targeted, that are inevitably going to

11  come up in this trial, unless the government is going to

12  streamline its case to the point where they won't be able to

13  lay the foundation for a lot of their materials.  This is all

14  directed onto Mr. Michaud's overall defense but the inevitable

15  issues that are going to be coming up at trial.

16       Finally, Your Honor, as indicated in our briefing,

17  materiality is a very low threshold.  We just need to show

18  that this is relevant to either a pending motion or defense at

19  trial.  And I think the Court has grasped kind of where we are

20  heading, that I don't need to belabor that.

21       Unless you have any questions, Your Honor, we would ask

22  for the specific relief that we requested in our motion.

23            THE COURT:  Well, let me address the limitation,

24  first.  Rule 16, the Federal Rules of Criminal Procedure -- it

25  is hard to cite these things because there are so many sub

1    parts.  I guess it is (a)(2) of that rule provides that the

2    rule does not authorize the discovery or inspection of

3    reports, memoranda, or other internal government documents

4    made by an attorney for the government or other government

5    agent in connection with investigating or prosecuting the

6    case.  It seems to me that that is a rule that binds the

7    Court.

8         And the government in responding to the order that I am

9    going to make, I think can recognize that exception and

10   obviously in good faith withhold things that come within that

11   definition.  The problem with that, that I see, is that in a

12   suppression hearing, if the government withholds those

13   documents, that an agent, for example, might be able to

14   testify that he conferred with counsel.  You start talking

15   about what the lawyer said, all of a sudden that's all open.

16   It is a fine line to walk.  Once an agent says, well, the

17   government lawyer told me this is all good, well all of a

18   sudden that is open, it seems to me.  But as I indicated, I

19   think you can withhold that information that comes within that

20   category.

21        Other than that, I think that the items requested should

22   be provided.  And if they can't be specifically -- I am

23   referring to the October 22, 2015, letter to Ms. Vaughn from

24   Mr. Fieman, and I think those things should be produced by the

25   government.  I think they are reasonably relative to defense

1   theory in the case and material to that theory, giving the

2   benefit of the doubt to the defendant on that question.

3       I understand that some of the specific things requested

4   may not be readily available, but as requested in that letter,

5   if the exact figures or totals are not readily available, a

6   good faith estimate of the numbers would be sufficient.

7       If specifics are not available, I think also the number of

8   charges arising from this investigation should be -- the

9   numbers, only numbers, I am saying -- should be provided to

10  the defense.

11      Is that clear enough?  The motion should be granted to

12  that extent, and denied to the extent that the production

13  would run afoul of Rule 16(2).

14          MR. FIEMAN:  Two quick clarifications.

15      One is, if we could get an estimate -- I understand that

16  the government may need some time to figure out how to capture

17  this, but if we could have an estimate of how much time they

18  need to keep things moving forward because we do have a

19  hearing scheduled.

20          MR. BECKER:  Is the Court going to issue a written

21  order specifying what we are to provide?

22          THE COURT:  Do you need one?

23          MR. BECKER:  I think that would be our preference,

24  Your Honor, just so we are clear, because I think --

25  particularly with respect to the site statistics.  I think I

1   understand what the Court is ordering.  That last request on

2   that letter that pertained to steps taken by the government to

3   limit dissemination, we would like to be clear on what it is

4   we are to produce and by when.

5           THE COURT:  Well, I will issue an order later today.

6           MR. FIEMAN:  Your Honor, I'd understood that

7   basically the Court was granting everything -- that everything

8   in our October 22nd letter should be produced, with the

9   exception of the consultations and memoranda records that were

10  separately issued on one subheading, and that was with the

11  proviso that the government may actually open the door to that

12  or should avoid opening the door to that discovery at the

13  hearing.

14          THE COURT:  Well, I don't need to go that far.  It is

15  a matter for the trial judge, who probably will be me, but at

16  my age, who knows.

17          MR. FIEMAN:  Well, Your Honor, in that case, maybe we

18  should move up the hearing; we have got a lot before the

19  Court.

20          THE COURT:  Okay.

21          MR. BECKER:  Judge, I guess -- I think our next

22  motion hearing is scheduled for, I believe, the 22nd of

23  January.

24          THE COURT:  I think so.

25          MR. BECKER:  I guess I would request the first week

1    of January in terms of providing a response.  And if we can

2    provide it sooner, we'll do so.  Obviously we have some

3    holidays coming up, and I do need a chance to confer with

4    supervision as to some of the aspects of the Court's order.

5             MR. FIEMAN:  That will be fine, Your Honor, thank

6    you.

7             THE COURT:  All right.  Okay.  So that would end the

8    hearing, and I will issue an order this afternoon or maybe

9    later this morning.

10            MR. FIEMAN:  Thank you, Judge.

11       (Proceedings concluded.)

12

13

14                    *    *    *    *    *

15                    C E R T I F I C A T E

16

17       I certify that the foregoing is a correct transcript from

18   the record of proceedings in the above-entitled matter.

19

20   /S/  Teri Hendrix                    December 16, 2015

21   Teri Hendrix, Court Reporter              Date

22

23

24

25