1                                                    The Honorable Robert J. Bryan

2

3                        UNITED STATES DISTRICT COURT FOR THE

4                        WESTERN DISTRICT OF WASHINGTON

5                                    AT TACOMA

6

7   UNITED STATES OF AMERICA,               NO. CR15-5351RJB

8                      Plaintiff,

9

10                      v.                   UNITED STATES' RESPONSE TO

11   JAY MICHAUD,                            DEFENDANT'S MOTION TO COMPEL

12                      Defendant.

13

14          The United States of America, by and through Annette L. Hayes, United States

15   Attorney for the Western District of Washington, Matthew P. Hampton, Assistant United

16   States Attorney for said District, and Keith A. Becker, Trial Attorney, hereby files this

17   response to Defendant's Third Motion to Compel.[1]

18          Despite Michaud's claims to the contrary, the United States has provided

19   substantial discovery about the NIT that was authorized pursuant to a warrant issued in

20   the Eastern District of Virginia.  The information provided included, among other things,

21   a copy of the computer instructions sent to Michaud's computer that, when executed,

22   produced the NIT results, the NIT results themselves, the date and time the NIT was

23   executed on Michaud's computer, the Website A page that Michaud was accessing when

24   the NIT was executed, and access to computers and digital devices that were seized from

25   Michaud's home and person.

26

27   ───────────────────

28   [1] Although captioned as his "third" motion to compel, this appears to be an oversight as this is only the second
     motion to compel discovery Michaud has filed.

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Although Michaud's expert has been provided with the instructions that were delivered to Michaud's computer and the information that was obtained as a result, he now asks this Court to order the discovery of additional information regarding the use and execution of the NIT.  His request should be denied for at least two reasons.

First, Michaud fails to demonstrate that the requested information is material to his defense.  His articulated reasons for the request are focused entirely upon speculation about matters irrelevant to any purported suppression issues or defense at trial.  Nor has he explained how the information already provided is insufficient to present his defense.  His request amounts to little more than a fishing expedition, which Rule 16 does not permit.

Second, even if Michaud could show that the information he seeks is material, that information should not be disclosed because it is protected by a qualified law enforcement privilege.  Thus, to the extent the Court believes Michaud may be entitled to the information he seeks (he is not), the government asks the Court to set a hearing at which time the government may present evidence *ex parte* and *in camera* (as is the standard method) that would support its claim of privilege.

## I.      DISCOVERY REQUESTS AND THE GOVERNMENT'S RESPONSES

As the Court is aware, this case arises from an investigation that used a Network Investigative Technique ("NIT") that identified Michaud as a user of a website operating on the Tor network ("Website A") through which registered users like Michaud regularly accessed illegal child pornography.[2]  Using information obtained from the NIT, a search warrant was obtained for Michaud's residence and child pornography evidence was located on Michaud's digital devices, as well as other computer-related information identified by the NIT, including a device with the same Media Access Control ("MAC") address identified via the NIT.

---

[2] Further detail about the website, investigation and the NIT is contained in the government's response to the defendant's motion to suppress, and attachments thereto.  Dkt. 47.

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   On September 9, 2015, Michaud made a discovery request seeking information

2   regarding the NIT that identified his IP address while he accessed child pornography on

3   "Website A."  Michaud requested "[a] detailed description of the 'additional computer

4   instructions' that are downloaded onto target computers and a copy of the NIT's

5   programming code."

6   On October 30, 2015, the government responded in writing and provided detailed

7   information regarding the deployment of the NIT and the information it collected.  With

8   respect to the request for a detailed description of the computer instructions downloaded

9   by target computers, the government stated exactly what information those instructions

10  directed the defendant's "activating" computer to transmit – i.e., that "[t]he computer

11  instructions downloaded onto a target's computer (hereinafter 'activating' computer)

12  directed the 'activating' computer to transmit . . . to a computer controlled by or known

13  to the government" the computer's IP address, a unique identifier generated by the NIT to

14  distinguish the data from other computers, information about whether the NIT had

15  already been delivered to the computer, and the computer's operating system, "Host

16  Name," active operating system username, and Media Access Control ("MAC") address.

17  With respect to Michaud's request for a detailed description of the means by which those

18  instructions are introduced to target computers, the government explained, "[i]n the

19  normal course of operation, websites send content to a visitor's computer.  In accordance

20  with the search warrant authorizing the use of the NIT, when an 'activating' computer

21  requested content from Website A, Website A augmented the requested content with the

22  additional computer instructions associated with the NIT."  In response to the defendant's

23  request for a "complete copy of all information and data" that was received by the

24  Government in connection with Mr. Michaud's case by means of the NIT, the

25  government provided a comprehensive "user report" that included information and data

26  about Michaud's actions on Website A while it was under government control, including

27  the web pages he accessed and the image files present on those pages, as well as all of the

28  information collected by the NIT.  The government also pinpointed for the defense

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 exactly when the NIT was deployed to Michaud's computer and identified his IP address
2 and the Website A content Michaud was browsing at the time.  The user report also
3 makes clear that no information, other than that authorized to be collected by the NIT,
4 was collected as a function of the NIT.

