The Honorable Robert J. Bryan

1

2

3

4

5

6

7       UNITED STATES DISTRICT COURT FOR THE
        WESTERN DISTRICT OF WASHINGTON
8                   AT TACOMA

9

10   UNITED STATES OF AMERICA,            NO. CR15-5351RJB

11                 Plaintiff,             GOVERNMENT'S MOTION FOR
                                          RECONSIDERATION OF ORDER
12                                        GRANTING DEFENDANT'S THIRD
                                          MOTION TO COMPEL AND FOR
13             v.                         LEAVE TO SUBMIT RULE 16(d)(1)
                                          FILING *EX PARTE* AND *IN CAMERA*
14   JAY MICHAUD,

15                 Defendant.             ███████████████

16

17

18                                        ***Noting Date:  April 8, 2016***

19

20                    **I.     INTRODUCTION**

21          With this motion, the United States of America, by and through Annette L. Hayes,

22   United States Attorney for the Western District of Washington, Helen J. Brunner,

23   Michael Dion, Andre M. Penalver, and Matthew P. Hampton, Assistant United States

24   Attorneys for said District, and Keith A. Becker, Trial Attorney, takes the unusual step of

25   requesting this Court to reconsider its Order Granting Defendant's Third Motion to

26   Compel Discovery (Dkt. 161). ████████████████████████████

27   ██████████████████████████████████████

28   ██████████████████████████████████

---

*United States v. Michaud* CR15-5351RJB                          UNITED STATES ATTORNEY
Government's Motion for Reconsideration of Order                 1201 PACIFIC AVENUE, SUITE 700
Granting Defendant's Third Motion to Compel and                 TACOMA, WASHINGTON 98402
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera* - 1        (253) 428-3800



1

2

3

4

5

6

7

8

9

10

11

12

13

14    For these and the other reasons outlined below, the United States is now taking the

15    unusual step of asking this Court to reconsider its Order.  The substance of this motion

16    outlines the government's reasoning for why the information the Court ordered the

17    government to disclose does not actually answer the questions the defense claims it needs

18    this information to answer.

19

20

21

22                          **II.    ARGUMENT**

23

24

25

26

27

28

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera*  - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800



*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera* - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



19        Because the *ex parte* filing will not be available to the defense, we have included

20  the broad outlines of the concerns here to provide the defense with notice.  The primary

21  focus of this memorandum is to address in greater detail the reasons why the lack of

22  access to what the defense expert refers to as the "exploit" and the other desired

23  information will not deprive the defense of the ability to address the concerns expressed

24  in the defense pleadings and therefore why reconsideration is appropriate on this basis as

25  well.  Those issues will not be addressed in the *ex parte* filing.  The accompanying

26  declaration of FBI Special Agent Daniel Alfin provides factual details to support the

27  government's claims.

28

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera*  - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B.      The Information the Court Ordered the Government to Disclose Will Not Address the Defense's Stated Concerns.**

Evaluation of the discovery requested by the defense must begin with consideration of the evidence obtained both through the deployment of the computer code that the government considers the NIT on Michaud's computer,[1] and through the subsequent execution of a search warrant at Michaud's residence.

As detailed previously, the NIT warrant authorized the collection of discrete information from target computers, including an IP address, a MAC address, and information related to the operating system and user account. In this case, the information obtained through the deployment of the NIT to the computer used by Playpen user "pewter" resulted in the execution of a search warrant at Michaud's home and his arrest. From his home, agents seized, among other things, Michaud's personal computer, two thumb drives used as electronic storage devices, and another computer that belonged to Michaud's employer. In addition, agents seized Michaud's cell phone incident to his arrest. Subsequent forensic examination of the cell phone and the two thumb drives—one of which was plugged into Michaud's television at the time of the search—confirmed those devices contained images/videos of child pornography and child erotica. Some of the images had been curated and organized into folders by subject. For example, one of those thumb drives contained a folder entitled "downloads" with dozens of subfolders with names such as "Little-Virgins" and "Nasties" that contained child pornography and child erotica. The evidence found on these thumb drives and Michaud's cell phone form the basis for Counts 1 and 3 of the Superseding Indictment.

