```
1              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
2                     IN TACOMA

3    _____

4    UNITED STATES OF AMERICA,    )
                                  )
5                   Plaintiff,    )   No. CR15-5351RBJ
                                  )
6              vs.                )
                                  )
7    JAY MICHAUD,                 )
                                  )
8                   Defendant.    )

9    _____

10                   MOTIONS HEARING

11   _____

12

13        BEFORE THE HONORABLE ROBERT J. BRYAN
           UNITED STATES DISTRICT COURT JUDGE

14

15                   May 5, 2016

16

17   APPEARANCES:

18   Keith Becker
     U.S. Department of Justice Criminal Division
19   Matthew Hampton
     Assistant United States Attorney
20   Representing the Plaintiff

21

22   Colin Fieman
     Linda Sullivan
23   Federal Public Defender's Office
     Representing the Defendant

24

25
```

09:32:48AM 1          THE COURT:  This is further in United States

09:32:52AM 2   versus Michaud, No. 15-5351.  Present for this hearing is

09:33:02AM 3   Mr. Michaud and his lawyers, Ms. Sullivan and Mr. Fieman;

09:33:07AM 4   and for the government, Mr. Becker and Mr. Hampton.

09:33:12AM 5   Right?

09:33:13AM 6          MR. HAMPTON:  That's correct, your Honor.

09:33:15AM 7          THE COURT:  Also, I understand Special Agent Alfin

09:33:19AM 8   is on the telephone so he can hear these proceedings as

09:33:23AM 9   well.

09:33:26AM 10   This comes on on the plaintiff's motion for

09:33:30AM 11   reconsideration, which is Docket No. 165.  I have

09:33:36AM 12   determined that I should give the government the benefit

09:33:38AM 13   of the doubt on this request for reconsideration.  I think

09:33:47AM 14   it is a close question, but under Local Criminal

09:33:52AM 15   Rule 12(c)(2)(a), I think they are -- they desire to

09:34:02AM 16   present new facts which could not have been brought to the

09:34:05AM 17   court's attention with reasonable diligence.

09:34:08AM 18   I guess that's a way of saying plaintiff's counsel was

09:34:12AM 19   diligent in their choice not to submit evidence that now

09:34:17AM 20   they wish to offer.  That may be more tactics than

09:34:26AM 21   anything, but it seems to me in the interest of a full and

09:34:34AM 22   fair hearing on the merits that I should reconsider my

09:34:43AM 23   prior ruling in the order granting the third motion to

09:34:45AM 24   compel discovery.

09:34:51AM 25   You know, in motions to reconsider we speak of them as

09:34:55AM  1   though when they are granted, the relief underlying the

09:35:00AM  2   motion for reconsideration is granted.  Really, when you

09:35:06AM  3   make a motion for reconsideration, you are asking the

09:35:08AM  4   court to reconsider its prior ruling.  I am going to do

09:35:12AM  5   that.  The motion should be granted to that extent.  But

09:35:18AM  6   the ruling granting the motion for reconsideration should

09:35:23AM  7   not be read as, of course, leaning one way or another on

09:35:28AM  8   the underlying issue.  We will just take another look at

09:35:31AM  9   it.

09:35:31AM 10        Now, as part of the motion to reconsider, which was

09:35:35AM 11   Docket 165, the plaintiffs have requested leave to present

09:35:43AM 12   Federal Rules of Criminal Procedure 16(d)(1) evidence.  I

09:35:50AM 13   am satisfied from the showing made that the plaintiff has

09:35:56AM 14   made a sufficient showing to justify an in camera

09:35:59AM 15   presentation.

09:36:03AM 16        Such proceedings should be and are rare, because they

09:36:10AM 17   fly in the face of due process considerations.  But the

09:36:15AM 18   rule allows it and the showing is sufficient, and so the

09:36:20AM 19   court will grant leave for such a presentation.

09:36:25AM 20            MR. FIEMAN:  Your Honor, I don't suppose it is

09:36:28AM 21   necessary for me --

09:36:30AM 22            THE COURT:  I can't hear you.

09:36:32AM 23            MR. FIEMAN:  Let me step up to the platform.  Your

09:36:35AM 24   Honor, I was just wondering if it was necessary for the

09:36:38AM 25   record for us to note our objection to that ruling, or is

09:36:41AM 1  it assumed from our prior pleadings?

09:36:43AM 2          THE COURT:  I understand you object.  I

09:36:45AM 3  understand.  There is some ground rules for such a

09:36:49AM 4  hearing.  First, the rule contemplates a written statement

09:36:52AM 5  only.  I am not going to conduct an evidentiary hearing

09:36:55AM 6  in camera, although I may question plaintiff's counsel

09:37:03AM 7  ex parte after I review their presentation.

09:37:10AM 8      It should be noted this is not a Classified

09:37:12AM 9  Information Procedure Act hearing, but is only under

09:37:21AM 10 Rule 16.

09:37:24AM 11     And, third, we will conduct this proceeding in the

09:37:28AM 12 jury room in camera and ex parte.

09:37:34AM 13     Now, you should understand, I think, where we are

09:37:39AM 14 going from here.  After the in camera proceeding I will

09:37:45AM 15 rule on the question of whether the information that was

09:37:50AM 16 ordered produced -- by the order granting the third motion

09:37:53AM 17 to compel should be produced to the defendant or whether

09:37:56AM 18 it may be withheld by the government.

09:38:01AM 19     If I order production, that will essentially end this

09:38:07AM 20 hearing and motion for reconsideration, and would amount

09:38:14AM 21 to a denial of the motion -- the underlying motion for

09:38:20AM 22 reconsideration.

09:38:20AM 23     If I allow the government to withhold the evidence, we

09:38:24AM 24 will then proceed with the pending motion to strike under

09:38:28AM 25 Docket 193, and argument on the materiality of the

09:38:32AM 1    withheld information, and what sanctions, if any, are

09:38:37AM 2    appropriate.  That includes the pending defendant's motion

09:38:45AM 3    to dismiss.

09:38:47AM 4       Now, that's how we are going to proceed this morning.

09:38:52AM 5    So we will recess this court proceeding, and the court

09:38:58AM 6    reporter and I will go into the jury room, and Mr. Rucker

09:39:02AM 7    or one of plaintiff's counsel can also come in.

09:39:10AM 8            MR. HAMPTON:  Your Honor.

09:39:12AM 9            THE COURT:  Mr. Hampton.

09:39:13AM 10           MR. HAMPTON:  The information security officer has

09:39:20AM 11   asked if we could have about ten minutes to prepare the

09:39:22AM 12   jury room, and then make the materials available to the

09:39:26AM 13   court.

09:39:27AM 14           THE COURT:  Whatever it takes.  As soon as that is

09:39:34AM 15   completed we will come back to court.  Mr. Rucker, I guess

09:39:42AM 16   if you will let me know when it is all set up.

         17       (At this time the ex parte in camera proceeding

10:11:33AM 18   followed.)

10:11:33AM 19           THE COURT:  It is my judgment that the showing

10:11:35AM 20   made in camera is sufficient, and the government is not

10:11:41AM 21   required to produce the information that was ordered

10:11:48AM 22   produced in the order granting the third motion to compel.

10:11:53AM 23      So let's turn our attention to the question also

10:11:59AM 24   raised in the motion for reconsideration as to the

10:12:06AM 25   materiality of that information, and what sanctions, if

10:12:11AM 1    any, might be appropriate if the government does not

10:12:17AM 2    produce the information, the source code, and so forth.

