1

JUDGE ROBERT J. BRYAN

2

3

4

5

6                    UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
7                            AT TACOMA

8

UNITED STATES OF AMERICA,           )   No.  CR15-5351RJB
9                                    )
                 Plaintiff,          )   RESPONSE TO GOVERNMENT'S
10                                   )   SUBMISSION REGARDING
          v.                         )   DISCOVERY SANCTION AND
11                                   )   DEFENDANT'S MOTION TO
                                     )   DISMISS
12   JAY MICHAUD,                    )
                                     )
13               Defendant.          )
                                     )
14   _____

15                          I.  INTRODUCTION

16          Jay Michaud, through his attorneys Colin Fieman and Linda Sullivan,

17   respectfully submits this Response to the Government's Submission Regarding

18   Discovery Sanction.  Dkt. 207.  In its Response, the Government offers a mix of

19   objections to the Court's rulings; a repetition of disagreements with defense experts;

20   and some suggestions for sanctions that are not only unworkable but would place the

21   defense at a further disadvantage.

22          The Government begins its submission with a non sequitur: It asserts that since

23   the Court has found that the Government has a legitimate law enforcement interest in

24   withholding the NIT discovery, it can proceed to prosecute Mr. Michaud without any

25   consequences, regardless of the fact that the discovery is critical to the defense.  Govt.

26   Submission at 1-2.  The Government cites no relevant authority for this proposal, but it

is fair to say that describing the remedy for non-disclosure as a "sanction" may not be accurate.  It is true that there has been no allegation that the individual prosecutors in his case have acted in bad faith, and the Court is not seeking to punish the Government for its non-disclosure.

Rather, the issue is what action the Court should take given that Mr. Michaud is unable to receive a fair trial because of the Government's decision to withhold the NIT discovery, regardless of the prosecution's reasons for doing so.  And there should be no confusion about the fact that the decision about how to proceed has until now rested with the Government.  While the Court has decided that the Government is not *required* to disclose, the Supreme Court has held that the ultimate choice between disclosure and dismissal in this type of situation rests with the Government.

As noted in prior briefing, "[t]he burden is the Government's, not to be shifted to the trial judge, to decide whether the public prejudice of allowing the [alleged] crime to go unpunished is greater than that attendant upon the possible disclosure of state secrets and other confidential information in the Government's possession." *Jencks v. United States*, 353 U.S. 657, 671 (1957) ("The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense") (quotation and citation omitted).  Simply put, the Supreme Court has held that dismissal is not only an appropriate remedy in those rare cases where there is an impasse between a legitimate governmental interest in non-disclosure and a defendant's right to a fair trial, but dismissal is in fact required.

Nevertheless, the defense believes that there is an alternative, narrower and sufficient remedy available to the Court that may also offer some procedural advantages.  Rather than dismiss the indictment outright, the Court can enter an

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    exclusion order pursuant to Fed. R. Crim P. 16(d)(2)(D) and *United States v. W.R.*

2    *Grace*, 526 F.3d 499 (9th Cir. 2008).  The order should exclude from trial all fruits of

3    the FBI's NIT search of Mr. Michaud's computer.  The Government would then have

4    the opportunity to either proceed to trial with evidence that is independent of the NIT

5    search (such as untainted inculpatory statements or testimony from witnesses who have

6    independent knowledge of alleged illegal activities), or it can seek an interlocutory

7    appeal.

8            Frankly, the defense believes that the Government will not be able to prove its

9    case under such an exclusion order.  Nevertheless, the prosecution would have an

10   opportunity to make that assessment and, as with a suppression order that excludes key

11   evidence, pursue an immediate appeal if it cannot proceed.  *W.R. Grace*, 526 F.3d at

12   508.  Further, an exclusion order would be tailored to the facts in this case.  While the

13   Government has adopted a "stonewall" approach to the NIT discovery with Mr.

14   Michaud, it may seek to be more flexible in other "Operation Pacifier" cases and an

15   exclusion order is less likely than dismissal to be viewed as a judicial condemnation of

16   the Government's entire case.[1]

17           Accordingly, the defense requests that the Court either dismiss the indictment in

18   its entirety or enter an order excluding all fruits of the NIT search warrant.

