```
1              UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
2                      IN TACOMA

3    _____

4    UNITED STATES OF AMERICA,    )
                                  )
5                    Plaintiff,   )   No. CR15-5351RBJ
                                  )
6             vs.                 )
                                  )
7    JAY MICHAUD,                 )
                                  )
8                    Defendant.   )
9    _____

10          MOTIONS HEARING & COURT'S ORAL RULING

11   _____

12

13        BEFORE THE HONORABLE ROBERT J. BRYAN
            UNITED STATES DISTRICT COURT JUDGE
14

15                    May 25, 2016

16

17   APPEARANCES:

18   Keith Becker
     U.S. Department of Justice Criminal Division
19   Matthew Hampton
     Assistant United States Attorney
20   Representing the Plaintiff

21

22   Colin Fieman
     Linda Sullivan
23   Federal Public Defender's Office
     Representing the Defendant
24

25
```

```
10:00:04AM   1          THE COURT:  Good morning.

10:00:05AM   2          MR. FIEMAN:  Good morning, your Honor.

10:00:07AM   3          THE COURT:  This is further in the case of United

10:00:10AM   4   States versus Michaud, No. 15-5351.  I guess it

10:00:25AM   5   technically comes on on the defendant's motion to dismiss

10:00:29AM   6   the indictment that was found in Docket 178, but it really

10:00:35AM   7   is, I think, a Rule 16 hearing on the question of what

10:00:42AM   8   other appropriate relief the court should grant under the

10:00:46AM   9   circumstances.

10:00:49AM  10      Before we start, I want to correct something -- a

10:01:00AM  11   couple of things in the plaintiff's submission, Docket

10:01:05AM  12   No. 207.  You indicated on Page 1 that the court declined

10:01:12AM  13   to revisit its conclusion that the discovery was "properly

10:01:17AM  14   withheld" -- "though properly withheld," is material.

10:01:25AM  15   That is a misstatement.  I did revisit it on the motion to

10:01:31AM  16   reconsider.

10:01:37AM  17      A similar thing is found in the footnote on Page 3.

10:01:44AM  18   The statement is made, "The government respectfully

10:01:46AM  19   requested that the court reconsider that portion of its

10:01:49AM  20   ruling and the court declined to do so."  That is not an

10:01:55AM  21   accurate statement.  I reconsidered that issue.  As a

10:02:00AM  22   matter of fact, I reconsidered it again in preparing for

10:02:04AM  23   this hearing today.  And the more I reconsider it, the

10:02:12AM  24   more I find myself with the same ruling that I originally

10:02:17AM  25   made regarding the materiality of the withheld
```

10:02:20AM 1    information.  So be accurate in your briefing.

10:02:27AM 2        You also indicated on Page 4 that, "The court has

10:02:34AM 3    appropriately considered the balance of these interests

10:02:38AM 4    and determined that Michaud's asserted need for the

10:02:42AM 5    information, even if material, does not overcome the

10:02:48AM 6    government's and the public interest in nondisclosure."

10:02:56AM 7    That balancing test is what we are about here.  I have not

10:03:01AM 8    engaged in that, except in preparation for this

10:03:06AM 9    proceeding, and the balancing that needs to be done.

10:03:09AM 10       So with those corrections, we should commence with

10:03:18AM 11   whatever argument you wish to make.  And I guess,

10:03:22AM 12   Mr. Fieman, you are the moving party here.

10:03:27AM 13           MR. FIEMAN:  Your Honor, honestly, I don't know if

10:03:30AM 14   I have anything much to add to the argument -- the rather

10:03:32AM 15   lengthy argument made at the last hearing, which went into

10:03:35AM 16   the dismissal issues and the issues of whether Mr. Michaud

10:03:39AM 17   could get a fair trial.

10:03:40AM 18           THE COURT:  I'm sorry?

10:03:42AM 19           MR. FIEMAN:  I think I covered at the last hearing

10:03:44AM 20   during my oral argument all of the issues regarding why we

10:03:47AM 21   believe Mr. Michaud cannot get a fair trial.

10:03:49AM 22       The only analogy that I can really think of, because

10:03:53AM 23   the technology is so new and so complicated, I --  The

10:03:57AM 24   only thing I thought back to was when DNA was new on the

10:04:01AM 25   horizon, and even things like the O.J. Simpson case.  I

10:04:05AM 1   mean, those things turned on weeks of analysis and expert

10:04:07AM 2   testimony, issues regarding authentication and lab

10:04:10AM 3   processes, and they are very complicated.  And we seem to

10:04:13AM 4   be on the threshold of maybe similar new technology here.