5      Nonetheless, on November 20, 2015, Michaud filed a motion to compel discovery
6 in which he sought what he described as a copy of "the NIT programming code."  Dkt.
7 54.  In that motion, he argued that the information was relevant to his already-filed
8 motion to suppress and a "potential" motion pursuant to *Franks v. Delaware*, which he
9 later filed.  *Id*.  The government opposed on largely the same grounds it opposes the
10 instant motion.  Dkt. 74.

11      Before the hearing on that first motion, however, in a letter dated December 9,
12 2015, the government offered, without conceding any obligation to do so,  "to make
13 available for review, at an FBI facility, the instructions sent to [Michaud]'s computer and
14 executed that produced the NIT results."  During a follow-up conversation, defense
15 counsel confirmed that this offer would obviate the need for that issue to be taken up at
16 the hearing.  And the substance of the matter was not discussed at the December 14,
17 2015, hearing nor addressed in the order compelling discovery that resulted.

18      Defense counsel subsequently informed the government that review at an FBI
19 facility would not be feasible for his expert and requested that the government modify its
20 proposal to permit his expert to retain a copy of the material referenced in the
21 government's December 9 letter.  After an agreement regarding an appropriate protective
22 order, the government agreed to modify the terms of the arrangement as requested.  A
23 disc containing the computer instructions referenced in the government's letter was
24 provided to the defense expert pursuant to a protective order on January 11, 2016.  The
25 following day, defense counsel contacted the government and made requests for
26 additional information pertaining to the government's use and deployment of the NIT that
27 are the subject of the new motion to compel.  In response, the government requested an
28

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 4

1  explanation of the basis for the defense request, but the defense declined to do so and
2  instead filed this motion.

3  **II.      LAW AND ARGUMENT**

4  **A. Michaud Fails to Demonstrate Materiality**

5          Under Rule 16, a criminal defendant has a right to inspect documents, data, or
6  tangible items within the government's "possession, custody, or control" that are
7  "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E).  Evidence is "material"
8  under Rule 16 only if it is helpful to the development of a possible defense.  *United States*
9  *v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995).  "[I]n the context of Rule 16 'the
10 defendant's defense' means the defendant's response to the Government's case in chief."
11 *United States v. Armstrong*, 517 U.S. 456, 462 (1996).

12         A defendant must make a "threshold showing of materiality" in order to compel
13 discovery under Rule 16(a)(1)(E).  *United States v. Santiago*, 46 F.3d 885, 894 (9th
14 Cir.1995).  "Neither a general description of the information sought nor conclusory
15 allegations of materiality suffice; a defendant must present *facts* which would tend to
16 show that the Government is in possession of information helpful to the defense."  *United*
17 *States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (emphasis added).  "[O]rdering
18 production by the government without any preliminary showing of materiality is
19 inconsistent with Rule 16."  *Mandel*, 914 F.2d at 1219.  In fact, "[w]ithout a factual
20 showing there is no basis upon which the court may exercise its discretion, and for it to
21 ignore the requirement is to abuse its discretion."  *Mandel*, 914 F.2d at 1219.  Moreover,
22 Rule 16 "does not authorize a fishing expedition."  *United States v. Rigmaiden*, 844 F.
23 Supp. 2d 982, 1002 (D. Ariz. 2012).  But that is exactly the nature of the defense request.

24         Michaud claims, among other things, that the further information described by his
25 expert regarding the NIT is required (1) "so that [his] computer forensics expert can
26 independently determine the full extent of the information the Government seized from
27 [his] computer when it deployed the NIT," (2) "whether the NIT interfered with or
28 compromised any data or computer functions," (3) "whether the Government's

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 5

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   representations about how the NIT works in its warrant applications were complete and

2   accurate;" and (4) so that he can "establish the electronic 'chain of custody' for the data."

3   Dkt. 54 at 1-2; Dkt. 115 at 2.  He baldly contends, absent any legal argument or

4   explanation, that the information is relevant to his pending motions to suppress and his

5   defense at trial.  This is insufficient to meet his burden of showing materiality for the

6   requested information that he seeks.  Accordingly, the court should deny his request.