---

[1] Although the defense chooses to define the NIT to include every aspect of obtaining information from the computers connecting to Playpen as a result of the Eastern District of Virginia warrant, the United States has not characterized the term as such. Indeed, that is obvious from the Eastern District of Virginia warrant. A warrant is required for a Fourth Amendment intrusion. Thus, for purposes of issuance of a warrant, except for night time execution or whether the agents may execute without knocking, it is irrelevant if the agents travel to or even how they gain entry to a residence to execute a warrant. What was authorized by the Eastern District of Virginia warrant was deployment of computer code (or NIT) on computer or other devices connecting to Playpen, in order to obtain the IP addresses and other information necessary to identify the user.

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera* - 5

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Count 2, charging Michaud with receipt of child pornography, pertains to his use of

2   Playpen during the period when it was under FBI control.

3          Michaud articulated two reasons to justify his request for discovery of the method

4   of deployment of the NIT to Michaud's computer, and the method by which the

5   government captured the data retrieved as a result of the NIT.  Those reasons can be

6   summarized as follows:  (1) to verify the accuracy of the information collected and

7   ensure that the NIT did not exceed the scope of the authorizing warrant; and (2) to

8   evaluate the merits of defense theory that someone or something else is responsible for

9   the child pornography found on his devices.  These reasons, however, do not establish the

10  need for this discovery.  Indeed, the defense expert's declaration does little more than

11  saying it is so.  Thus, the government now asks this Court to reconsider that basis for the

12  Order as well.

13         Michaud's claim that he needs additional discovery to verify the accuracy of the

14  information collected by the NIT and confirm that the agents did not exceed the scope of

15  the warrant authorizing the deployment of the NIT is not supported even by his expert's

16  claims.  To the contrary, Michaud has everything he needs to do this analysis.  As this

17  Court is aware, the government provided the defense expert with access to the computer

18  code that actually performed the "search" of Michaud's computer, as well as the results

19  of that search.  The government even offered to provide (and Michaud has so far declined

20  to review) the network data stream showing the communication between Michaud's

21  computer and the government computer during the execution of the NIT.  The

22  government has reviewed that data stream, however.  *See* Declaration of Special Agent

23  Daniel Alfin in Support of Government's Motion for Reconsideration (Alfin Decl.)

24  ¶¶ 11-15.  As Agent Alfin explains, reviewing the packets of information exchanged by

25  Michaud's computer and the government computer demonstrates that the specific

26  information that the government recorded *receiving* from Michaud's computer is in fact

27  the specific information that Michaud's computer *sent* to the government.  *Id.*  Of the

28  nine network packets comprising the data stream, eight reflect information necessary for

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera* - 6

1  ordinary network traffic over the Internet.  The remaining packet contains the substance

2  of the communication of the NIT results from Michaud's computer—the substance that is

3  identical to what was stored on the government's servers as having been received from

4  Michaud's computer.  *Id.*

5       Nor do Michaud's individual requests withstand scrutiny under his logic.

6  Discovery about what Michaud's expert has referred to as the "exploit" would

7  undoubtedly shed light on how the NIT actually was delivered to his computer.  But it

8  would offer no information about what the NIT did on Michaud's computer and what

9  information was collected as a result of its deployment.  Alfin Decl. ¶ 7.  His claimed

10  need for information about the servers on which the NIT results were stored is similarly

11  unavailing.  Any concern about corruption or other errors that might cast doubt on the

12  accuracy of the information obtained through the NIT instruction that is associated with

13  Michaud's computer can be addressed by review of the information that *was actually*

14  *collected*.  Alfin Decl. ¶¶ 11-15.

15       Finally, the suggestion that there might be some error in the creation of the unique

16  identifiers used to track the NIT results from individual computers to which it was

17  deployed, does not demonstrate the need to know the manner in which the NIT

18  instructions were delivered.  Although there is a  theoretical possibility of a problem with

19  unique identifiers, the government has confirmed that the unique identifiers associated

20  with the NIT results for Michaud's computer—just like the other unique identifiers for

21  the other targets of the NIT—were in fact unique.  Alfin Decl. ¶¶ 8-10.