10:12:25AM 3    It is your motion.

10:12:26AM 4            MR. FIEMAN:  Your Honor, just to see where we are

10:12:30AM 5    on the record, are we moving now on the motion to

10:12:33AM 6    dismiss --

10:12:33AM 7            THE COURT:  Wait a minute.

10:12:36AM 8            MR. FIEMAN:  Are we moving now to the

10:12:40AM 9    consideration on the motion to dismiss and possible

10:12:42AM 10   sanctions?

10:12:43AM 11           THE COURT:  I would assume we will address that.

10:12:45AM 12           MR. FIEMAN:  I am unclear whose motion you are

10:12:48AM 13   referring to and who should speak first.  That's what I

10:12:50AM 14   was trying to clarify.

10:12:50AM 15           THE COURT:  The motion for reconsideration comes

10:12:52AM 16   first.

10:12:53AM 17           MR. FIEMAN:  Thank you, your Honor.

10:13:00AM 18           THE COURT:  I should tell you, I have reread all

10:13:03AM 19   of the original papers in the original motion, and in the

10:13:11AM 20   second motion to compel, most of them twice or three

10:13:20AM 21   times, and all of the supporting documents.  It is well

10:13:25AM 22   over an inch, nearly two, of paper.  So anything you want

10:13:30AM 23   to add to the showing you have made in your briefing?

10:13:36AM 24           MR. HAMPTON:  Thank you, your Honor.  The first

10:13:47AM 25   point I think we would note is that in light of the

10:13:50AM 1   court's finding the government is not obligated to turn --

10:13:53AM 2          THE COURT:  I don't think I have my hearing aids

10:13:58AM 3   adjusted right.  A lot of problems go along with being

10:14:05AM 4   old.  Speak into the mic.

10:14:08AM 5          MR. HAMPTON:  Can your Honor understand me now?

10:14:11AM 6          THE COURT:  You've got it right.  Go ahead.

10:14:13AM 7          MR. HAMPTON:  Yes, your Honor.  The first point

10:14:15AM 8   the government would make then is, in light of the court's

10:14:17AM 9   finding the government is not obligated to turn this

10:14:19AM 10  material over, that in fact no sanction would be

10:14:23AM 11  appropriate.  The government has made a showing as to the

10:14:27AM 12  law enforcement privilege.  The government believes that

10:14:30AM 13  balancing the government's interests in nondisclosure

10:14:33AM 14  against the defendant's need weighs in favor of the

10:14:36AM 15  government, and certainly does not justify any sanction.

10:14:41AM 16     In particular, that is because the government

10:14:44AM 17  continues to believe that the defendant simply has not

10:14:47AM 18  made that materiality showing.  The defense argues that it

10:14:52AM 19  needs this information to verify the NIT data.  The

10:14:56AM 20  government has provided ample opportunity and discovery

10:15:00AM 21  for the defense to make just that analysis.

10:15:05AM 22     It has the data obtained by the NIT, it has the NIT

10:15:09AM 23  code that got that data from Mr. Michaud's computer, and

10:15:14AM 24  the government is, as noted previously, willing to make

10:15:20AM 25  available that network data, the network data that would

10:15:23AM 1    show exactly what was sent from Mr. Michaud's computer by

10:15:29AM 2    the NIT to the government.  So if the concern is about

10:15:31AM 3    verifying the government's information, the defense has

10:15:33AM 4    all it needs to do.

10:15:35AM 5        Now, in response, what we have heard from the defense

10:15:38AM 6    is, well, that is all well and good, but that network

10:15:41AM 7    data, that is a red herring, that doesn't matter.  What is

10:15:44AM 8    important, though, is the defense hasn't actually looked

10:15:47AM 9    at that network data.  It has so far declined to

10:15:50AM 10   investigate that, and has simply said in conclusory

10:15:54AM 11   fashion, both counsel -- defense counsel and also in an

10:15:59AM 12   expert declaration, that that data simply wouldn't help.

10:16:02AM 13       But the government has looked at that.  Special Agent

10:16:06AM 14   Alfin looked at the network data.  He confirmed that the

10:16:09AM 15   information that the government sent -- pardon me, the

10:16:13AM 16   information that the government received from the NIT for

10:16:18AM 17   Mr. Michaud's computer -- or what was ultimately

10:16:22AM 18   determined to be Mr. Michaud's computer was exactly what

10:16:27AM 19   the NIT sent to the government when it was deployed to

10:16:30AM 20   Mr. Michaud's computer.

10:16:32AM 21       The defense, of course, also says that it needs this

10:16:35AM 22   discovery, because absent that, how can it know if the

10:16:41AM 23   government exceeded the scope of its search.  Well, your

10:16:47AM 24   Honor, as the government has stated, it did not.  The NIT

10:16:51AM 25   seized several pieces of specified information and

10:16:57AM 1   recorded them.  And that's all it did.  The defense had

10:17:00AM 2   the code that actually conducted that search, seized that

10:17:04AM 3   information.  It can confirm whether or not in fact the

10:17:09AM 4   code did what the government says it did.  And at no point

10:17:13AM 5   has the defense suggested that the code did otherwise.

10:17:18AM 6       At most, what the defense has been able to put forth

10:17:21AM 7   is the theoretical possibility that the government could

10:17:26AM 8   have exceeded the scope of its warrant.  Well, the same

10:17:31AM 9   could be said, frankly, of any warrant.

10:17:34AM 10      The fact is, when the government obtains a warrant to

10:17:37AM 11  search a home, any defendant could say, while you were

10:17:40AM 12  there seizing the drugs that you had probable cause to

10:17:43AM 13  seize, you also seized some special property that I care

10:17:47AM 14  deeply about, and that you had no authority to take.

10:17:51AM 15      Short of the government saying we did not and we don't

10:17:54AM 16  have it, I don't know what more certainty we can provide

10:17:57AM 17  to the defense.  I say that not to be flip.  I understand

10:18:02AM 18  the defense's concern, but to simply claim that it is

10:18:06AM 19  possible that the government exceeded the scope of a

10:18:08AM 20  search warrant is no answer to the question of

10:18:11AM 21  materiality.

10:18:12AM 22      And I would also note that even if the government did

10:18:16AM 23  exceed the scope of its warrant -- and it did not -- but

10:18:20AM 24  if it did, if in fact the government seized some

10:18:23AM 25  information that it was not entitled to, the remedy would

10:18:28AM 1    be suppression of that information, information that I am

10:18:31AM 2    not aware of and that the government does not intend to

10:18:34AM 3    use.  And so verifying the scope is not a reason for this

10:18:40AM 4    discovery.

10:18:41AM 5        And, finally, the defense says, well, we need this

10:18:43AM 6    information because it is possible that a virus or malware

10:18:49AM 7    is responsible for the thousands of images of child

10:18:56AM 8    pornography organized into folders found on Mr. Michaud's

10:18:58AM 9    computer.

10:18:59AM 10       The government agrees it is a theoretical possibility.

10:19:03AM 11   The defense is free to make that argument.  It is free to

10:19:07AM 12   analyze the devices to see if there is any trace of this

10:19:12AM 13   supposed malware or this virus that could have done this.