19

20

21

22

23   ---
     [1] It is worth noting that Congress may be moving in a somewhat different direction, as a
24   bipartisan group of senators have proposed legislation entitled "Stopping Mass Hacking" to
     block proposed changes to Fed. R. Crim. P. 41 that would allow the Government to "use one
25   warrant to hack an unlimited number of computers."  Rudy Takala, *Senators Propose Bill to
     Stop Mass Hacking Policy*, The Washington Examiner (May 19, 2016).  Available at:
26   http://www.washingtonexaminer.com/senators-propose-bill-to-stop-fbi-mass-hacking-
     policy/article/2591776

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 3

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

## II.  ARGUMENT

**A.      The Government's Continuing Arguments About the Materiality of the NIT Discovery are Not Helpful to Determining the Appropriate Remedy for Non-Disclosure.**

The Court has concluded that non-disclosure of the NIT discovery in this case fundamentally affects the fairness of the proceedings in three ways.  First, as the Court found in its May 18, 2016 Order (dkt. 205), the non-disclosure undermines Mr. Michaud's ability to engage in informed settlement discussions and the ability of his attorneys to provide meaningful advice about the merits of the Government's case.  *See United States v. Muniz-Jaquez*, 718 F.3d 1180 (9th Cir. 2013).

Second, non-disclosure prevents Mr. Michaud from fully investigating and raising additional pre-trial challenges to the Government's search and seizure methods.  As discussed further below, this particular prejudice that Mr. Michaud would suffer became even more acute last Thursday, in light of testimony about the NIT that Agent Daniel Alfin gave at a suppression hearing in the Eastern District of Virginia.

And, most critically, non-disclosure prevents Mr. Michaud from developing defenses for trial or, equally importantly, abandoning potential defenses in favor of others that are better supported by the evidence that the Government is withholding.  In this regard, the Court has found that while "[t]he government asserts that the N.I.T. code will not be helpful to the defense. . . that information may well, in the hands of a defense lawyer with a fertile mind, be a treasure trove of exculpatory evidence."  May 18 Order at 4.

The Government is free to note its disagreements with the Court, but instead of focusing on the question of remedies much of its Sanctions Memo revisits arguments about the materiality of the NIT discovery, an issue that the Court has now ruled on twice.  For example, the Government reminds the Court that Agent Alfin has examined the NIT "data stream" and continues to insist that it contains "everything [Mr.

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 4

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   Michaud] needs" to address the many complicated issues detailed by the defense's

2   experts.  Govt. Sanctions Memo at 8.  The Government's persistence in flogging this

3   particular evidentiary horse is notable only because it is coupled with an absurd

4   misreading of Prof. Matthew Miller's declaration.

5         According to the Government, Prof. Miller "discussed the value of the network

6   data Michaud refuses to review in another case [*Cottom*]," and then supposedly

7   contradicts himself by stating that the "data stream will not suffice."  Govt. Sanctions

8   Memo at 8-9.  As the Government is surely aware, "network data" and a "data stream"

9   are not the same thing.  Moreover, Prof. Miller explained that in the *Cottom* case the

10  Government provided access to *all* of the NIT components, and it was only *after* having

11  reviewed everything (including source code and identifiers) that the defense was able to

12  determine whether the data seized from Mr. Cottom's computer was accurate.  Dkt.

13  191, exh. A (Miller Declaration) at ¶¶ 9-11.  Indeed, in the very same paragraph cited

14  by the Government, Prof. Miller stated that the issues raised by the defense "cannot be

15  resolved by reference to the 'data stream' or other fragments of discovery that the FBI

16  is now offering to share."  *Id*. at ¶ 10; *see also* dkt. 191, exh. B (Declaration of Robert

17  Young) at ¶ 10.

18        Given the clarity of Prof. Miller's statements, it is hard to see how the

19  Government was confused by them.  The problem may be attributable to the lack of

20  expert support for the Government's arguments about the materiality of the NIT

21  discovery and the insufficiency of the minimal discovery that has been offered.  In this

22  regard, it is telling that the Government has not offered the Court a single declaration

23  from a true forensic or code expert.

24        Instead, the Government has submitted a declaration from another case agent,

25  Samuel Mautz, and a third declaration from Agent Daniel Alfin.  Agent Mautz has no

26  expertise in forensic or code analysis, and it appears that the Government has offered

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 5

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

his declaration to bolster its argument (made several times previously and implicitly rejected by the Court with its May 18 Order) that the NIT discovery is not relevant to analyzing thumb drives or a cell phone.  The fallacy underlying the lines the Government has been trying to draw around various parts of the evidence is fully addressed in the declarations of Prof. Miller and Shawn Kasal.  *See* dkt. 191, exh. A. at ¶ 7 ("Without knowing what exploit was used by the FBI in this case, we cannot determine whether the files the government says were located on various storage devices were put on those devices by Mr. Michaud"); exh. C (Kasal Declaration) at ¶ 7. In any event, even if Agent Mautz were a qualified forensics expert, in the final analysis all his declaration does is revisit one of the prosecution's disagreements with the defense's experts and the Court's findings.