10:04:18AM 5      I think the court has already made its findings about

10:04:20AM 6   why we need it for all three stages, settlement

10:04:25AM 7   discussions, pretrial motions, and, of course, trial.  And

10:04:28AM 8   anything --  You know, there is just new developments all

10:04:31AM 9   the time.  As indicated in our briefing, there was even

10:04:34AM 10   new testimony last week in a separate proceeding, which,

10:04:37AM 11   to me, even further muddied the waters, because we were

10:04:42AM 12   relying on representations about how and where exactly

10:04:45AM 13   certain data was seized.  Now it looks like that has

10:04:48AM 14   changed.

10:04:49AM 15      Your Honor, we believe that the case law is clear,

10:04:54AM 16   that when legitimate governmental interests collide with a

10:04:57AM 17   defendant's constitutional trial rights, the trial rights

10:05:01AM 18   trump the government's interest, and dismissal is a

10:05:07AM 19   straightforward remedy that we think we have given the

10:05:10AM 20   court the Supreme Court authority and other authority to

10:05:12AM 21   support that.

10:05:13AM 22      We proposed the Rule 16 exclusion alternative for the

10:05:16AM 23   reasons I stated in my supplemental briefing.  It may be a

10:05:19AM 24   little bit more narrowly tailored.  And we have no

10:05:23AM 25   objection to the court excluding all fruits of the NIT as

10:05:28AM  1    an alternative remedy.  But short of that, I have no other

10:05:33AM  2    suggestions to propose that would provide Mr. Michaud with

10:05:35AM  3    a fair trial, your Honor.

10:05:37AM  4             THE COURT:  Thank you.  Mr. Becker.

10:05:43AM  5             MR. BECKER:  Thank you, your Honor.  First of all,

10:05:50AM  6    with respect to the matters your Honor referenced in our

10:05:54AM  7    briefing, I certainly apologize for giving the impression

10:05:58AM  8    that the court, I guess, declined to reconsider.  I think

10:06:02AM  9    what we meant to suggest is that the court declined to

10:06:06AM 10    reconsider its ultimate conclusion that the information

10:06:09AM 11    was material.  And so I apologize if we stated that

10:06:14AM 12    clumsily and gave the impression of something otherwise.

10:06:17AM 13        In response to the court's stated concerns in its

10:06:25AM 14    order of trying to balance what is an important

10:06:28AM 15    governmental and public interest in not disclosing this

10:06:31AM 16    information with the defendant's interests in getting a

10:06:35AM 17    fair trial, we have tried to present to the court a number

10:06:38AM 18    of legal frameworks under which the court can conduct that

10:06:41AM 19    sort of balancing.  And from our view, under every one of

10:06:45AM 20    those particular frameworks, dismissal of the entire

10:06:49AM 21    indictment would be an excessive sanction to impose on the

10:06:52AM 22    government in the context of this case.

10:06:55AM 23        I just want to go through a couple of points with

10:06:58AM 24    regard to those frameworks.  First, with regard to the law

10:07:01AM 25    enforcement privilege, the law enforcement privilege can

10:07:04AM 1    operate in order to allow for the nondisclosure of

10:07:08AM 2    information even where it is material.  If that weren't

10:07:11AM 3    the case, then there wouldn't be a need for the law

10:07:14AM 4    enforcement privilege at all, because the court could

10:07:16AM 5    simply determine it's immaterial, it does not need to be

10:07:19AM 6    disclosed under Rule 16.

10:07:21AM 7        And there are numerous examples of courts applying the

10:07:24AM 8    law enforcement privilege to information, including

10:07:28AM 9    identity of informants, including the location of an

10:07:31AM 10   observation post, including detailed information about the

10:07:35AM 11   government's surveillance equipment.

10:07:38AM 12       So we believe, certainly in light of the entirety of

10:07:42AM 13   the facts here, and what the defense has available to them

10:07:45AM 14   in order to conduct the sort of assessments that they can

10:07:49AM 15   conduct, and assert the defenses that they wish to assert,

10:07:53AM 16   that there are adequate alternative means to get at the

10:07:57AM 17   same point.

10:07:58AM 18       And, therefore, the government, as the court has

10:08:02AM 19   found, is legitimately and in good-faith withholding this

10:08:05AM 20   information because of a compelling need.  The defense has

10:08:08AM 21   adequate alternatives.  And under that analysis there is

10:08:11AM 22   no sanction at all that would be required.