7       As described in the NIT affidavit, the NIT was comprised of computer instructions

8   that, when successfully downloaded by a user's computer, were "designed to cause the

9   user's computer to transmit certain information to a computer controlled by or known to

10  the government." Dkt. 47, Ex. 1, p. 25, ¶ 33.  Those computer instructions, and the

11  information transmitted by them through execution on Michaud's computer, have been

12  provided to the defendant's expert for analysis.  Michaud does not contend that the

13  provided instructions did not, or would not have, produced the provided results.  Rather,

14  Michaud speculates about whether analysis of other information related to the NIT's use

15  and execution might have some unspecified bearing on his defense at trial or suppression

16  arguments.  But this is exactly the sort of fishing expedition that Rule 16 does not permit.

17  Speculation, without facts, does not a showing of materiality make.

18      The NIT warrant authorized the collection of specified information using certain

19  computer instructions.  The information collected and the instructions that were used to

20  collect it have both been provided to the defense.  Despite these and the other disclosures

21  about the NIT and its operation on Michaud's computer, Michaud offers only a series of

22  speculative assertions about what information he might uncover were he granted access

23  to this additional information.  Yet he offers no explanation how this information might

24  be relevant or material to his defense nor why the information that has already provided

25  would not suffice.  The information requested is not material to his defense.

26      **1.  The extent of information seized from Michaud's computer**

27      First, Michaud claims he needs additional information "so that [his] computer

28  forensics expert can independently determine the full extent of the information the

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 6

1    Government seized from [his] computer when it deployed the NIT." Dkt. 115 at 2.  Yet,

2    Michaud has available to him the information collected by the NIT and the computer

3    instructions that generated that information.  He therefore has everything he would need

4    to "independently determine" the extent of the information collected by the NIT.

5        Equally important, nothing in Michaud's motion or the declaration from his expert

6    says otherwise.  He does not claim, for example, that the computer instructions would

7    have collected information other than what the government disclosed they did.  Nor does

8    he even identify what supposed other information *might* have been collected.  Rather,

9    Michaud's expert posits, "whether the payload that has been provided was the only

10   payload associated with the NIT or whether other payloads were executed" and claims

11   that he needs to "analyz[e] and understand[] the exploit component of the NIT" in order

12   to determine whether the information provided in discovery "was the only component

13   executing and reporting information to the government" and/or "whether the exploit

14   executed additional functions outside of the scope of the NIT warrant."  Tsyrklevich Dec.

15   at 3.

16       This speculation is wholly irrelevant to the matter at hand.  For starters, the NIT

17   results provided to Michaud consist of the only information collected by the NIT.  But

18   even if some unspecified additional information were collected by the NIT (or some other

19   set of computer instructions), Michaud does not claim that this unspecified information

20   bears on this case.  Nor could he, because the only NIT information relied upon by the

21   government in the warrant for Michaud's home and that it may rely on at trial is that

22   which has already been disclosed.

23       In short, the government provided information to Michaud regarding what the NIT

24   was authorized to collect, what it collected from his computer, and showed him the

25   computer instructions that did the collecting.  His conjecture about some heretofore

26   undisclosed information that could have been collected is irrelevant and immaterial for

27   purposes of Rule 16.

28

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### 2.  Whether the NIT interfered with or compromised any data or computer functions

Michaud also says that the further information described by his expert regarding the NIT is required to determine "whether the NIT interfered with or compromised any data or computer functions." Dkt. 115 at 2.  This too fails to support materiality.

Other than asserting that it is possible, Michaud offers no evidence to suggest that the NIT interfered with or somehow compromised any data or computer functioning. This is telling given that Michaud has available to him tools and information that he might use to support such a theory.  Michaud has access to a forensic image copy of his computer and digital devices seized, and this copy is available for examination by a computer forensic expert of his choosing.  He has also been provided with substantial information pertaining to his dates of access to Website A, and the date and time at which the NIT identified his IP address accessing the site, and as noted above, he has a copy of the computer instructions that were sent to his computer and generated the NIT results. Despite having that information, he presents nothing to this Court from any examination of that computer or those devices to support his hypothesis that the NIT *could* have interfered with or compromised any data or computer functions, let alone that it did so. Fact, not speculation, is required to support a finding of materiality.

The absence of any factual support for his hypothesis may be explained by the fact Michaud's computer—the one that belonged to him personally as opposed to the one that belonged to the school district that employed him—had software installed on it capable of restoring the computer either to its original factory settings or some other point in time determined by the user of that computer.  Significantly, the forensic analysis conducted by the FBI showed that this function was used the night before the FBI executed the warrant at Michaud's home.  In any event, the government has made available to Michaud the tools he would need to support his hypothesis.  Yet he musters only conjecture.  Rule 16 demands more.

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### 3.  Whether the Government's representations about how the NIT works in its warrant applications were complete and accurate

Michaud also says that he needs additional information about the NIT to determine "whether the Government's representations about how the NIT works in its warrant applications were complete and accurate.  Dkt. 115 at 2.  But again, he does not actually claim that the NIT worked other than as described, just that he needs to verify this is so.  Nor, more importantly, does he explain why he cannot achieve this task using the information that has already been provided or what particular aspects of the government's description he cannot test.