22       Moreover, even if there were something to Michaud's concerns above, those

23  concerns relate only to the question of whether there was probable cause to support the

24  warrant authorizing the search of his home.  And unless any such defects were obvious,

25  the warrant would still stand, since the IP address directly tied to Michaud's residence,

26  and the evidence seized as a result—including the thumb drives and the cellular phone

27  containing child pornography—could still be used to support Counts 1 and 3 of the

28

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera*  - 7

1    Superseding Indictment—which are premised not on Michaud's activity using Playpen

2    but rather the evidence seized from his home.

3        Michaud also says that the additional discovery is necessary because someone or

4    something else could be responsible for planting the thousands of images of child

5    pornography found on his electronic storage devices.  Other than identifying this as a

6    theoretical possibility, however, Michaud points to no factual support for his claim that

7    further discovery regarding the NIT would be helpful in developing that theory,

8    something that seems particularly problematic in light of the organized treatment of this

9    material on the thumb drives.

10        Indeed, despite having access to the devices themselves, their contents, and the

11   NIT computer instructions, Michaud identifies not a scintilla of evidence to support his

12   theory.  He has not even, so far as the government is aware, attempted to examine the

13   devices in the government's custody.  Yet he insists that further discovery related to the

14   method of deployment of the NIT is critical to evaluating the potential viability of this

15   theory.  The defense's speculation may be plausible in theory but completely collapses

16   when one considers the actual evidence found in this case.

17        After all, none of the devices on which child pornography was found (Michaud's

18   two thumb-drives and his cellular phone) were the actual target of the NIT.  Michaud thus

19   cannot credibly claim that additional discovery related to the NIT would somehow bear

20   on how this extensive collection of child pornography found its way on those devices in

21   the extremely organized fashion in which it was arranged.  It would not, for example,

22   shed light on who plugged one of those thumb drives into the back of Michaud's

23   television or who organized the contents of the "downloads" folder described above.

24   Nor would it help explain how a phone containing child pornography was in Michaud's

25   possession at the time of his arrest.  Were there anything at all to his theory, Michaud

26   would surely point to something in the devices or their contents that lends credence or

27   explain why he cannot.  In the end, he offers little more than *hope* the information he

28

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera*  - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    seeks will somehow aid his cause.  All he has argued is simply that a thumb drive can be

2    connected to a computer.

3         Indeed, the one device to which the NIT was likely deployed, Michaud's personal

4    computer, is a device on which no child pornography was found.  This is not surprising

5    because someone, presumably Michaud, reset that computer to a preset configuration and

6    erased the hard drive the night before the search warrant was executed.  Regardless,

7    Michaud and his expert have access to this computer and a forensic image of its hard

8    drive to analyze. And here too, Michaud offers nothing to support his theory that the

9    requested information will somehow bolster his baseless claim that the method of

10   deploying the net NIT somehow opened the door for some nefarious entity to place

11   thousands of images of child pornography on his devices.

12        Even Michaud's own expert declaration does not support his claimed need. While

13   Michaud has at various times suggested that the NIT computer instructions "alter,"

14   "compromise," or "override" security features on a user's computer, Reply (Dkt. 149) at

15   2-3, 5-6, nothing in his expert's declaration supports such a claim.  The words "alter" and

16   "override" appear nowhere in the Tsyrklevich declaration.  Dkt. 115-1.  And the word

17   "compromise" appears only in the context of what defense counsel told him:  "defense

18   counsel has informed me that he is seeking to determine . . . whether [the NIT's]

19   execution may have compromised any data or functions on the target computer."  *Id*. at 3.

20   What Mr. Tsyrklevich does say is that an "exploit," consists of software that "takes

21   advantage of a software 'vulnerability' in the Tor Browser program" and that "the NIT is

22   able to circumvent the security protections in the Tor Browser."  Dkt. 115-1 at 2.  He

23   goes on to explain he needs to examine the "exploit" component to understand "whether

24   the payload data that has been provided in discovery was the only component executing

25   and reporting information to the government or whether the exploit executed additional

26   functions outside of the scope of the NIT warrant."  Dkt. 115-1 at 3.  But what he refers

27   to as the "payload data" has been provided in discovery.  The government has confirmed

28   that this was the only "payload"—as Michaud defines it—sent to Michaud's computer.