10:19:17AM 14   The defense is free to argue to a jury that that is

10:19:22AM 15   exactly what happened.  The government will in turn be

10:19:26AM 16   free to present its own evidence of user attribution, the

10:19:31AM 17   evidence of where the materials were found, what was found

10:19:37AM 18   on them, and the jury can decide.  That is why we have

10:19:42AM 19   trials.

10:19:45AM 20       But it is not for the defense to simply say, well, I

10:19:48AM 21   would really like to know what else the government has,

10:19:51AM 22   because if I do, then I will know whether or not there was

10:19:56AM 23   malware on my computer.  It simply doesn't make sense.

10:19:59AM 24   There is no support for that position in the record.  And

10:20:04AM 25   the defense has made no showing.  Indeed, the defense

10:20:07AM 1   hasn't even reviewed those devices, to the government's

10:20:10AM 2   knowledge.

10:20:13AM 3       The government has made that point several times, and

10:20:16AM 4   the defense has responded most recently with new

10:20:19AM 5   declarations.  I would note specifically the declaration

10:20:22AM 6   of Mr. Young, in which he says --

10:20:24AM 7           THE COURT:  I meant to --  You have a motion to

10:20:28AM 8   strike pending on those additional things that we should

10:20:33AM 9   resolve.

10:20:34AM 10          MR. HAMPTON:  Yes, your Honor.  What I would

10:20:37AM 11  ask --  I will turn to that right now then, just so it is

10:20:40AM 12  clear.  The government believes at this point that

10:20:44AM 13  striking those motions would be appropriate, given that

10:20:47AM 14  there has been ample opportunity to present them.

10:20:50AM 15      If the court is not inclined to do that --  Although I

10:20:54AM 16  am prepared to respond to the best of my ability at this

10:20:57AM 17  time, the government hasn't had an opportunity to share

10:21:00AM 18  those declarations with its own technical experts and

10:21:05AM 19  determine what, if any, response is appropriate.  And so

10:21:07AM 20  if the court is not inclined to strike those declarations,

10:21:11AM 21  and if the court considered those declarations meaningful

10:21:14AM 22  or important in its ultimate determination, the government

10:21:18AM 23  would simply ask for an opportunity to provide some

10:21:21AM 24  rebuttal declaration from its own technical expert, as

10:21:26AM 25  appropriate.

10:21:29AM 1      Your Honor, to turn back to Mr. Young's declaration,

10:21:34AM 2  his response --

10:21:34AM 3          THE COURT:  I don't think you ought to go into

10:21:36AM 4  that until I determine the motion to strike.

10:21:40AM 5          MR. HAMPTON:  Pardon, your Honor?  Oh, yes, of

10:21:44AM 6  course, your Honor.

10:21:56AM 7      Your Honor, then that leaves the matter -- the

10:22:04AM 8  ultimate matter of sanction, if in fact the court is

10:22:07AM 9  unpersuaded as to the government's position on materiality

10:22:13AM 10  and the effect of the law enforcement privilege here.  If

10:22:16AM 11  the court does believe that some sanction is appropriate

10:22:20AM 12  and reflects the appropriate balancing of the interests of

10:22:22AM 13  the parties, then the government would certainly

10:22:25AM 14  respectfully suggest that dismissal of the indictment in

10:22:28AM 15  its entirety is not appropriate.

10:22:32AM 16      What the defendant is prevented from doing is

10:22:37AM 17  receiving discovery that he claims is relevant to the NIT.

10:22:40AM 18  And so the appropriate sanction there is to deny the

10:22:44AM 19  government use of the evidence obtained by the NIT at

10:22:46AM 20  trial.

10:22:48AM 21          THE COURT:  Well, all of the evidence was obtained

10:22:51AM 22  by the use of the NIT, was it not?

10:22:54AM 23          MR. HAMPTON:  Well, your Honor, the evidence

10:22:57AM 24  obtained by the NIT established the finding of probable

10:22:59AM 25  cause that led to the search warrant.

10:23:02AM 1      To be clear, the government's position is that what

10:23:05AM 2  the government should be barred from doing at trial is

10:23:08AM 3  presenting specifically the information obtained by the

10:23:12AM 4  NIT and its attribution to Mr. Michaud.  So instead, leave

10:23:16AM 5  the government in the position of presenting its case

10:23:20AM 6  based on the search that was conducted of Mr. Michaud's

10:23:23AM 7  home and the evidence found therein.

10:23:26AM 8         THE COURT:  The search was based on what was found

10:23:29AM 9  by the NIT, right?

10:23:33AM 10         MR. HAMPTON:  The probable cause finding

10:23:35AM 11  supporting the search, in part -- mostly relied on

10:23:39AM 12  information obtained from the NIT, that is true.

10:23:46AM 13      Your Honor, that would be a separate question from

10:23:48AM 14  whether the evidence obtained by the NIT is admissible --

10:23:52AM 15  the actual data obtained by the NIT would be admissible at

10:23:55AM 16  a trial to, say, prove that the IP address the government

10:24:00AM 17  identified was in fact tied to Mr. Michaud.  And that

10:24:03AM 18  would be a separate question.

10:24:07AM 19      And the government acknowledges that this would be --

10:24:12AM 20  It would certainly not be a normal presentation at trial.

10:24:16AM 21  In the normal case, where the government has other

10:24:18AM 22  information that explains the story of its investigation,

10:24:23AM 23  it would normally present that.  But it also understands

10:24:26AM 24  if the court believes a sanction is the appropriate

10:24:29AM 25  outcome here, that then it will have to accept that it

14

10:24:34AM 1    cannot tell the full story, and that the jury would need

10:24:37AM 2    to hear only about the evidence obtained from

10:24:41AM 3    Mr. Michaud's home.

10:24:43AM 4        The government also recognizes, as noted in its

10:24:46AM 5    pleadings, that if the court were to impose such a

10:24:49AM 6    sanction, it would likely place the government in the

10:24:53AM 7    position of having to dismiss one of the counts in the

10:24:55AM 8    indictment, and that is Count 2, one of the two receipt

10:25:01AM 9    counts, because that count is premised on attribution --

10:25:05AM 10   largely premised on attribution that would come from the

10:25:10AM 11   NIT and from Mr. Michaud's activity on Playpen -- his

10:25:14AM 12   alleged activity on Playpen.

10:25:16AM 13       We understand that may well be the final outcome of

10:25:18AM 14   that sanction.  But that is the most to which the defense

10:25:21AM 15   would be entitled, because the remaining evidence that was

10:25:24AM 16   obtained from Mr. Michaud's home is not tied to the NIT,

10:25:33AM 17   and it would be appropriate for a jury to consider.

10:25:51AM 18       Your Honor, given the court's suggestion as to the

10:25:56AM 19   matter of the declarations, I will leave it there at this

10:25:58AM 20   point.

10:26:00AM 21           THE COURT:  Just a second.  What do you make of

10:26:08AM 22   the Ninth Circuit cases, in particular United States

10:26:11AM 23   versus Hernandez-Meza, that tend to indicate that

10:26:20AM 24   inculpatory information is material even if it only tells

10:26:30AM 25   the defendant that he might as well abandon defenses and

10:26:35AM  1    plead guilty?

10:26:36AM  2          MR. HAMPTON:  Well, your Honor, I acknowledge that

10:26:39AM  3    the Ninth Circuit has made such pronouncements.  I don't

10:26:43AM  4    believe that in this case the discovery that is at issue

10:26:47AM  5    would shed really any light on whether or not there is a

10:26:51AM  6    viable defense.  And certainly --

10:26:53AM  7          THE COURT:  How does the defense know that?