The upshot of Agent Alfin's third declaration is much the same, and basically restates the Government's view that the defense can do a forensic analysis of Mr. Michaud's data storage devices to identify malware that may be on those devices.  But as Robert Young explained in his declaration, the NIT malware cannot be "reverse engineered" because of, among other technical problems, the prevalence of "hidden code," the use of encryption, and the fact that malware is often stored in temporary or volatile memory that is routinely deleted or lost when a computer's power is turned off. *See* dkt. 191, exh. B (Young Declaration) at ¶¶ 6-9.  The same problems apply to viruses and malware in general, which is why one of the main technical issues for the defense is determining what type of system *vulnerabilities* were created by the NIT. *See also* dkt. 195 (Mozilla Motion to Intervene) at 10 ("The information contained in the [second] Declaration of Special Agent Alfin suggests that the Government exploited the very type of vulnerability that would allow third parties to obtain total control [of] an unsuspecting user's computer.").

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 6

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

Moreover, Agent Alfin fails to mention in his new declaration that the Government has notified the defense that all of the data on Mr. Michaud's hard drive has been deleted, rendering a forensic analysis of the primary data storage device all but pointless.  The cause of this deletion is unclear, and it may well have been caused by viruses or malware; by the failure of law enforcement agents to properly preserve the hard drive when they seized the computer; or by errors during the Government's own attempts to forensically analyze the drive.

Finally, Agent Alfin's knowledge about how the NIT works and what it actually does has been cast in doubt by testimony he gave on May 19.  As this Court is aware, the Government has long maintained that Mr. Michaud's IP address (perhaps the key piece of information for establishing probable cause to search his home) was seized by the NIT *directly* from Mr. Michaud's computer.  *See, e.g.,* dkt. 41, exh. C-004 (the NIT warrant application) (stating that the items to be seized "from any 'activating' computer" includes the computer's "actual IP address, and the date and time that the NIT determines what that IP address is"); Dkt. 74 at 7 (the information seized from Mr. Michaud's computer included his IP address).

On May 19, however, Agent Alfin was called as a witness at a suppression hearing in *United States v. Matish*, an "Operation Pacifier" case pending in the Eastern District of Virginia.  CR16-00016 (The Hon. Henry Coke Morgan, Jr. presiding).  During that hearing, Agent Alfin asked to "clarify" the information that the NIT seized from target computers, and then stated that "the IP address, that was not actually resident on [the defendant's] computer.  *After* the NIT collected information it sent it over the regular Internet to our server, and his IP address was *observed at that time*."  *See* exh. A (relevant portions of the May 19 transcript) (emphasis added).  Agent Alfin then went on make an additional "clarification," agreeing that "multiple computers can be logged on to the Internet through the same IP address."  *Compare, e.g.,* Dkt. 47

(Govt. Response to Motion to Suppress) at 3, n. 2 ("An Internet Protocol address or "IP" address refers to a *unique* number used by *a computer* to access the Internet") (emphasis added).

        This testimony is very problematic.  If the NIT did not seize IP addresses directly from target computers, as the NIT warrant stated it would and the Government has previously maintained, then it is less clear than ever what the FBI's malware actually did to those computers.  *See also United States v. Arterbury*, CR15-182JHP (D. Okla. April 25, 2016), dkt. 42 at 6 (suppressing all fruits of NIT search based in part on finding that the NIT acted as "data extraction software" to seize IP addresses from the target computers).  If Agent Alfin's recent testimony is correct, there are now additional data verification and probable cause issues that need to be resolved.  Yet it is only now, almost a year after this case began and after the Court has already held a suppression hearing, that the defense was alerted by Mr. Matish's attorneys to this perplexing new information.  Agent Alfin's recent testimony is just one more example of how the defense has been kept largely in the dark about important evidence and issues, and why (as the Court has noted) "the defendant is not required to accept the government's assurances that reviewing the N.I.T. code will not be helpful to the defense." May 18 Order at 4.

### B.    The Government's Proposed Remedies Are Not Remedies at All.

        The Government suggests that since it has not acted in "bad faith" and "the law enforcement privilege properly shields the discovery," there should be no consequences at all for its withholding of discovery.  Govt. Sanctions Memo at 4.  The Government offers no direct authority for this argument, but it later cites *United States v. Finley*, 301 F.3d 1000 (9th Cir. 2002), for the proposition that "[e]ven exclusion of evidence is an 'appropriate remedy for a discovery rule violation only where the omission was willful

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 8

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   and motivated by a desire to obtain a tactical advantage.'"  Govt. Sanctions Memo at 5,

2   quoting *Finley*, 301 F.3d at 1018.