10:08:13AM 23       But understanding the court's interest in balancing

10:08:15AM 24   the issue here, if there is going to be a sanction that is

10:08:19AM 25   imposed it needs to be not greater than necessary in order

10:08:23AM 1    to remedy the articulated prejudice.  And we certainly

10:08:27AM 2    believe dismissal of the entire indictment would be

10:08:31AM 3    excessive.  And we have presented a number of intermediate

10:08:35AM 4    steps the court could take in the context of the overall

10:08:38AM 5    evidence in this case.

10:08:38AM 6        Normally, where information is withheld in discovery

10:08:41AM 7    and not presented in discovery, the remedy would be the

10:08:44AM 8    government doesn't get to present that evidence.  And

10:08:46AM 9    that's one possible remedy.

10:08:48AM 10       That's what the W.R. Grace case really stands for that

10:08:52AM 11   the defense cites in their briefing.  The government

10:08:55AM 12   didn't disclose -- timely disclose witnesses.  The court

10:08:57AM 13   said you're not going to be able to present those

10:08:59AM 14   witnesses, a proportional remedy to excluding the actual

10:09:03AM 15   evidence that the government would have otherwise relied

10:09:05AM 16   on.  So that's a step the court can take.

10:09:09AM 17       And if the court decides to, the court could go

10:09:11AM 18   further and say, government, you can't use the evidence

10:09:13AM 19   you are not turning over, but you also can't use the

10:09:16AM 20   evidence that the NIT derived, even what we have turned

10:09:19AM 21   over to the defense, the NIT results which they have, the

10:09:21AM 22   NIT code which they have, or even the information that

10:09:24AM 23   came from the website itself, the Playpen website.

10:09:28AM 24       Count 2.  Again, Count 2 is the count that depends on

10:09:32AM 25   proof of the Playpen site and Pewter's activity.  And the

10:09:37AM 1  court can decide that that would be an appropriate

10:09:39AM 2  sanction, prevent the government from introducing that

10:09:41AM 3  evidence.

10:09:42AM 4     As the declaration of Special Agent Mautz makes clear,

10:09:45AM 5  Counts 1 and 3 are based on information found on the

10:09:48AM 6  defendant's devices, not based on child pornography that

10:09:52AM 7  he received from the Playpen website.  It is independently

10:09:57AM 8  derived.  It doesn't rely on that sort of information.

10:10:00AM 9          THE COURT:  Doesn't it all stem from the NIT, so

10:10:10AM 10  to speak?

10:10:11AM 11          MR. BECKER:  The NIT is ultimately what revealed

10:10:13AM 12  the IP address that allowed law enforcement to obtain the

10:10:16AM 13  search warrant for the defendant's home, that's true.  But

10:10:19AM 14  that would be -- to look at it under that vein would be a

10:10:23AM 15  Wong Son fruit of the poisonous tree sort of rationale.

10:10:28AM 16  Here, the court has found that the search warrant here was

10:10:30AM 17  not unlawful, and has denied that motion, the motion to

10:10:33AM 18  suppress.  And so the Wong Son doctrine operates to --

10:10:36AM 19          THE COURT:  If I recall correctly, I found that

10:10:40AM 20  the search warrant was not appropriate, but the good faith

10:10:47AM 21  exception allowed the admission of the evidence.

10:10:54AM 22          MR. BECKER:  As well as your Honor did find a

10:10:58AM 23  technical violation of Rule 41 that did not justify

10:11:02AM 24  suppression.  My point being, the Wong Son doctrine and

10:11:05AM 25  the exclusionary rule operates to prevent the admission of

10:11:09AM  1   unlawfully obtained evidence, and the court has found

10:11:11AM  2   otherwise.  So what we are dealing with here is a

10:11:13AM  3   discovery issue about information to be presented at

10:11:16AM  4   trial, and not an issue of unlawfully obtained evidence

10:11:21AM  5   and the fruit of the poisonous tree.  They are different

10:11:24AM  6   analytical frameworks and they operate for different

10:11:26AM  7   reasons.  There is not unlawful law enforcement activity

10:11:30AM  8   here that needs to be deterred, as the court has found,

10:11:32AM  9   because the court found that suppression was

10:11:35AM 10   inappropriate.