In describing how the NIT would operate, the NIT affidavit explained that when a user's computer accessed Website A and downloaded its content in order to display web pages on the user's computer, that content would be augmented with additional computer instructions (which comprised the NIT) that, once downloaded to a user's computer, would cause the user's computer to transmit the information specified in the warrant.  Dkt. 47, Ex. 1, p. 24, ¶ 33.[3]  And as noted above, those instructions, and the information they generated, have been provided to Michaud.  Michaud has also been given substantial information pertaining to the use and execution of the NIT warrant on his computer specifically – including exactly where on the website he was (a posting thread in the pre-teen girls hardcore videos section) when the NIT was deployed to his computer.  He also has access to the devices seized from his home.  Given all this, the best Michaud can do is hypothesize that the NIT *could* have worked other than as described in the supporting affidavit.  He cannot even muster an explanation as to what, if any, aspect of the

---

[3] Among other details about its execution, the warrant affidavit also explained that variations in the configurations of user's computers might require sending more than one communication in order to get the NIT to activate properly, Dkt. 47, Ex. 1, p. 29, ¶ 44, and that to ensure technical feasibility and avoid detection of the technique by suspects, that the FBI might deploy the NIT discretely against particular users – such as those who had attained a higher status – or in particular areas of the website containing the most egregious examples of child pornography. *Id.*, p. 24, ¶ 32, n. 8. The NIT was deployed to Michaud while he was in one of those areas (Pre-teen Videos – Girls HC).

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   description of the NIT contained in the warrant he is unable to test.  Surely, Rule 16

2   requires more.

3          Michaud's reliance on *United States v. Cedano-Arellano*, 332 F.3d 568 (9th Cir.

4   2003) (per curiam) to justify his request does not help.  In *Cedano-Arellano*, the Ninth

5   Circuit found that the district court abused its discretion when it denied discovery,

6   pursuant to Rule 16, of the certification documents and training materials for the drug

7   dog that had alerted on a defendant's car, where the handler testified about the dog's

8   certification, testing and training at a pre-trial hearing. *Cedano–Arellano*, 332 F.3d at

9   571.  The Court found that the training and certification materials at issue were "crucial

10  to [defendant's] ability to assess the dog's reliability" and "to conduct an effective cross-

11  examination of the dog's handler."  *Id.*  Here, the NIT consisted of computer instructions,

12  to which Michaud has access, that produced particular results that have also been

13  provided.  The NIT results are concrete and verifiable computer information produced

14  through computer instructions that have been provided. [4]  Thus, to the extent that

15  *Cedano-Arellano* applies, the instructions already provided are the analogue to the

16  certification and training records.

17         Significantly, Michaud does not claim that the instructions provided did not or

18  would not generate the NIT information collected by the government.  Rather, he merely

19  suggests that reviewing additional information might produce information that might

20  serve as a basis to impeach the NIT warrant.  That is vastly different than the situation in

21  *Cedano-Arellano*, and such speculation is not sufficient to trigger a disclosure obligation.

22

23  _____

24  [4] The defendant's citation to *Gamez-Orduno* is also unavailing.  There, the government failed to disclose a written
    report of a proffer session with a witness, whom the district court determined to be material because statements
    during the proffer were inconsistent with factual representations and argument made by the government. The only

25  issue on appeal was the trial court's decision not to dismiss the case.  The decision created no broad disclosure
    obligation for the government but merely acknowledged a seemingly obvious point:  withholding evidence, where it

26  has been determined that the evidence is material and helpful to the accused, at a motion to suppress may violate due
    process if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would

27  have been different," and that "[s]uch a due process violation may be cured . . . by belated disclosure of evidence, so
    long as the disclosure occurs at a time when disclosure would be of value to the accused."  *Id.*, 235 F.3d at 461-62

28  (internal quotations omitted).

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 10

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   *Cf. United States v. Guzman-Padilla*, 573 F.3d 865, 890 (9th Cir. 2009) ("[M]ere

2   speculation about materials in the government's files [does not require] the district court .

3   . . under *Brady* to make the materials available for [appellant's] inspection.") (citation

4   omitted).  Absent the required factual showing, the defendant's request amounts to

5   nothing more than a fishing expedition which is not sanctioned by Rule 16 or any other

6   law.