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera* - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Declaration of FBI Special Agent Daniel Alfin in Support of Governments Surreply to

2  Defendant's Third Motion to Compel (Dkt. 157) ¶ 5.  Nowhere in the Tsyrklevich

3  declaration does it state that it is possible that any of the other components related to the

4  use of the NIT could have planted child pornography on Michaud's computer or left the

5  computer vulnerable to some other "virus" or "remote user" capable of doing so.[2]

6          In the end, none of the questions Michaud claims need to be answered will

7  actually be answered by the discovery he seeks.  If he wishes to verify the accuracy of the

8  NIT information or the scope of the NIT search, then he should look to the NIT code

9  already in his possession and the information collected by the NIT.  And if he wishes to

10  test the viability of a "someone-else-did-it" theory, then he should look to the actual

11  evidence of the charged crimes—his devices—for those answers.  He has what he needs

12  to answer the questions he has raised, and additional discovery related to the NIT will be

13  of no use in that endeavor.

14                    **III.    CONCLUSION**

15          For the reasons, set forth above, the government respectfully asks this Court to

16  reconsider its Order.  As detailed above, the government continues to maintain that

17  Michaud has all the necessary tools to verify the NIT data and confirm that the NIT

18  operated as the government has said it did.  His justifications for the requested discovery

19  rest on speculation, not fact, and he has made no showing that would support the

20  requested discovery.   To the extent that this Court agrees with this assertion, this Court

21  may grant the motion to reconsider without the need to consider or address the

22  government's proposed *ex parte* filing.  Should the Court continue to find that the

23  information sought is somehow material, it may nevertheless "deny" production of that

24  ————————————————

25  [2] The court also addressed the issue of whether the NIT provided further access to Michaud's computer during the
    January 22, 2016, suppression hearing – asking Special Agent Alfin whether there was "any way for the FBI to go

26  back down this NIT to get into the subject computer, the user's computer?"  Jan. 22, 2016, Tr. p. 71.  SA Alfin
    answered, "[n]o, your Honor. After the NIT collected the limited amount of information that it was permitted to

27  collect, there was nothing that resided on the subject's computer that would allow the government to go back and
    further access that computer." Id., p. 71-72.  The Court credited Special Agent Alfin's testimony.

28

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera*  - 10

1 | information for "good cause" pursuant to Rule 16(d)(1).  Accordingly, the United States

2 | would ask the Court ████████████████████████████████████

3 | ██████████████████████████████ to reconsider its order.

4 |         DATED this 28th day of March, 2016.

5 |                                        Respectfully submitted,

6 |

7 | ANNETTE L.  HAYES                      STEVEN J.  GROCKI
   | United States Attorney                 Chief

8 |

9 |
   | */s/ Matthew P. Hampton*               */s/ Keith A. Becker*

10 | HELEN J. BRUNNER                      Trial Attorney
    | MICHAEL DION                          Child Exploitation and Obscenity

11 | ANDRE M. PENALVER                     Section
    | MATTHEW P. HAMPTON                    1400 New York Ave., NW, Sixth Floor

12 | Assistants United States Attorney     Washington, DC 20530
    | 700 Stewart Street, Suite 5220        Phone: (202) 305-4104

13 |
14 | Seattle, Washington 98101             Fax: (202) 514-1793
    | Telephone:  (206) 553-7970            E-mail: keith.becker@usdoj.gov

15 | Fax:         (206) 553-0755

16 | E-mail: matthew.hampton@usdoj.gov

17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera*  - 11

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

CERTIFICATE OF SERVICE

2

I hereby certify that on March 28, 2016, I electronically filed the foregoing with

3

the Clerk of the Court using the CM/ECF system which will send notification of such

4

filing to the attorney(s) of record for the defendant(s).

5

6

*s/Emily Miller*

7

EMILY MILLER
Legal Assistant

8

United States Attorney's Office
700 Stewart Street, Suite 5220

9

Seattle, Washington 98101-1271

10

Phone: (206) 553-2267
FAX:   (206) 553-0755

11

E-mail: emily.miller@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

*United States v. Michaud* CR15-5351RJB
Government's Motion for Reconsideration of Order
Granting Defendant's Third Motion to Compel and
for Leave to Submit Rule 16(d)(1) Filing *Ex Parte* and *In Camera*  - 12

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800