10:26:56AM  8          MR. HAMPTON:  Well, your Honor, the defense -- one

10:27:02AM  9    way the defense could know that is to at least examine the

10:27:05AM 10    devices that are at issue here to determine if in fact

10:27:08AM 11    there is any evidence, any factual support, for its claim

10:27:12AM 12    that somehow someone or something else is what placed the

10:27:17AM 13    child pornography on these devices.

10:27:20AM 14      The most the defense can say is that is a theoretical

10:27:24AM 15    possibility, and that because it is a theoretical

10:27:26AM 16    possibility they would like to know more about certain

10:27:29AM 17    information that the government has, but that has no

10:27:33AM 18    bearing on that.

10:27:34AM 19      The real answer as to whether or not there is any

10:27:37AM 20    evidentiary support for such a theory can be found by

10:27:41AM 21    searching those devices.

10:27:45AM 22          THE COURT:  Why do they have to believe what you

10:27:47AM 23    say about that?  I mean, your briefing is full of

10:27:58AM 24    statements that they won't find anything anyway, that it

10:28:05AM 25    is not going to help them anyway.  I guess you know what's

10:28:14AM 1    in there and they don't.  And you say you don't need it.

10:28:18AM 2    Why do they have to believe what you say?

10:28:24AM 3              MR. HAMPTON:  Well, your Honor, because what

10:28:30AM 4    they -- To take, for example, one of the pieces of

10:28:32AM 5    information that they wish to know about, which relate to

10:28:35AM 6    how in fact the NIT was deployed to Mr. Michaud's

10:28:40AM 7    computer, that is one aspect of their request, there is

10:28:48AM 8    no -- the defense has -- it does not explain how exactly

10:28:53AM 9    that would help them know whether or not someone or

10:28:55AM 10   something else got into Mr. Michaud's computer.

10:29:02AM 11       It would be to say that a home with an open window,

10:29:10AM 12   someone went in the open window --  Pardon me.  It would

10:29:22AM 13   be as if --  To take, say, a lock pick example.  If

10:29:26AM 14   someone picked the defendant's lock, for the defense to

10:29:29AM 15   say, well, we need to know how you picked our lock because

10:29:33AM 16   someone else could have also picked our lock, and they

10:29:36AM 17   could have planted evidence there, well, the answer is did

10:29:40AM 18   someone plant evidence there, not how someone got in.

10:29:42AM 19   That doesn't actually shed any light on whether or not

10:29:45AM 20   there was some other entity that caused that harm.

10:29:54AM 21       I apologize, your Honor.  I need some assistance

10:29:57AM 22   reading a note that I received.  If you will give me a

10:30:00AM 23   moment.

10:30:17AM 24       Thank you, your Honor.  The last point I will make is

10:30:21AM 25   if the court has some concern at the end of the day that

10:30:25AM 1    some broader sanction is appropriate, given the

10:30:28AM 2    materiality, then we would ask the court to then give us

10:30:32AM 3    an opportunity and give the parties an opportunity to more

10:30:35AM 4    fully brief that issue.  That issue was raised in part of

10:30:39AM 5    a response brief in the defense renewed motion to dismiss.

10:30:43AM 6    And so a more detailed understanding of exactly what the

10:30:46AM 7    prejudice, if any, the defendant might suffer, and how

10:30:49AM 8    exactly that could be cured with a remedy.  If the court

10:30:54AM 9    has lingering doubts that the government's proposed

10:30:56AM 10   sanction is insufficient, we would urge the court to ask

10:31:00AM 11   for additional briefing to fully assess that.

10:31:06AM 12          THE COURT:  Mr. Fieman, address the motion to

10:31:08AM 13   strike first, please.

10:31:09AM 14          MR. FIEMAN:  Thank you, your Honor.  I think the

10:31:11AM 15   very presentation you heard just a few minutes ago from

10:31:14AM 16   Mr. Hampton demonstrates why we ultimately elected to

10:31:17AM 17   submit those declarations.

10:31:19AM 18      Let me explain the posture of where we are at in

10:31:22AM 19   trying to defend the court's original disclosure order,

10:31:29AM 20   bolster our commitment to the dismissal that we have

10:31:33AM 21   requested, and at the same time try and preserve some

10:31:37AM 22   ability to work out our theories and develop our expert

10:31:40AM 23   witnesses for trial without disclosing our entire case.

10:31:44AM 24   It has been a very difficult act to balance that.

10:31:47AM 25      The government has from its initial pleadings back in

10:31:50AM 1    January --  And the court has to remember where this

10:31:53AM 2    started.  We requested this discovery in September.  The

10:31:57AM 3    government filed a motion opposing it.  It then withdrew

10:32:00AM 4    that motion, said they would turn it over, submitted a

10:32:02AM 5    proposed protective order, then gave us a mere fragment of

10:32:05AM 6    what was covered by the discovery agreement.  We had a

10:32:09AM 7    hearing, the court found materiality.

10:32:12AM 8        The government then requested until March 28th to work

10:32:16AM 9    out its internal agency and bureaucratic process, and

10:32:20AM 10   discuss additional protective measures with the defense,

10:32:23AM 11   with a deadline of March 28th for production.  On

10:32:26AM 12   March 28th we get the motion to reconsider.  And now we

10:32:29AM 13   are in the position of re-briefing, as I tried to outline

10:32:32AM 14   in the original pleadings, issues that we thought the

10:32:34AM 15   court had already resolved.  Because the standard here

10:32:37AM 16   isn't even materiality.  It is whether the discovery is

10:32:40AM 17   relevant and helpful to the defense, in ways the court

10:32:43AM 18   already pointed out.

10:32:44AM 19       Let me just focus on that, your Honor, because there

10:32:47AM 20   are two aspects, which is the pretrial aspect --

10:32:48AM 21           THE COURT:  Wait a minute.  Wait a minute.  Let's

10:32:50AM 22   talk about the motion to strike.

10:32:51AM 23           MR. FIEMAN:  I apologize, your Honor.  We

10:32:53AM 24   submitted that --  That's the reason we submitted it.  We

10:32:55AM 25   got yet again a pleading on May 6th, repetitively saying

10:33:01AM 1      that we have not demonstrated a need.

10:33:05AM 2          In that, also, in direct response to our motion to

10:33:07AM 3      dismiss, was a proposal that Mr. Hampton has made for a

10:33:10AM 4      lesser sanction.  That lesser sanction only works to the

10:33:13AM 5      government's advantage.

10:33:15AM 6          And what we felt we needed to demonstrate further if

10:33:18AM 7      the court was considering a lesser sanction was how this

10:33:23AM 8      discovery -- the entire discovery issue goes to the heart

10:33:26AM 9      of the defense case.  It is not simply a matter of carving

10:33:29AM 10     out discussion of the NIT.  This is the core of our

10:33:35AM 11     defense, is wrapped up with this discovery.

10:33:37AM 12         And to the extent that the government proposed in its

10:33:40AM 13     May 6th reply that a lesser sanction is appropriate, we

10:33:43AM 14     decided that despite the fact that we did not want to

10:33:46AM 15     continue putting our experts before the government with

10:33:49AM 16     sworn statements pretrial, despite the fact that we were

10:33:53AM 17     reluctant to continue making demonstrations of our defense

10:33:56AM 18     theories after the court had already ruled that we had

10:33:59AM 19     made a sufficient showing of materiality, the issue was

10:34:02AM 20     simply too important.