3       This citation is highly misleading.  Six years after *Finley* was decided, the Ninth

4   Circuit revisited the case when it decided *W.R. Grace* and held that trial courts have

5   broad discretion to use exclusion orders to regulate discovery and ensure fair criminal

6   trials, regardless of whether the Government has acted in bad faith.  *W.R. Grace*, 526

7   F.3d at 503.  In *W.R. Grace*, the trial court had set deadlines for discovery in a complex

8   criminal case, including a finalized list of the prosecution's expert witnesses.  *Id*.  The

9   Government filed its list before the deadline, but "reserved the right" to expand it, while

10  the defendant disputed the sufficiency of the prosecution's expert disclosures.  *Id.*  The

11  court, after several hearings and "chiding the government for its 'impermissibly narrow

12  view of the obligations under *Brady*,'" ultimately issued an order excluding some of the

13  prosecution's witnesses and evidence.  *Id*.

14      On appeal, the Government cited *Finley* to make the exact same argument it has

15  presented to this Court:  "[T]he government relies on *United States v. Finley*. . . for the

16  proposition that the exclusion of witnesses [or other evidence] can be imposed as a

17  sanction *only* when the district court finds the violation of a disclosure order was

18  'willful and motivated by a desire to obtain tactical a tactical advantage.'"  *W.R. Grace*,

19  526 F.3d at 514-15 (emphasis in original) (citations omitted).  What the Government

20  now overlooks is that the Ninth Circuit rejected this argument in *W.R. Grace* because

21  *Finley* "involved a defendant's right to present evidence, not the government's," and

22  therefore it has "no bearing" when it is the *Government* that is withholding evidence

23  that is material to a defendant's ability to get a fair trial.  *Id.* at 515.

24      The Ninth Circuit in *W.R. Grace* went on to affirm the trial court's exclusion

25  order (which was not premised on a finding of bad faith), and in doing so provided

26  helpful guidance for this case.  The Court of Appeals began with the principle that the

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 9

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1    discovery rules, and a trial court's "inherent powers" to regulate discovery and "to

2    manage their cases and courtrooms effectively," must "be interpreted to provide for the

3    just determination of every criminal proceeding."  *Id*. at 510; *see also id*. at 512 ("[T]he

4    essential premise of the court's inherent power to manage its cases [is] to ensure the fair

5    and effective administration of the criminal justice system.").  As a result, once a trial

6    court has determined that discovery is material to the defense, it has broad discretion to

7    enforce discovery orders and redress potential prejudice to a defendant if the

8    government (for whatever reason) does not provide discovery in a timely manner (as in

9    *W.R. Grace*) or, worse yet, does not provide material discovery at all (as in this case).

10   *See id*. at 515 ("The government's discretion to investigate and present its case does not

11   override the district court's authority to manage the trial proceedings.").

12        In addition, since the exclusion of evidence in this context is directed to

13   regulating discovery and ensuring a fair trial, an exclusion order is not even properly

14   characterized as a "sanction."  *Id*. at 514.  This is because a trial court need *not* find that

15   the Government acted in bad faith when it withheld discovery, and an exclusion does

16   not necessarily mean that nondisclosure was "willful and motivated by a desire to

17   obtain a tactical advantage."  *Id*. at 515 (citation omitted).  Instead, the exclusion is

18   simply a necessary means of ensuring that the discovery rules are applied fairly and

19   guaranteeing the defendant a fair trial.  *Id*. at 514; *see also United States v. Peters*, 937

20   F.2d 1422, 1424 (9th Cir. 1991) (exclusion orders as a remedy for withholding

21   discovery are reviewed under an abuse of discretion standard).

22        At this juncture, the Court has twice found (after exhaustive briefing and two

23   hearings) that the NIT discovery is material to the defense.  And not just for trial, but

24   also for purposes of informed settlement discussions and pretrial motions.  Indeed, the

25   Court has recognized that the discovery may include exculpatory information and have

26   substantial *Brady* implications.  May 18 Order at 4.  Under these circumstances,

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 10

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   dismissal of the indictment is an entirely appropriate and legally sound course of action.

2   *See United States v. Roviaro*, 353 U.S. 53, 60-61 (1957) (When a trial court has found

3   that discovery "is relevant and helpful to the defense" and the Government persists in

4   withholding it, the court may "dismiss the action").