10:11:37AM 11       In addition, there are other steps that the court can

10:11:40AM 12   take in order to regulate the trial.  Ordinarily if the

10:11:45AM 13   court were to find that the balance here does tip in favor

10:11:48AM 14   of the defense, that would argue -- under the framework of

10:11:52AM 15   the lost or destroyed evidence law, that framework, that

10:11:56AM 16   would argue for an adverse jury instruction, but not for

10:11:59AM 17   dismissal of an entire indictment.

10:12:01AM 18           THE COURT:  You mentioned in your briefing a

10:12:04AM 19   proposed jury instruction cure.  What would that

10:12:11AM 20   instruction say?

10:12:11AM 21           MR. BECKER:  The instruction could commemorate the

10:12:14AM 22   court's order and the fact that the government -- the

10:12:16AM 23   defense had requested further information, and the

10:12:19AM 24   government had declined to provide it or has not provided

10:12:22AM 25   it, and that the jury would be able to draw an adverse

10:12:28AM 1   inference from the failure to produce that information.

10:12:30AM 2   And that is normally what an adverse jury instruction

10:12:33AM 3   would do, it would say, "This information was not

10:12:38AM 4   provided, and you may draw some negative inference about

10:12:43AM 5   the failure to provide it.

10:12:47AM 6       I did also want to address, Judge, the concerns that

10:12:49AM 7   the court has mentioned in its written order, as well as

10:12:52AM 8   when we were here last time about the cases of

10:12:55AM 9   Hernandez-Meza and Muniz-Jaquez.  And this really goes to

10:13:03AM 10  the defense's ability to evaluate their options at this

10:13:07AM 11  stage in the game.  And we understand that concern.

10:13:10AM 12      But I think it is important to put those cases in

10:13:12AM 13  their appropriate context.  And that is that they involve

10:13:17AM 14  a situation where the defense goes forward with a defense,

10:13:22AM 15  and then at some point during trial a piece of evidence

10:13:25AM 16  comes up that wasn't disclosed that could have changed the

10:13:28AM 17  game, so to speak, and caused them to, if they had had it

10:13:32AM 18  sooner, reevaluate whether they would have pled guilty or

10:13:36AM 19  pursued a different defense, or gone to trial.

10:13:39AM 20      Well, the court absolutely can manage those sorts of

10:13:42AM 21  concerns now four months before trial.  That's because,

10:13:45AM 22  one, the evidence that the court has found the government

10:13:48AM 23  has legitimately withheld is not going to be used as

10:13:52AM 24  evidence at trial, and the court can absolutely prevent it

10:13:56AM 25  from being used as evidence at trial simply by ordering

10:14:00AM 1   that to be the case.  That means that the defense knows

10:14:04AM 2   what is going to be admitted and what can't be admitted

10:14:07AM 3   before trial, and so can evaluate their options about

10:14:11AM 4   pleading or going to trial or about what defenses they

10:14:14AM 5   wish to raise.

10:14:15AM 6       Again, the concern there in those cases was there was

10:14:18AM 7   some sort of evidentiary trump card about which the

10:14:21AM 8   defense was not aware, and then the court ultimately

10:14:25AM 9   allowed the government to play that card, where it hadn't

10:14:28AM 10  been disclosed previously.  But the court can prevent that

10:14:31AM 11  from happening here simply by excluding evidence and

10:14:34AM 12  information that has not been provided, or even going

10:14:37AM 13  further, if the court chooses, as we have suggested.

10:14:43AM 14      Not having this information, there is still --  We are

10:14:51AM 15  not going --  We respect the court's materiality finding.

10:14:55AM 16  Obviously we have disagreed with it, but it is the court's

10:14:59AM 17  finding.

10:15:00AM 18      There is still an assessment, though, of what the

10:15:02AM 19  prejudice is to the defense of not having the information

10:15:04AM 20  that has been withheld.

10:15:07AM 21      And here, there is so much information that the

10:15:09AM 22  defense has in order to be able to raise the sorts of

10:15:11AM 23  defenses they indicate they wish to raise, whether that is

10:15:15AM 24  a virus defense, a vulnerability defense, a possibility

10:15:19AM 25  that some malicious actor put child pornography on their

10:15:24AM 1  computer.  They've got all of the devices.  They have five

10:15:27AM 2  purported experts to analyze those and develop those sorts

10:15:30AM 3  of issues.  They have the ability to look at the devices,

10:15:34AM 4  determine what the vulnerabilities are, see what's on

10:15:37AM 5  there, run tests, see if there is viruses, and put in

10:15:40AM 6  testimony, if the court admits it, to support the general

10:15:44AM 7  possibilities that it is possible for someone to find a

10:15:47AM 8  vulnerability on a computer and to put code on that

10:15:50AM 9  computer or take action regarding that computer; or

10:15:55AM 10 evidence that there are viruses, if they contend as much,

10:15:58AM 11 that can put child pornography on a computer.  They have

10:16:01AM 12 already submitted to the court numerous declarations from

10:16:03AM 13 purported experts in order to support that view.