7                      **4.   Speculative assertions regarding a digital "chain of custody"**

8              Michaud also says that review of further information about the NIT is necessary to

9   "verify[] the 'chain of custody'" for information derived via the NIT.  Dkt. 115 at 2.  This

10  request is again purely speculative - he presents no facts whatsoever to suggest that there

11  are or were any issues with the so called "digital 'chain of custody'" pertaining to the

12  NIT-derived information.  That the NIT-derived information is computer-related

13  information does not entitle Michaud or his expert to rummage through government's

14  files, digital or otherwise, in the *hope* of finding an error in the chain of custody.  *Cf.*

15  *Guzman-Padilla*, 573 F.3d at 890

16             None of the cases Michaud cites support his proposition that the government must

17  affirmatively allow analysis of its computers and digital information on the basis of

18  speculation regarding a potential 'chain of custody' issue.  In *United States v. McDuffie*,

19  454 F. App'x 624, 626 (9th Cir. 2011), the Ninth Circuit affirmed the grant of a new trial

20  where the trial court concluded that the late disclosure just prior to trial of the fact that a

21  law enforcement officer's fingerprint was on a drug scale consisted of *Brady* information

22  because it could have impeached the officer's testimony, and he lacked time to retain

23  experts on police procedure or forensics, or engage in pre-trial discovery regarding that

24  piece of trial evidence.  545 Fed. Appx. at 626.  In *United States v. Brewster*, the district

25  court denied a defendant's request for a chain of custody document pertaining to a

26  weapon, observing that "[i]t is this Court's experience that when chain of custody is at

27  issue, witnesses simply testify to the issue during trial or at a hearing," in which case, the

28  defendant would "have the right to cross-examine such witnesses" and assuming that

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 11

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  pertinent records had been provided.  2009 WL 804709, at *4 (D. Idaho Mar. 27, 2009).

2  Finally, in *United States v. W.R. Grace*, upon a finding that such documents were

3  material, the district court ordered the government to provide chain of custody

4  documentation underlying scientific tests pertaining to asbestos testing.  233 F.R.D. 586,

5  590 (D. Mont. 2005).  None of those cases stand for or support the broad proposition that

6  a defendant may be permitted to rummage through the government's files, digital or

7  otherwise, in search of a speculative chain-of-custody issue, as is proposed here.

8              **5.  Other claims of relevance**

9          Michaud's expert also generally claims that additional information pertaining to

10 the use and execution of the NIT is needed to determine "[t]he accuracy and potential

11 admissibility of the evidence collected by the NIT" and speculates regarding whether it is

12 possible that the unique identifier generated by the NIT could be generated incorrectly.

13 Dkt. 115-1 at 3.  Michaud's expert has examined the computer instructions sent to

14 Michaud's computer that produced the NIT results, and Michaud has been provided the

15 information transmitted by them.  Yet he does not claim that the provided instructions did

16 not, or would not have, produced those results.  His questions regarding the accuracy of

17 the NIT data or the theoretical possibility that a unique identifier could have been

18 incorrectly generated rest on conjecture without explanation.  Materiality demands fact,

19 not hypothesis.  *Cf. Guzman-Padilla*, 573 F.3d at 890.

20         In addition, there is substantial evidence that bolsters the accuracy of the NIT-

21 derived information.  For example, during the search of Michaud's home, FBI seized a

22 network adapter that contains the MAC address reported via the NIT, a thumb drive that

23 was later determined to contain over 2,400 images of child pornography, including

24 images that had been available on Website A, and a 20-page manual entitled "The Jazz

25 Guide: How to Have Sex With Very Young Girls . . . Safely."  Dkt. 47, Ex. 4, p. 9, ¶ 31.

26 Michaud's expert takes none of that information into account in making his speculative

27 assertions regarding accuracy of the NIT or the pertinent unique identifier.  In light of

28

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 12

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  that information, and his failure to present facts – as opposed to conjecture – to support

2  his assertions, Michaud cannot establish materiality regarding his requests.[5]

### B. Information pertaining to the use and execution of the NIT is subject to a qualified law enforcement privilege

5  Even if the Court believes that disclosure of some or all of the information

6  requested by Michaud is required under Rule 16, a qualified law enforcement privilege

7  applies to bar disclosure because divulging the requested information would be harmful

8  to the public interest.  This is so because disclosure could, among other things, diminish

9  the future value of important investigative techniques, allow individuals to devise

10  measures to counteract these techniques in order to evade detection, discourage

11  cooperation from third parties and other governmental agencies who rely on these

12  techniques in critical situations, and possibly lead to other harmful consequences not

13  suitable for inclusion in this response.[6]  As explained below, courts have generally

14  recognized that because of the sensitivity of the information that may support this type of

15  privilege claim, it is appropriate to consider a submission from the government *ex parte*

16  and *in camera.*  Accordingly, the United States respectfully requests that the Court permit

17  the United States to offer evidence to support its privilege claim  *ex parte* and *in camera*

18  The privilege has its roots in *United States v. Roviaro*, where the Supreme Court

19  first recognized a qualified "informer's privilege" that protects the identity of government