10:34:03AM 21         Now, if the government wants more time to respond, and

10:34:06AM 22     the court deems that appropriate, and that is the court's

10:34:09AM 23     decision, we do not object.

10:34:11AM 24         If we --  We suggested that this could be converted to

10:34:13AM 25     a surrebuttal, which the court has previously allowed

10:34:16AM 1   parties to submit, even one day before, we make that

10:34:19AM 2   motion.

10:34:19AM 3       But the core of this, your Honor, is that it is not

10:34:22AM 4   supposed to be a mini-trial.  The court is not supposed to

10:34:25AM 5   be assessing at this point whose experts are more

10:34:28AM 6   persuasive, whether the defense has a theory that is

10:34:33AM 7   ultimately going to persuade the jury.  That is what the

10:34:37AM 8   trial itself is for.

10:34:39AM 9       The standard here is simply do we have a good-faith

10:34:42AM 10  basis for believing the discovery, which the court last

10:34:44AM 11  already ordered the government to produce, is essential to

10:34:48AM 12  Mr. Michaud getting a fair trial.

10:34:49AM 13      And we believe that the government's repeated

10:34:51AM 14  invitation, even in its prior pleading, in its response to

10:34:55AM 15  our motion to dismiss, forced us over that weekend to

10:34:57AM 16  decide do we disclose more, do we present more, do we hold

10:35:01AM 17  back for trial.  Quite frankly, we are uncomfortable being

10:35:05AM 18  in this position to begin with, given the court's

10:35:08AM 19  February 17th ruling.  But we elected on that morning to

10:35:11AM 20  file our remaining declaration so there is a complete

10:35:14AM 21  record.

10:35:15AM 22      Now, I don't know what more to say on that point, your

10:35:18AM 23  Honor, except to explain the position we were in and the

10:35:20AM 24  reasons we filed it.  And we also believe it is directly

10:35:23AM 25  responsive as a reply briefing to the government's May 6th

10:35:27AM 1    arguments in relation to the motion to dismiss and the

10:35:30AM 2    proposed sanctions.

10:35:33AM 3            THE COURT:  Let me just address the motion to

10:35:37AM 4    strike.  You put in additional evidence as part of your

10:35:45AM 5    reply, basically.  They had no chance to respond to that.

10:35:51AM 6    For purposes of this hearing today those -- that

10:35:55AM 7    additional evidence should be stricken.  Those are the

10:36:03AM 8    attachments to Docket No. 191, and Part A of the

10:36:08AM 9    defendant's reply to the government's response to the

10:36:12AM 10   second defense motion to dismiss the indictment.

10:36:22AM 11      If those things should be considered in terms of what

10:36:26AM 12   sanctions, that's a different issue.

10:36:30AM 13          MR. FIEMAN:  That's what we are proposing, your

10:36:32AM 14   Honor.

10:36:32AM 15          THE COURT:  This question now that we are talking

10:36:35AM 16   about requires that those things not be considered by the

10:36:38AM 17   court.

10:36:38AM 18          MR. FIEMAN:  Your Honor, that's fine.  You already

10:36:40AM 19   ruled on the relevance and helpful issue.

10:36:41AM 20          THE COURT:  Pardon me?

10:36:42AM 21          MR. FIEMAN:  You have already ruled on the

10:36:44AM 22   question of whether the proposed discovery is relevant and

10:36:47AM 23   helpful.  So to the extent --

10:36:48AM 24          THE COURT:  I know what my previous ruling is.

10:36:51AM 25   The question here is whether it was correct, and what I

10:36:54AM 1    should consider is the stuff that is properly submitted,

10:36:58AM 2    not stuff that comes in after the fact.

10:37:02AM 3            MR. FIEMAN:  Your Honor, I must strongly object to

10:37:04AM 4    that for several reasons.  One is, the government was on

10:37:07AM 5    notice that we would consider submitting supplemental

10:37:10AM 6    declarations after the May 6th pleading, and they have the

10:37:13AM 7    same option.  The court has previously allowed the

10:37:16AM 8    government to file a surrebuttal on this discovery issue

10:37:18AM 9    on February 16th, by the government, for the February 17th

10:37:23AM 10   hearing --

10:37:24AM 11           THE COURT:  No.  You are telling me you disagree

10:37:25AM 12   with me.  I appreciate that.  Go ahead with your argument

10:37:29AM 13   on the question of materiality or relevance.

10:37:32AM 14           MR. FIEMAN:  That's fine, your Honor.  So what we

10:37:35AM 15   are --  At this juncture now, it seems to me, the bottom

10:37:37AM 16   line of what is going on here is that the court is trying

10:37:40AM 17   to balance three competing and legitimate interests.

10:37:44AM 18       The first is the government's need to investigate

10:37:47AM 19   internet crimes.  We have never disputed that that is a

10:37:51AM 20   fair and legitimate law enforcement purpose.

10:37:55AM 21       Mozilla is here today wanting to protect its

10:37:58AM 22   customers.  There is enormous privacy interests at stake.

10:38:01AM 23       Mr. Michaud would like a fair trial that is not based

10:38:04AM 24   on speculation about how he was targeted, and allows the

10:38:07AM 25   defense to fully present its defense at the trial.  Only

10:38:14AM 1   one set of those interests is founded on the Constitution.

10:38:18AM 2   All right.   What is fundamentally at stake here is

10:38:22AM 3   Mr. Michaud's right to a fair trial.

10:38:24AM 4      The government, as we have said all along, has the

10:38:28AM 5   right to withhold the discovery, ultimately, if the court

10:38:32AM 6   decides that is appropriate.   But that does not resolve

10:38:36AM 7   the fundamental tension here.   And that's why we put in

10:38:40AM 8   our pleading, your Honor, that even if the ex parte

10:38:43AM 9   proceeding established the worst possible potential harms

10:38:47AM 10   from disclosure, we are in the same position.

10:38:52AM 11      And the Supreme Court said in Jencks, almost 50 years

10:38:55AM 12   ago --   And I am quoting directly from the opinion, "It is

10:39:00AM 13   unconscionable to allow the government to undertake

10:39:04AM 14   prosecution and then invoke its governmental privilege to

10:39:08AM 15   deprive the accused of anything" --   This is in the

10:39:13AM 16   Supreme -- "of anything that might be material to the

10:39:15AM 17   defense."

10:39:16AM 18      Now, it is rare that we find in our courts this kind

10:39:20AM 19   of impasse.   And we have strived mightily over the last

10:39:24AM 20   eight months since we put in this discovery request to

10:39:28AM 21   reach some accommodation with the government.   They

10:39:32AM 22   submitted a proposed protective order.   And then --   I

10:39:35AM 23   don't know whether that was simply a misdirection, or

10:39:38AM 24   whatever, but apparently they are not satisfied with that.

10:39:40AM 25   They will now not turn it over under any circumstances.

10:39:44AM 1   We have agreed, consistent even with Mozilla's own privacy

10:39:48AM 2   interests, to abide by any security conditions they think

10:39:50AM 3   are appropriate and the court approves.  Any.  There is

10:39:53AM 4   nothing more we can offer.