5         This is especially true given that the Government has not offered the Court any

6   coherent alternatives.  Indeed, apart from maintaining that no remedy at all is needed,

7   the Government offers little meaningful advice to the Court on possible remedies short

8   of dismissal or exclusion.

9         Specifically, the Government's notion that the nondisclosure issues "will not

10  ripen until trial" is nonsense, since the defense cannot effectively prepare for trial.

11  Govt. Sanctions Memo at 2; 13-14.  It is equally unhelpful for the Government to revisit

12  the arguments it has previously made about trying to separate evidence and charges

13  based on where alleged contraband was found (*see* Govt. Sanctions Memo at 7),

14  especially since it fails to address the opinions offered by the defense's experts about

15  how all the data storage devices and evidentiary data are "networked."  *See, e.g.,* dkt.

16  191, exh. A (Miller Declaration at ¶ 5) ("Once a computer system's security has been

17  compromised, the computer and any devices that have been connected to it (such as

18  thumb drives, discs or other data storage devices) are also deemed to have been

19  compromised and vulnerable to attack.").

20        The Government's alternative suggestion that the Court should merely preclude

21  it from "offering evidence about the NIT" at trial is both disingenuous and unworkable.

22  *See* Sanctions Memo at 12.  Such a "remedy" would only place Mr. Michaud at a

23  greater disadvantage, since the keystone of his likely defense is the Government's use

24  of an NIT in the first place and all of the "reasonable doubt" consequences that flow

25  from it.  *See* dkt. 91 (Reply to Govt. Response to Motion to Dismiss) at 6 (responding

26  to this proposal when the Government first made it).  The Government's suggestion that

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   the Court should only exclude pictures that can be traced to the "Playpen" site or

2   dismiss counts that rely on those pictures is also misguided.  Govt. Sanctions Memo at

3   11. The Government has informed the defense that it cannot identify the source of most

4   or all of the non-"Playpen" pictures it has allegedly found, and in any event the defense

5   needs the NIT discovery to determine the extent to which Mr. Michaud's devices were

6   exposed to viruses and third party attacks.

7          Further, the Government has acknowledged several times that its targeting of

8   Mr. Michaud with an NIT is interwoven with the entire narrative of this case.  *See* May

9   5, 2016 Hearing Transcript at 13 ("[T]he government acknowledges that this would be

10  – it would certainly not be a normal presentation at trial"); Govt. Consolidated

11  Response to Second Motion to Dismiss (dkt. 188) at 15; February 17, 2016 Hearing

12  Transcript (dkt. 178, exh. A) at 13.  It would be all but impossible for a jury to make

13  sense of the case without substantial testimony about the NIT and what it did.  As a

14  result, trying to excise "testimony relating to the use of the NIT" (Govt. Sanctions

15  Memo at 12) would be, at a minimum, fundamentally misleading and lead the jury to

16  speculate about many important facts and issues.  *See United States v. Katakis*, 800

17  F.3d 1017, 1025 (9th Cir. 2015) (finding evidence insufficient to support conviction

18  where, under Government's theory, "the jury was left to speculate" as to the factual

19  predicate of a link in chain of inference); *United States v. Del Toro–Barboza*, 673 F.3d

20  1136, 1144 (9th Cir. 2012) ("[A] reasonable inference is one that is supported by a

21  chain of logic, rather than mere speculation dressed up in the guise of evidence")

22  (quotation marks and alteration omitted).

23              **III.  CONCLUSION**

24          In sum, the Government has not offered any fair or workable remedies other than

25  dismissal or an exclusion order encompassing all fruits of the NIT search warrant.  In

26  any event, dismissal or a comprehensive exclusion order are the appropriate and

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 12

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1   necessary remedies under *Jencks, Roviaro* and *W.R. Grace*. The defense defers to the

2   Court as to which of these two remedies is most appropriate in this case.

3           DATED this 23rd day of May, 2016.

4                                   Respectfully submitted,

5

6                                   s/ *Colin Fieman*
                                    s/ *Linda Sullivan*
7                                   Attorneys for Jay Michaud

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 13

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on May 23, 2016, I electronically filed the foregoing with

3

the Clerk of the Court using the CM/ECF system which will send notification of such

4

filing to all parties registered with the CM/ECF system.

5

6

7
                                      s/ *Amy Strickling, Paralegal*
                                        Federal Public Defender Office

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

RESPONSE TO GOV'T SUBMISSION
REGARDING DISCOVERY SANCTION
(*United States v Michaud;* CR15-5351RJB) - 14

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**