10:16:06AM 14 Presumably, if they can qualify those experts before your

10:16:10AM 15 Honor, they would be able to present that sort of defense

10:16:12AM 16 at trial if they wish to do so.  And they've got that

10:16:16AM 17 information in order to do that.

10:16:18AM 18     This comes back, again, to that first framework of do

10:16:24AM 19 they have a means to get at the same point with the

10:16:26AM 20 information that has been disclosed and what they have?

10:16:29AM 21 And certainly the government's evidence is going to have

10:16:32AM 22 to come from those devices that were seized from the

10:16:34AM 23 defendant's home.  That's what we have to analyze.  And

10:16:38AM 24 the court can make that absolutely clear through lesser

10:16:40AM 25 sanctions than dismissing all of the charges in the entire

10:16:44AM 1    indictment.

10:16:49AM 2        One point that I wish to make as well, Judge, is about

10:16:52AM 3    the materiality versus centrality.  And we have

10:16:56AM 4    highlighted this in our briefing as well with regard to

10:16:58AM 5    the Budziac case.  And that is that a finding of

10:17:02AM 6    materiality regarding information to be disclosed does not

10:17:05AM 7    necessarily make it central to the government's case.  And

10:17:08AM 8    that's something that we see in Budziac I and Budziac II,

10:17:12AM 9    where the court goes through an analysis of was this

10:17:16AM 10   information central to the charges that were presented at

10:17:19AM 11   trial?  And for the reasons that we put forth in the Mautz

10:17:23AM 12   declaration, with respect to Counts 1 and 3, the

10:17:27AM 13   information the court has found the government may

10:17:29AM 14   withhold is simply tangential at best, and the court can

10:17:33AM 15   make it absolutely tangential by just excluding that sort

10:17:36AM 16   of evidence.

10:17:38AM 17       The final point that I just wanted to make, your

10:17:44AM 18   Honor, there was an implication in the defense filing

10:17:51AM 19   regarding the defendant's personal laptop that was seized

10:17:55AM 20   from his home.  As we have advised the court previously,

10:17:59AM 21   and as the court saw in the Mautz declaration, it had

10:18:02AM 22   software on it that allowed a user to essentially wipe the

10:18:06AM 23   computer.  And the government's forensic analysis showed

10:18:10AM 24   that the user of the computer activated that software the

10:18:13AM 25   night before it was searched -- the night before his home

10:18:16AM 1    was searched by law enforcement.  There was an implication

10:18:20AM 2    in the defense filing that somehow the government was

10:18:22AM 3    responsible for that, or had taken actions to fail to

10:18:25AM 4    preserve evidence.  There is no information whatsoever

10:18:29AM 5    that the defense submits to substantiate that allegation.

10:18:32AM 6    I just wanted to address it.

10:18:35AM 7        The defense has had the forensic report -- our

10:18:37AM 8    forensic report for months in this case that indicated the

10:18:40AM 9    existence of that software and that it was activated.  And

10:18:44AM 10   so I wanted to just strongly reject the implication that

10:18:47AM 11   somehow the government was responsible for wiping the

10:18:49AM 12   defendant's computer the day before we searched his home.

10:18:51AM 13           THE COURT:  I gathered that the search warrant was

10:18:57AM 14   issued on the basis of the information secured through the

10:19:02AM 15   NIT.  And when the search warrant was executed at

10:19:10AM 16   Mr. Michaud's home, they picked up that computer that you

10:19:14AM 17   are talking about now.

10:19:17AM 18           MR. BECKER:  Yes.

10:19:18AM 19           THE COURT:  And then they found that it was -- had

10:19:22AM 20   been erased or wiped or whatever.

10:19:27AM 21           MR. BECKER:  Correct.

        22           THE COURT:  Right?  Okay.

10:19:28AM 23           MR. BECKER:  Unless the court has questions, your

10:19:30AM 24   Honor, that's all that I have.