20  informants.  353 U.S. 53, 59 (1957).  Courts have since extended the qualified privilege

21  in *Roviaro* to cover other investigative techniques such as methods of traditional and

22  electronic surveillance.  For example, in *United States v. Green*, the D.C. Circuit applied

23  the privilege to bar disclosure of the location of an observation post used in a drug

---

[5] In an attempt to further justify his request, Michaud's expert points to entirely unrelated events that he claims to have occurred in August of 2013, nearly two years prior to the pertinent events in this case, and which appears to be mostly premised upon various news articles speculating about an FBI investigation.  Nothing about those events has anything to do with the instant case and, in any event, this sort of speculation-upon-speculation does not furnish any facts to support the materiality of any of Michaud's requests.

[6] The NIT warrant affidavit informed the issuing magistrate that the United States considered the NIT to be covered by law enforcement privilege.  Dkt. 47, Ex. 1, p. 30, ¶ 47, n. 9.

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 13

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  investigation because failing to do so would "likely destroy the future value of that

2  location for police surveillance."  670 F.2d 1148, 1155 (D.C. Cir. 1981).  And in *United*

3  *States v. Van Horn*, the Eleventh Circuit applied the privilege to bar disclosure of the

4  nature and location of electronic surveillance equipment because disclosure would

5  "educate criminals regarding how to protect themselves against police surveillance."  789

6  F.2d 1492, 1507 (11th Cir. 1986); *see also In re The City of New York*, 607 F.3d 923,

7  928-29 (2d Cir. 2010) (finding that the district court erred by failing to apply the privilege

8  to reports made by undercover agents because they contained "detailed information about

9  [] undercover operations," disclosure of which would "hinder [law enforcement's] ability

10  to conduct future undercover investigations").

11      The government bears the initial burden of showing that the law enforcement

12  privilege applies to the materials at issue.  *In re The City of New York*, 607 F.3d at 944.

13  Courts then apply a balancing test to determine whether disclosure is required. *Van Horn*,

14  789 F.2d at 1508.  To meet its initial burden, the government must show that the

15  materials contain information that the law enforcement privilege is intended to protect,

16  which includes "information pertaining to law enforcement techniques and procedures,

17  information that would undermine the confidentiality of sources, information that would

18  endanger witness and law enforcement personnel [or] the privacy of individuals involved

19  in an investigation[, and information that would otherwise . . . interfere[ ] with an

20  investigation."  *City of New York*, 607 F.3d at 944 (citations and internal quotation marks

21  omitted); *see also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st

22  Cir. 2007) (extending privilege recognized for "confidential government surveillance

23  information" to "law enforcement techniques and procedures.").

24      Because the evidence required to establish the privilege is often sensitive, court,

25  including the Ninth Circuit, have recognized that it is appropriate to permit the

26  government to make its showing through an *ex parte* and *in camera* evidentiary hearing,

27  the record of which should be sealed for later review.  *See, e.g., United States v. Johns*,

28  948 F.2d 599 (9th Cir. 1991) (over the defense objection, the Court approved district

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 14

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  court's consideration of the government's request  to maintain the confidentiality of an

2  informant in an *ex parte, in camera* hearing); *United States v. McLaughlin*, 525 F.2d 517,

3  519 (9th Cir. 1975) (upholding trial court's conduct of *in camera* hearing regarding

4  disclosure of informant's identity and determining that disclosure was not required)*;*

5  *United States v. Alvarez,* 472 F.2d 111, 112-13 (9th Cir. 1973) (same); *United States v.*

6  *Fixen*, 780 F.2d 1434, 1439-40 (9th Cir. 1986) (suggesting use of *in camera* proceedings

7  to resolve law enforcement privilege issues); *United States v. Kiser*, 716 F.2d 1268, 1273

8  (9th Cir. 1983) (remanding to district court to conduct *ex parte, in camera* hearing

9  pertaining to *Roviaro* privilege issue and citing cases authorizing in camera hearings in

10  similar situations); *Van Horn*, 789 F.2d at 1508 (district court held *in camera* hearing);

11  *Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748 (7th Cir. 2002) ("Ex parte

12  consideration is common in criminal cases where, say, the identity of information might

13  otherwise be revealed"); *In re Department of Homeland Security*, 459 F.3d 565, 569-71

14  (5th Cir. 2006) (instructing the district court in a civil case to "review the documents at

15  issue *in camera* to evaluate whether the law enforcement privilege applies"); *City of New*

16  *York*, 607 F.3d at 949 (determining requesting party did not have compelling need for

17  requested information based upon *in camera* review of the documents); *Rigmaiden*, 844

18  F.Supp.2d 982 (denying defendant's requests for additional discovery about government

19  investigative technique following *ex parte, in camera* at which the court heard the

20  government's reasons for nondisclosure); *cf. United States v. Klimavicius-Viloria*, 144

21  F.3d 1249, 1261 (9th Cir. 1998) (while "ex parte hearings are generally disfavored,"

22  finding that "[i]n a case involving classified documents, however, *ex parte, in camera*

23  hearings in which government counsel participates to the exclusion of defense counsel

24  are part of the process that the district court may use in order to decide the relevancy of

25  the information.").