10:39:55AM 5        And if there is any doubt about how critical this

10:39:57AM 6   is --  I refer to the operator of this browser itself, who

10:40:04AM 7   has informed the court now in its pleading that the

10:40:06AM 8   information contained in the declaration of Special Agent

10:40:10AM 9   Alfin --  It has nothing to do with our declaration.  It

10:40:12AM 10  is from Special Agent Alfin's declaration -- suggests that

10:40:16AM 11  the government exploited the very type of vulnerability

10:40:19AM 12  that would allow third parties to obtain total control --

10:40:23AM 13  this is Mozilla, total control of an unsuspecting user's

10:40:27AM 14  computer.  That's our defense.  That's what we believe

10:40:31AM 15  happened here.

10:40:32AM 16       Because right now Mr. Michaud stands an innocent man.

10:40:35AM 17  There is a presumption of innocence here.  No matter how

10:40:38AM 18  much the government wants to say, oh, we found pictures

10:40:40AM 19  here, we found pictures there, we are starting from a

10:40:42AM 20  presumption of innocence.

10:40:44AM 21       And we have clearly established that the key issue,

10:40:47AM 22  given this technology, goes beyond even the pretrial

10:40:50AM 23  issues of whether this was a suppression (sic) warrant

10:40:54AM 24  properly founded on probable cause, whether the government

10:40:57AM 25  has disclosed everything in its warrant application that

10:41:00AM 1   it was supposed to, which we know they have routinely not

10:41:04AM 2   done -- not done with sophisticated technology in other

10:41:06AM 3   cases in recent years.  It goes to the heart of our

10:41:09AM 4   defense.

10:41:10AM 5        And what the government would very much like with its

10:41:12AM 6   proposed sanction is that the jury doesn't really hear

10:41:15AM 7   very much about the government's malware.  And I can see

10:41:18AM 8   us standing at trial, trying to argue to the jury, ladies

10:41:21AM 9   and gentlemen, you have heard that Mr. Michaud's computer

10:41:27AM 10  was attacked by malware.  We are telling you that even

10:41:31AM 11  according to the experts, the people who make this

10:41:34AM 12  browser, and all the other experts who the court has seen

10:41:36AM 13  in our supplemental declarations, and will be testifying

10:41:40AM 14  at trial, that this opens up a Pandora's box of security

10:41:46AM 15  issues and third-party attacks.  But the government

10:41:48AM 16  doesn't want you to hear about that, and we really can't

10:41:50AM 17  tell you anything more about it, your Honor, because we

10:41:52AM 18  haven't seen what they did to the computer.

10:41:54AM 19       The idea that we can reverse engineer this is

10:41:57AM 20  something that we discussed back in February as an

10:41:59AM 21  impossibility.  And the government has never disputed

10:42:01AM 22  that.  You can't reverse engineer this.

10:42:04AM 23       So, your Honor, it is both a question of fairness in

10:42:12AM 24  pretrial --  Honestly, quite frankly, we are very

10:42:15AM 25  skeptical about the government's assurances.  I am not

10:42:18AM  1    saying I am skeptical of Mr. Hampton's assurances, or

10:42:22AM  2    Mr. Becker's assurances, or Agent Alfin's assurances.

10:42:25AM  3    They are the AUSAs and the case agents assigned to this

10:42:28AM  4    case.  I have interacted --  I know they are operating in

10:42:30AM  5    good faith.  That is not the issue.  They are not even in

10:42:32AM  6    the loop on most of this stuff.  They are not

10:42:35AM  7    technically-trained agents.

10:42:35AM  8        You have seen not a single declaration from a

10:42:38AM  9    qualified expert or somebody who is working at the FBI

10:42:42AM 10    research facility that even addresses our preliminary

10:42:44AM 11    issues about the identifiers and chain of custody issues,

10:42:47AM 12    basic issues, of which now over the course of the last

10:42:50AM 13    nine months the government has done nothing more than

10:42:52AM 14    repeat and repeat and repeat again, make a showing,

10:42:55AM 15    Mr. Michaud, make a showing.  And then when we continue to

10:42:58AM 16    supplement it, they ask for those showings to be stricken.

10:43:02AM 17        I don't know what more we can offer the court except

10:43:04AM 18    to spell out much more than we are normally required to in

10:43:07AM 19    terms of just showing relevance and helpfulness, where we

10:43:10AM 20    think this trial is going.

10:43:12AM 21        So for the government to say, oh, that is not a good

10:43:15AM 22    theory, they don't need the identifiers, they can

10:43:19AM 23    reconstruct this from things that our experts say are

10:43:21AM 24    relevant, are relevant to the core technical issues that

10:43:24AM 25    we are dealing with.

10:43:26AM 1      Frankly, your Honor, it puts us in an impossible

10:43:28AM 2  position.  And that is a position that the Supreme Court

10:43:31AM 3  has clearly stated once it is arrived at between the

10:43:37AM 4  government's legitimate interests in investigating its

10:43:40AM 5  crimes, its legitimate interests in wanting to be able to

10:43:46AM 6  keep secret information secret, taking all of that at face

10:43:50AM 7  value and in good faith, with that on one hand, and

10:43:54AM 8  Mr. Michaud's right to present his case to the jury not

10:43:57AM 9  built on speculation, not built on bits and pieces of

10:44:01AM 10 testimony that has been excised --  I don't even envision

10:44:05AM 11 how this would work.  But he is entitled to present his

10:44:08AM 12 case.

10:44:08AM 13      The Supreme Court has said, in that case, when that

10:44:11AM 14 fundamental impasse is reached, what gives is the choice

10:44:14AM 15 of the government, disclose or dismiss.

10:44:19AM 16      And the court was aware of this three months ago,

10:44:23AM 17 because you told the government at that time, having

10:44:26AM 18 established -- without any of the supplemental

10:44:28AM 19 declarations or anything to the court's satisfaction that

10:44:31AM 20 this evidence at issue was relevant and helpful to the

10:44:34AM 21 defense, you told the government it seems to me you can

10:44:36AM 22 either produce or dismiss.  So the court knows the

10:44:39AM 23 standard.

10:44:45AM 24      Your Honor, it is not just a matter of protecting

10:44:49AM 25 Mr. Michaud's constitutional rights, which, if anything,

10:44:54AM 1    has to trump all the other interests.  I mean, that's got

10:44:57AM 2    to be it.  Otherwise, what are we doing here in this

10:45:00AM 3    courtroom if the Fifth and Sixth Amendment isn't at some

10:45:04AM 4    point in this process going to be the deciding factor?

10:45:09AM 5        This also affects, your Honor, the court's ability to

10:45:11AM 6    exercise effective judicial oversight over the

10:45:15AM 7    government's exercise of law enforcement powers.

10:45:19AM 8        We are in the middle of a new and very complex age,

10:45:24AM 9    that things like Rule 41 and the Fourth Amendment, as

10:45:27AM 10   envisioned by the Founders, and a lot of the case law that

10:45:30AM 11   we are relying on, didn't really anticipate.

10:45:36AM 12       But what is a guiding principle through all of that is

10:45:40AM 13   that whatever emerging complexities surround evidentiary

10:45:43AM 14   issues, and a defendant's right to present his case and

10:45:47AM 15   make his arguments to a jury, is that if there comes a

10:45:52AM 16   point where there is an irreconcilable conflict, something

10:45:57AM 17   very clearly has to prevail on behalf of the defendant.