10:19:32AM 25           THE COURT:  I don't think so.

10:19:33AM 1         MR. BECKER:  Thank you, your Honor.

10:19:34AM 2         THE COURT:  Mr. Fieman.

10:19:37AM 3         MR. FIEMAN:  Your Honor, I will be brief.  I think

10:19:41AM 4    the starting point is Mr. Becker's observation that there

10:19:46AM 5    is a difference between materiality and centrality.  His

10:19:49AM 6    words were that this NIT evidence is not central to the

10:19:53AM 7    government's case.  That may be true, but the issue I

10:19:57AM 8    think we are grappling with is its centrality to the

10:20:01AM 9    defendant's case.

10:20:02AM 10        As we indicated in our briefings, we intend at trial

10:20:08AM 11   at this point to put all of these issues in front of the

10:20:12AM 12   jury.  Do we know what the FBI's malware did?  Did it

10:20:17AM 13   insert photographs?  Did it render it, as even Mozilla

10:20:21AM 14   said, in a position where a third party can take total

10:20:25AM 15   control?  Sure, we can say those things to the jury.  And

10:20:28AM 16   if they get by objections, saying, well, they are

10:20:31AM 17   speculation, or you don't have the evidence to support

10:20:33AM 18   that, as we even saw at the suppression hearing, all we

10:20:37AM 19   are invited to do is lead the jury to speculate about the

10:20:41AM 20   heart of the defense case.

10:20:42AM 21        Now, sometimes speculation goes in a defendant's favor

10:20:45AM 22   and sometimes it doesn't.  But as I indicated, we are not

10:20:49AM 23   looking for a trial based on speculation, we are looking

10:20:52AM 24   for one based on facts, because we think we can find and

10:20:56AM 25   shape our theory of the defense to one that is soundly

10:21:01AM  1    based on acquittal if we have the information.

10:21:04AM  2        This constant drumming on the location of where things

10:21:06AM  3    are found, I can only think of an analogy.  For example,

10:21:10AM  4    in a homicide case you find DNA in the suspect's car, and

10:21:13AM  5    then you find it later on a knife.  And you say, well,

10:21:17AM  6    carve out the DNA from the car because there are some

10:21:20AM  7    evidentiary issues on that and we will just talk about the

10:21:23AM  8    DNA on the knife.  If the problem is the entire process

10:21:26AM  9    for DNA analysis, whether the chain of custody on DNA is

10:21:30AM 10    accurate, and the issues about how it got on the knife in

10:21:34AM 11    the first place depends on expert testimony, that doesn't

10:21:36AM 12    solve anything.  It just invites more speculation.

10:21:40AM 13        Again, your Honor, also, it seems like we are back to

10:21:45AM 14    dealing even with some pretrial suppression issues at this

10:21:48AM 15    point, given the testimony that we got in Norfolk

10:21:52AM 16    recently, which Mr. Becker did not even address.  So we

10:21:56AM 17    are kind of back where I started last week.  We are

10:21:58AM 18    almost, actually, a year into this case from the time of

10:22:00AM 19    Mr. Michaud's initial appearance.  I really have no

10:22:05AM 20    confidence that I have covered the potential probable

10:22:07AM 21    cause and even pretrial suppression issues, despite our

10:22:11AM 22    intensive efforts to present everything to the court prior

10:22:14AM 23    to our initial motion deadline.  We are fast approaching

10:22:17AM 24    trial.  We have presented the court with five different

10:22:20AM 25    specialists and experts who have explained in great deal

10:22:24AM 1    sort of the interlocking nature of all this evidence and

10:22:26AM 2    its complexity.  We have not had a true forensic expert

10:22:30AM 3    response from the government.

10:22:31AM 4        Your Honor, unless there is something more I can

10:22:33AM 5    provide the court in support, the only remedies -- the two

10:22:37AM 6    options we presented as workable for us in terms of

10:22:40AM 7    getting a fair trial, I don't know that there is anything

10:22:43AM 8    else I can say at this point.  I should just address your

10:22:46AM 9    questions, if any.

10:22:47AM 10           THE COURT:  Okay.

10:22:49AM 11           MR. FIEMAN:  Thank you, your Honor.

10:22:55AM 12           THE COURT:  I have done a good deal of work on

10:22:57AM 13   this already.  It won't take me long to put it all

10:23:04AM 14   together.  It could be an oral opinion.  Stick around.

10:41:43AM 15      (Break.)