26       At an *ex parte, in camera* hearing, the government can provide a more detailed

27  presentation about both the nature of the information Michaud is requesting and the

28  government's concerns regarding its disclosure.  Because of the sensitivity of the

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 15

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   additional information requested and for other reasons, simply filing the material under

2   seal with a protective order is inadequate to address the government's concerns.  Indeed,

3   courts have recognized that sealing of documents and materials containing such sensitive

4   information is frequently inadequate to prevent its public disclosure.  *See, e.g.*, *City of*

5   *New York*, 607 F.3d 923, 937-39 (citing numerous specific examples of instances where

6   "sealed" materials were inadvertently or intentionally disclosed, and concluding that "[i]n

7   light of how often there are all-too-human lapses with material filed 'under seal'" that it

8   could not "conclude with confidence that filing" the sensitive information would

9   adequately protect the information from public disclosure).

10      Upon a finding that the privilege applies, there is a "'pretty strong presumption

11   against lifting the privilege.'"  *City of New York*, 607 F.3d at 945 (quoting *Dellwood*

12   *Farms v. Cargill*, 128 F.3d 1122, 1125 (7th Cir. 1997)).  The burden shifts to Michaud,

13   who must show that his need for the information overcomes the public interest in non-

14   disclosure.  *See Alvarez*, 472 F.2d at 113 (finding, regarding disclosure of informer

15   identity, that "in balancing the interest of the government against that of the accused, the

16   burden of proof is on the defendant to show need for the disclosure."); *see also Van*

17   *Horn*, 789 F.2d at 1507.  The public interest in keeping the information private must be

18   balanced against a defendant's articulated need for the information. *See Roviaro*, 353

19   U.S. at 628-29.  "Whether a proper balance renders nondisclosure erroneous must depend

20   on the particular circumstances of each case, taking into consideration the crime charged,

21   the possible defenses, the possible significance of the [privileged information], and other

22   relevant factors." *Id.* at 629.

23      In conducting this balancing, the court should consider the defendant's "need [for]

24   the evidence to conduct his defense and [whether] there are . . . adequate alternative

25   means of getting at the same point. The degree of the handicap [to the defendant] must

26   then be weighed by the trial judge against the policies underlying the privilege." *United*

27   *States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982); *see also United States v. Cintolo*,

28   818 F.2d 980, 1002 (1st Cir. 1987) (the question is "whether the [defendant]

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 16

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   demonstrate[s] an authentic 'necessity,' given the circumstances, to overbear the

2   qualified privilege"); *United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993)

3   (balancing defendant's need for information against importance of government's interest

4   in avoiding disclosure).

5       In striking this balance, the need for disclosure is more limited in the context of a

6   suppression hearing than at trial.  *See McCray v. Illinois*, 386 U.S. 300, 311 (1967); *see*

7   *also Rigmaiden*, 844 F. Supp. 2d at 990 (applying *McCray* in the context of motion for

8   disclosure of electronic tracking equipment).  Even if the party seeking disclosure

9   successfully rebuts the presumption (by a showing of, among other things, a "compelling

10  need"), the court must still then weigh the public interest in non-disclosure against the

11  need of the litigant for access to the privileged information before ultimately deciding

12  whether disclosure is required. *City of New York*, 607 F.3d at 948.

13      As can be explained in more concrete terms in an *ex parte, in camera* hearing, the

14  public interest in nondisclosure here significantly outweighs defendant's need for the

15  information, particularly in light of the defendant's speculative claims regarding the

16  materiality of the requested information.  Disclosure of the requested information would

17  diminish the future value of these investigative techniques, allow individuals to devise

18  measures to counteract these techniques in order to evade detection, discourage

19  cooperation from third parties and other governmental agencies who rely on these

20  techniques in critical situations, and possibly lead to other harmful consequences not

21  suitable for inclusion in this response.  In particular, the risk of circumvention of an

22  investigative technique if information is released has been recognized as a factor in

23  applying law enforcement privilege to electronic surveillance. *See Van Horn*, 789 F.2d at

24  1508.[7]  Accordingly, in the event the Court finds the requested information to be

25

26  _____

27  [7] Risk of circumvention has also been accepted by numerous courts as a basis for non-disclosure, in the civil FOIA context. *See, e.g., James v. U.S. Customs and Border Protection*, 549 F.Supp.2d 1, 10 (D.D.C. 2008) (concluding that CBP properly withheld information under FOIA that "could enable [others] to employ measures to neutralize

28  those techniques"); *Judicial Watch v. U.S. Department of Commerce*, 337 F.Supp.2d 146, 181-82 (D.D.C. 2004)

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 17

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  material, the Court should hold an *ex parte, in camera* hearing to assess the applicability

2  of the privilege and the defendant's need for the materials.