10:46:01AM 18       Now, let me tell your Honor it is not just about

10:46:07AM 19   somebody sneaking into somebody's house and taking some

10:46:10AM 20   special property.  Whatever photographs or dog toys or

10:46:15AM 21   anything Mr. Hampton was referring to in terms of search

10:46:18AM 22   warrants, that has nothing to do with this case.  Because

10:46:22AM 23   what they want to submit is a core aspect of their

10:46:25AM 24   evidence.  All right.  So judicial oversight about how

10:46:28AM 25   they obtained and our ability to challenge the reliability

10:46:31AM 1    of their identifiers, and all the other issues that remain

10:46:34AM 2    unanswered in this case, is a key aspect of the search

10:46:37AM 3    itself.

10:46:40AM 4        And then, of course, there is the trial.

10:46:46AM 5        The government has not even condescended to

10:46:50AM 6    disclose -- despite our endless efforts to reach an

10:46:54AM 7    accommodation with them, they have not even condescended

10:46:58AM 8    to disclose how their identifiers were generated.

10:47:02AM 9        They have given us no information whatsoever about

10:47:09AM 10   whether there's data storage, and all of the other things

10:47:11AM 11   that go to chain of custody, meet National Institute of

10:47:15AM 12   Science and Technology standards.

10:47:17AM 13       They have refused to answer questions about whether

10:47:19AM 14   their NIT went through the required vulnerabilities

10:47:22AM 15   equities process, which is where a panel of experts is

10:47:25AM 16   supposed to weigh the reliability and the need for this

10:47:29AM 17   type of technology against the public interest.

10:47:33AM 18       They have refused to discuss additional protective

10:47:39AM 19   measures.

10:47:39AM 20       And they did not seek an appeal of your February 17th

10:47:43AM 21   order, which the court invited them to do.

10:47:48AM 22       So we are at the point, your Honor, where our ability

10:47:51AM 23   to defend Mr. Michaud, the rubber for that is really

10:47:55AM 24   hitting the road.  And I don't make a motion to dismiss

10:48:00AM 25   lightly.  I haven't made it in any other case in my entire

10:48:03AM 1    career.

10:48:04AM 2        But what the government is proposing as a lesser

10:48:07AM 3    sanction is only going to benefit them.  Mr. Michaud is

10:48:11AM 4    facing a five-year mandatory minimum sentence because of

10:48:13AM 5    the way the government has elected to charge this case.

10:48:15AM 6    There is no difference between receipt and possession,

10:48:17AM 7    except the fact that receipt carries that hammer.

10:48:21AM 8        They would like very much to see all these cases plead

10:48:23AM 9    out without further litigation, despite the ongoing

10:48:27AM 10   litigation about the suppression issues.

10:48:31AM 11       And, frankly, I don't know what our options are going

10:48:33AM 12   to be in terms of trying to prepare this case for trial at

10:48:36AM 13   this point, if the court either vacates its prior order or

10:48:41AM 14   declines to take the remedy that I believe the Supreme

10:48:46AM 15   Court has said is required at this juncture.

10:48:53AM 16       We have done everything possible to put before the

10:48:56AM 17   court our theory of defense, anticipated testimony at

10:49:03AM 18   trial, the reasons why this information is critical both

10:49:09AM 19   to pretrial motions and our case to the jury.  We have

10:49:14AM 20   gone far beyond the proffer required by the Ninth Circuit,

10:49:17AM 21   which is simply a good-faith showing that it is relevant

10:49:19AM 22   and helpful.  If there is something more I can offer the

10:49:22AM 23   court at this time to explain why this goes to the heart

10:49:26AM 24   of the defense, we will submit it.  You merely need to

10:49:31AM 25   instruct us.

10:49:33AM 1    But short of that, and absent a dismissal, it comes

10:49:37AM 2   down to this:  Mr. Michaud is not going to get a fair

10:49:40AM 3   trial.  And that is the first time I have said it to a

10:49:43AM 4   court.  And I have no other way of putting it to your

10:49:47AM 5   Honor at this point.

10:49:50AM 6    Your Honor, we have briefed this thing to death.  It

10:49:53AM 7   has been going on for nine months.  I don't know if I need

10:49:56AM 8   to talk any more, but I, in trying to impress upon the

10:50:00AM 9   court we have struggled with this in good faith, and in

10:50:03AM 10  good faith with them as well, to try to find a middle

10:50:07AM 11  ground, I just don't know what it is.

10:50:18AM 12          THE COURT:  Response.

10:50:53AM 13          MR. HAMPTON:  Your Honor, we are at a point where

10:50:59AM 14  the court has found that the government has a legitimate

10:51:04AM 15  interest in withholding its discovery.  And given that

10:51:10AM 16  legitimate interest, given the fact that the defense

10:51:13AM 17  simply has not shown why this discovery will aid its

10:51:22AM 18  cause, there is no reason to go further.  That should be

10:51:26AM 19  the end of the matter.

10:51:31AM 20    To address just one aspect, and I will be brief,

10:51:36AM 21  nothing is preventing the defense from assessing and

10:51:40AM 22  mounting whatever defense it believes is appropriate.  I

10:51:45AM 23  do not mean to suggest that this is a trial on the

10:51:49AM 24  validity of the defense theories.  What I wanted to

10:51:56AM 25  underscore was the defense has what it needs to test its

10:51:59AM 1    theories.  If it believes that someone tampered with

10:52:05AM 2    Mr. Michaud's devices, that someone else is responsible

10:52:09AM 3    for what was found on those, then it should analyze those

10:52:13AM 4    devices, it should determine the viability of that

10:52:18AM 5    defense, and it should proceed with that defense as

10:52:20AM 6    appropriate.

10:52:22AM 7        If it believes that instead it should argue that the

10:52:28AM 8    government used malware on Mr. Michaud's computer and

10:52:32AM 9    won't tell him anything about that, and the jury should be

10:52:34AM 10   distrustful of everything the government does --

10:52:39AM 11   everything the government did in his case, he can also

10:52:41AM 12   proceed under that theory.  It is the defendant's choice.

10:52:45AM 13       But simply because the defendant -- or the defense

10:52:48AM 14   says that discovery is necessary or he can't possibly

10:52:55AM 15   proceed with his defenses, just as he -- just as the

10:52:59AM 16   defense asks the court not to take the government's word,

10:53:03AM 17   we would ask the court not to simply accept the defense's

10:53:06AM 18   word.

10:53:09AM 19       Discovery and materiality --  Materiality does not

10:53:14AM 20   exist by force of will on the part of the defendant, but

10:53:18AM 21   by an actual showing that it is relevant.  The defense has

10:53:21AM 22   what it needs to do what it says it wishes to do.  And I

10:53:25AM 23   would urge the court not to sanction the government at

10:53:29AM 24   all.

10:53:31AM 25           THE COURT:  Thank you, counsel.  Just a second

10:53:34AM 1   here.  Well, this question of relevance or materiality or

10:54:21AM 2   what should be turned over to the defense under the rules

10:54:30AM 3   is what we are talking about here.  I have not changed my

10:54:38AM 4   opinion on that based on what has been presented here on

10:54:42AM 5   this motion to reconsider.