10:41:46AM 16           THE COURT:  Well, what is the appropriate relief

10:41:50AM 17   when the government properly withholds evidence that is

10:41:53AM 18   material to the defendant's case?  The answer to that

10:41:58AM 19   question lies in part with just how material to the

10:42:08AM 20   defendant's case is the evidence that has been withheld.

10:42:14AM 21      And to get to that question I think we have to start

10:42:17AM 22   with some basics.  The first basic thing that we have to

10:42:24AM 23   consider is that the defendant is presumed innocent.  That

10:42:31AM 24   presumption remains with him, but he is accused of serious

10:42:39AM 25   offenses, and those accusations trigger constitutional

10:42:45AM 1    protections.

10:42:51AM 2        There are three parts of the Bill of Rights, the

10:42:58AM 3    amendments to the United States Constitution, that I think

10:43:01AM 4    come into play here, and they are important.  First is the

10:43:06AM 5    Fourth Amendment, "The right of the people to be secure in

10:43:09AM 6    their persons, houses, papers, and effects, against

10:43:13AM 7    unreasonable searches and seizures, shall not be

10:43:19AM 8    violated."  I think we can agree that, although at the

10:43:25AM 9    time that was written there were no computers, computers

10:43:36AM 10   should properly be considered part of the effects of

10:43:40AM 11   people.

10:43:42AM 12       The second amendment that is important here is the

10:43:49AM 13   Fifth Amendment that provides, "Nor be deprived of life,

10:43:56AM 14   liberty, or property, without due process of law."  And

10:44:01AM 15   the procedures in criminal cases trigger due process, and

10:44:09AM 16   that is an important consideration here.

10:44:12AM 17       I think also the Sixth Amendment comes into play.  It

10:44:20AM 18   indicates that the accused shall enjoy the right to be

10:44:24AM 19   informed of the nature and cause of the accusation, to be

10:44:31AM 20   confronted with the witnesses against him.  We have here a

10:44:37AM 21   situation where the information withheld is the cause of

10:44:43AM 22   the accusation against him, and he is not going to be

10:44:51AM 23   confronted by that evidence.

10:44:58AM 24       The burden of proof is on the defendant to show the

10:45:05AM 25   need here, and I think to show what relief is appropriate.

10:45:13AM  1    But with all that basic law in mind, we must weigh the

10:45:18AM  2    defendant's need for the evidence against the plaintiff's

10:45:24AM  3    right to withhold it.  And the law provides that that

10:45:28AM  4    should be a balancing act.

10:45:35AM  5        The case law, Jencks, and Roviario, and W.R. Grace

10:45:40AM  6    particularly, but a lot of other cases as well, give us a

10:45:45AM  7    list of considerations that the court should look at and

10:45:47AM  8    consider in determining the proper relief.  There are a

10:45:55AM  9    lot of those.  They are not all listed just in one place.

10:46:11AM 10    These are considerations of what may be relevant to the

10:46:17AM 11    prejudice that the defendant might experience.

10:46:23AM 12        First is the centrality and importance of the

10:46:27AM 13    evidence.  It seems to me, based on the evidence in the

10:46:34AM 14    record from expert witnesses here, that the subject

10:46:44AM 15    evidence is central to the case, it's central to the

10:46:51AM 16    search warrant that was issued, it's central to the proof

10:46:59AM 17    that might be offered at trial, it is the background for

10:47:04AM 18    the whole case.

10:47:08AM 19        As I have indicated before, I have found the testimony

10:47:16AM 20    or declarations from the plaintiff's experts -- I'm sorry,

10:47:22AM 21    from the defendant's experts to be credible,

10:47:28AM 22    Mr. Tsyrklevitch, Mr. Miller, Mr. Young, and Mr. Kasal,

10:47:34AM 23    notably.  I think the information from them basically

10:47:39AM 24    overwhelms the evidence offered by the government in an

10:47:46AM 25    attempt to counter those declarations.

10:47:53AM 1   So on that first issue, it appears to me that this

10:47:59AM 2   withheld evidence is central to the case and important not

10:48:05AM 3   just to the defendant, but to both sides of the case.

10:48:11AM 4   The second consideration is the probative value and

10:48:15AM 5   reliability of secondary or substitute evidence.  I am not

10:48:18AM 6   aware of any secondary or substitute evidence that would

10:48:22AM 7   meet the problems that are faced here.