3       The District Court's analysis in *United States v. Rigmaiden* is instructive here.  In

4  that case, the government, acting on the authority of a tracking device warrant, used a

5  cellular site simulator in order to locate a wireless "aircard" that assisted in locating and

6  ultimately identifying the defendant.[8]  The defendant moved to compel production of

7  additional information pertaining to the technology, methods, and personnel involved in

8  tracking the "aircard."  The government provided, as here, substantial information

9  pertaining to the aircard tracking, but opposed disclosure of additional technical details,

10  asserting law enforcement privilege.  Following hearings related to the issues, including

11  an *ex parte, in camera* hearing at which the court heard the government's reasons for

12  nondisclosure, the Court denied defendant's requests, finding either they were speculative

13  and accordingly, not material, or that the defendant had not demonstrated a compelling

14  need in light of the government's persuasive showing regarding the law enforcement

15  privilege.  *Rigmaiden*, 844 F. Supp. 2d at 996-1004.

16       Here, Michaud cannot demonstrate any compelling need for the requested

17  information.  As demonstrated above, his requests are entirely speculative and

18  conclusory.  Those sorts of requests are insufficient to justify a compelling need, in light

19  of the government's assertion of privilege.  *See United States v. Buras*, 633 F.2d 1356,

20  1360 (9th Cir. 1980) (discussing *Roviaro* and holding that defendant's claim that tipster

21  might have exculpatory information insufficient to warrant disclosure); *Guzman-Padilla*,

22  573 F.3d at 890 (holding that speculation that U.S. Border Patrol policies on use of tire

23  deflation devices might be exculpatory does not justify disclosure under *Brady*).

24  Michaud cannot compel disclosure based simply on his conjecture that the privileged

25  material may contain something relevant.

26

27  ("even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their
effectiveness").

28  [8] An "aircard" may be attached to a laptop computer in order to provide Internet service.

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 18

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    In addition, Michaud has been provided or has access through discovery to

2 "adequate alternative means of getting at the same point" to which he claims disclosure

3 of the information is relevant.  *Harley*, 682 F.2d at 1020.  For instance, he has been

4 provided with the computer instructions sent to Michaud's computer and executed that

5 produced the NIT results, and the NIT results – allowing him to verify that the particular

6 instructions would have produced the particular results and therefore that the NIT was

7 properly described in the pertinent warrants.  He also has ongoing access to a forensic

8 image copy of his computers and digital devices seized, which he may have examined by

9 a computer forensic expert of his choosing, and substantial information pertaining to his

10 dates of access to the pertinent website, and the date and time at which the NIT identified

11 his IP address accessing the site.  He may analyze that information if he wishes to verify

12 that the NIT did not interfere with or compromise any data or computer functions.  And

13 to the extent that Michaud wishes to request chain of custody documentation from the

14 government regarding items to be admitted at trial, there are numerous avenues available

15 for Michaud to request such information short of seeking to rummage through the

16 government's files or to compel the government to disclose privileged material.

17 Accordingly, Michaud cannot establish the sort of compelling need required to outweigh

18 the significant public interest in nondisclosure of additional details pertaining to the use

19 and execution of the court-authorized NIT.

20

21

22

23

24

25

26

27

28

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 19

III.     CONCLUSION

For all the foregoing reasons, the Court should deny Defendant's motion to compel.

Dated this 21st day of January, 2016.

Respectfully submitted,

ANNETTE L. HAYES                        STEVEN J. GROCKI
United States Attorney                   Chief


*/s/ Matthew P. Hampton*                 */s/ Keith A. Becker*
Matthew P. Hampton                       Trial Attorney
Assistant United States Attorney         Child Exploitation and Obscenity
1201 Pacific Avenue, Suite 700           Section
Tacoma, Washington 98402                 1400 New York Ave., NW, Sixth Floor
Telephone: (253) 428-3800                Washington, DC 20530
Fax:         (253) 428-3826              Phone: (202) 305-4104
E-mail: matthew.hampton@usdoj.gov        Fax: (202) 514-1793
                                         E-mail: keith.becker@usdoj.gov

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 20

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

*/s/ Matthew P. Hampton*
Matthew P. Hampton
Assistant United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Telephone:    (253) 428-3800
Fax:          (253) 428-3826
E-mail:
matthew.hampton@usdoj.gov

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO COMPEL (*United States v. Michaud*, CR15-5351 RJB) - 21