10:54:48AM 6       I was earlier, and still am, impressed by the material

10:54:55AM 7   from Mr. Cirkovic.  It seems to me, as I said before, that

10:55:12AM 8   the defense has the right to know what tools you used to

10:55:19AM 9   hack into his computer.

10:55:28AM 10      I am impressed --  I don't think anything that the

10:55:34AM 11  government has said has overcome that showing.  The

10:55:40AM 12  response to that is substantially that the defense hasn't

10:55:46AM 13  proved what they don't know -- they haven't proved what

10:55:51AM 14  they don't know, but what they want to know is what they

10:55:58AM 15  don't know so they can determine what defenses are

10:56:00AM 16  appropriate, or, I might say, under the Ninth Circuit

10:56:08AM 17  cases, in particular the Hernandez-Meza case, which is 720

10:56:24AM 18  F.3d 760, they have a right to consider this information

10:56:32AM 19  partly to determine whether it should lead to a plea,

10:56:38AM 20  whether there are any defenses.  And I think they have a

10:56:43AM 21  right to that information.

10:56:47AM 22      I think we are right back where we were when I granted

10:56:51AM 23  the order, with one exception, and that is the government

10:56:54AM 24  is not required to produce this information.  What

10:57:01AM 25  difference that really makes is that the lawyers that are

10:57:03AM  1   holding it are not subject to a contempt order for failure

10:57:07AM  2   to produce it.  They have a right to hold it back.

10:57:14AM  3       It seems to me that the harder question that remains

10:57:21AM  4   here is a question of what should be done about things as

10:57:28AM  5   they stand, what sanctions, if any, should be imposed.

10:57:39AM  6   The government has asked for more time on that.  The

10:57:43AM  7   defense, I think, asked me to consider the things I struck

10:57:47AM  8   from this hearing.  If you want more time, I have no

10:57:51AM  9   objection to that.  But it shouldn't be very much in terms

10:57:56AM 10   of time.

10:58:11AM 11           MR. HAMPTON:  Your Honor, would the court be

10:58:13AM 12   willing to give the government two weeks?

10:58:16AM 13           THE COURT:  A little louder.

10:58:17AM 14           MR. HAMPTON:  The government would propose

10:58:19AM 15   responding on the question of sanctions in two weeks.

10:58:31AM 16           MR. FIEMAN:  Your Honor, we have no objection to

10:58:33AM 17   any time the court deems appropriate for briefing on this

10:58:36AM 18   issue, but we do have one concern, which we have raised

10:58:40AM 19   previously and the court commented on in the February 17th

10:58:43AM 20   hearing.

10:58:43AM 21           THE COURT:  I'm sorry.

10:58:44AM 22           MR. FIEMAN:  We do have one concern.  As the court

10:58:48AM 23   indicated, we cannot even -- if there is a plea offer from

10:58:50AM 24   the government, we can't even assess that at this point.

10:58:52AM 25   So we are concerned that additional time would allow the

10:58:55AM 1    government to just try and leverage the existing receipt

10:59:00AM 2    count, with its five-year mandatory minimum, to try to

10:59:03AM 3    shut this case down in the next few weeks.  Mr. Michaud

10:59:05AM 4    has given no indication that he wants to or could do that.

10:59:09AM 5        I would ask the court as a preliminary sanction, based

10:59:11AM 6    on its finding this is material, that it dismiss the

10:59:13AM 7    receipt count --

10:59:14AM 8            THE COURT:  What?

10:59:16AM 9            MR. FIEMAN:  The court dismiss, as a preliminary

10:59:19AM 10   sanction, the receipt count.  That would leave the

10:59:21AM 11   possession count, which does not carry a mandatory minimum

10:59:24AM 12   sentence.

10:59:25AM 13       We can then proceed to provide any additional

10:59:27AM 14   information, which I think will leave the court dismissing

10:59:30AM 15   the entire indictment.  But otherwise we are twisting in

10:59:33AM 16   the wind in a very vulnerable way because of the way the

10:59:38AM 17   government elected to charge this case.  And at a minimum,

10:59:40AM 18   I don't think any mandatory minimum in this case should

10:59:42AM 19   apply.

10:59:43AM 20       So that would be our preliminary request, that pending

10:59:46AM 21   further briefing, if the government is requesting it, that

10:59:48AM 22   the court dismiss the receipt count.

10:59:51AM 23           THE COURT:  I don't think I can deal with

10:59:53AM 24   sanctions piecemeal.  It just doesn't make sense to me.  I

11:00:28AM 25   don't have a calendar in front of me.

11:00:43AM  1        MR. HAMPTON:  Your Honor, I believe today is the

11:00:45AM  2   12th.  Two weeks would be the 26th, if my math is correct.

11:00:54AM  3        THE COURT:  I am thinking about laying a briefing

11:00:57AM  4   schedule on you.  The court will consider the attachments

11:01:08AM  5   that I struck earlier, the attachments to Docket 191.

11:01:21AM  6   Let's say any response by the government by the 20th, and

11:01:30AM  7   any further pleading by the defense by the 26th.

11:01:39AM  8     Do we have time on the 27th?  You want to be heard on

11:01:44AM  9   this, I suppose.  Is there any time on the 27th?

11:01:57AM 10        THE CLERK:  9:00 a.m. or 11:00 a.m.

11:02:00AM 11        THE COURT:  9:00 or 11:00.

11:02:05AM 12        MR. FIEMAN:  Mr. Michaud is scheduled for surgery

11:02:07AM 13   on the 26th.  If we could move it up a day or two, he can

11:02:13AM 14   be here on the 25th.

11:02:18AM 15        THE COURT:  By move it up, you mean before that?

11:02:23AM 16        MR. FIEMAN:  Your Honor, for example, the

11:02:24AM 17   government's brief -- I don't know what the weekdays are,

11:02:27AM 18   but let's say it is due on the 19th, and ours is due one

11:02:31AM 19   week later, in trying to schedule the hearing for the

11:02:33AM 20   25th --  It is just he is going to be out of commission

11:02:37AM 21   for a little while as a result of the surgery.

11:02:49AM 22        THE COURT:  We might still be going on Young.  Can

11:02:54AM 23   we set this for 9:00 on the 25th?  At 9:30 on the 25th, I

11:03:32AM 24   will hear brief, brief, brief oral argument.  The response

11:03:40AM 25   from the government by the 19th, and anything further from

11:03:46AM  1    the defense by the 23rd -- by the end of the workday on

11:03:54AM  2    the 23rd.

11:03:57AM  3        Further briefing should be limited to the question of

11:04:03AM  4    sanctions based on the oral rulings that I have made

11:04:09AM  5    today.

11:04:11AM  6        The motion to reconsider is granted in part, in that

11:04:19AM  7    the government need not produce the code information that

11:04:29AM  8    I requested and ordered in my previous order.  But it

11:04:35AM  9    remains that the defendant has a right to that

11:04:41AM 10    information.  So that's where we are, and we will consider

11:04:51AM 11    sanctions on that day.

           12                    (Proceedings adjourned.)

           13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

1          **C E R T I F I C A T E**

2

3

4      I, Barry Fanning, Official Court Reporter for the

5   United States District Court, Western District of

6   Washington, certify that the foregoing is a true and

7   correct transcript from the record of proceedings in the

8   above-entitled matter.

9

10

11

12   _____
     **/s/ Barry Fanning**
13   **Barry Fanning, Court Reporter**

14

15

16

17

18

19

20

21

22

23

24

25