10:48:28AM 8   The third consideration is the nature and probable

10:48:33AM 9   weight of the factual inferences, and the kinds of proof

10:48:39AM 10  lost to the defendant.

10:48:45AM 11  The evidence here, it seems to me, would have a

10:49:01AM 12  presumptive inference of truth if offered by the

10:49:09AM 13  government.  Not the details of the NIT, but the fact of

10:49:15AM 14  information received through the NIT.

10:49:22AM 15  And in response to that the only answer for the

10:49:28AM 16  defense is to put on some evidence, that they have lots

10:49:32AM 17  of, that there may have been some error in the information

10:49:39AM 18  that the NIT provided.  They don't have the ability

10:49:45AM 19  without the information to determine that there was an

10:49:49AM 20  error, only that there may have been.  And that, it seems

10:49:57AM 21  to me, is a very difficult approach in a criminal case, to

10:50:09AM 22  hope that they can raise some doubt based on the testimony

10:50:15AM 23  of possible problems with the evidence.

10:50:19AM 24  The fourth item in my list here is the probable effect

10:50:26AM 25  on the jury from the absence of evidence.  I think I have

10:50:31AM 1    just commented on that.

10:50:40AM 2        As I indicated, I think the discovery withheld

10:50:44AM 3    implicates the defendant's constitutional rights.  It is

10:50:54AM 4    proposed that this information be withheld for trial as

10:50:56AM 5    well as for the suppression hearing.  I don't know of any

10:51:03AM 6    other adequate alternative means to the same information.

10:51:12AM 7    The government has argued, and the government's experts

10:51:15AM 8    have argued, that the information that the defense has is

10:51:19AM 9    sufficient, but that conclusion is belied by the expert

10:51:28AM 10   testimony from the defense.

10:51:34AM 11       Also, the court should consider whether the discovery

10:51:38AM 12   was lost or destroyed while in the government's custody.

10:51:41AM 13   That's not an issue here.

10:51:44AM 14       Also, whether the government acted with disregard for

10:51:47AM 15   the defendant's interests, or in bad faith, or for some

10:51:54AM 16   tactical advantage.  I think the government gets the

10:51:59AM 17   benefit of the doubt on those things.  They apparently

10:52:02AM 18   acted in good faith in withholding this information and

10:52:08AM 19   did not urge to withhold it just for some tactical

10:52:12AM 20   advantage.

10:52:15AM 21       I think those are the considerations that the court

10:52:28AM 22   should consider and discuss in this matter.

10:52:37AM 23       But you add to all of that another consideration, I

10:52:45AM 24   guess, and that is that the warrant itself was

10:52:47AM 25   questionable, as it was issued in violation of Federal

10:52:55AM 1    Rule of Criminal Procedure 41.

10:53:02AM 2        Under all of those circumstances, what can be done

10:53:05AM 3    short of dismissal, if anything?  The court should adopt

10:53:17AM 4    the minimal appropriate relief rather than the maximum.

10:53:26AM 5    The law teaches us that sanctions, if you want to call

10:53:31AM 6    them that, or appropriate relief, should be the minimal

10:53:38AM 7    rather than the maximum to reach the goal.  It seems to me

10:53:46AM 8    that the appropriate remedy here is to rule that the

10:53:50AM 9    evidence of the NIT and the search warrant issued on the

10:53:56AM 10   basis of the NIT should be suppressed, and the fruits of

10:54:00AM 11   that search must also be suppressed.  That's my ruling.

10:54:16AM 12       I think it is appropriate to suppress the evidence

10:54:19AM 13   rather than dismiss the case.  I have not tried to analyze

10:54:24AM 14   each count in terms of where the information came from to

10:54:29AM 15   support that count.  That's a matter that the government

10:54:38AM 16   will have to consider further, as will the defense.

10:54:43AM 17       Okay.  Thank you.

10:54:47AM 18           MR. FIEMAN:  Thank you, your Honor.

10:54:48AM 19           MR. BECKER:  Thank you.

10:54:49AM 20           MR. HAMPTON:  Thank you.

        21                  (Proceedings concluded.)

        22

        23

        24

        25

```
 1                    C E R T I F I C A T E

 2

 3

 4        I, Barry Fanning, Official Court Reporter for the

 5   United States District Court, Western District of

 6   Washington, certify that the foregoing is a true and

 7   correct transcript from the record of proceedings in the

 8   above-entitled matter.

 9

10

11

12   _____

     /s/ Barry Fanning
13   Barry Fanning, Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```